UNITED STATES DISTRICT COURT  **FILED**
DISTRICT OF CONNECTICUT

2004 MAR 31  P 1 42

PABLO ROSA,

    Plaintiff,

V.                              CASE NO. 3:00CV1367(RNC)

TOWN OF EAST HARTFORD;
OFFICER WILLIAM PROULX, ET AL.

    Defendants.

## RULING AND ORDER

Pablo Rosa brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 against a number of East Hartford police officers,[1] alleging that in the course of an encounter resulting in his arrest, he was bitten by a police dog and kicked in the ribs by some of the officers in violation of his Fourth Amendment right to be free from unreasonable use of force.[2] He also asserts state law claims alleging that the officers' actions constituted: (1) a violation of his right against unlawful use of force secured by Article I, §§ 7 and 9 of the Connecticut Constitution; (2) a deprivation of his liberty without due process of law in violation of Article I, § 9; (3) a violation of his right to be free of unreasonable and unlawful stops, detentions, arrests, searches and seizures, in violation of Article I, §§ 7 and 9 of

---

[1] Plaintiff names the following police officers as defendants in this action: Officers Proulx, McGeough, Castagna, John Doe #1, John Doe #2 and Sergeant Leonard of the East Hartford police.

[2] The complaint also alleges a violation of the Fifth Amendment, but plaintiff has conceded that he does not have a valid claim under the Fifth Amendment. (Pl.'s Opp. Summ. J. at 12, n.1.)

the Connecticut Constitution; (4) assault and battery; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) recklessness; (8) negligence; and (9) against Proulx and the Town of East Hartford ("Town"), a violation of Conn. Gen. Stat. § 22-357, Connecticut's dog bite statute. Plaintiff also sues the Town of East Hartford and its Chief of Police, James W. Shay, pursuant to §§ 1983 and 1988, for their alleged failure to have in place adequate policies regarding the use of force and use and control of police dogs, and their alleged failure to enforce the policies that were in effect, exhibiting deliberate indifference to his civil rights and resulting in the alleged violation of his rights. Plaintiff claims that defendants' failure to promulgate and enforce such policies amounted to a failure to supervise, as well as a failure adequately to screen, hire, train and retain police officers who would use only reasonable force and who would exercise proper control over police dogs. Finally, plaintiff seeks indemnification against the Town pursuant to Conn. Gen. Stat. §§ 7-465 and 52-557n. Defendants have moved for summary judgment on numerous grounds. For reasons set forth below, summary judgment is granted on the following claims: all claims against defendant Castagna and the Doe defendants, the false arrest claims under both the federal and state constitutions, the due process claim based on Article I, § 9 of the Connecticut Constitution, and the claim against the Town based on Article I, §§ 7 and 9 of the Connecticut Constitution. Summary judgment is otherwise denied.

I. BACKGROUND

In their Local Rule 56(c)(1) statement, defendants allege the following facts. At approximately 7:00 p.m. on November 26, 1998, defendants Proulx, McGeough and other East Hartford police officers were dispatched to an apartment building at 140 Silver Lane to respond to a 911 call complaining of a dispute involving four Hispanic males. While en route to the building, defendants were informed of a second radio dispatch reporting a possible weapon at the scene. When they arrived at the building, they were met by a woman who informed them that the dispute was taking place on the third floor and that one of the persons involved had a gun. When Officer Proulx arrived on the third floor, with police canine Bruno at heel, he saw people in the hallway shoving, screaming and swearing. He drew his gun and shouted: "Police, don't move!" Defendants then ordered everyone to lie on the floor or stand against the wall. Everyone in the hallway complied, with the exception of Jaime Rivera and plaintiff, who both turned and ran toward a fire door at the opposite end of the hallway. Proulx saw that plaintiff's right hand was concealed in his clothing near his waist area. At this time, a woman screamed, "He has a gun!" Proulx called out, "Stop, or I will release a trained police dog!" Neither Rivera nor plaintiff complied, so Proulx commanded Bruno to engage the fleeing suspects, but both men exited through the fire door before the dog could apprehend them. Proulx walked to the fire door and tried to push it open, but he could feel someone on the other

3

side holding it shut.  He and McGeough managed to push the door open a few inches, and Proulx, looking through the opening, could see plaintiff pushing from the other side.  He ordered plaintiff to back away from the door, but plaintiff refused to comply, so Proulx, concerned that any officer who went through the doorway would be shot, ordered Bruno to apprehend the plaintiff, and Bruno obeyed.  Opening the door fully, Proulx saw that Bruno was maintaining a bite hold on one of plaintiff's legs and that the plaintiff was using his other leg to kick Bruno.  Plaintiff soon fell to the ground.  As soon as he did, Proulx ordered Bruno to release him.  Bruno obeyed immediately, having held plaintiff's leg for approximately five to ten seconds.  By the time Sergeant Leonard arrived on the third floor, plaintiff had already been placed in custody.

Plaintiff's version is very different.  He states that he and three of his friends, Jesus Santana, Felix Rivas and Fernando Rivera, drove to 140 Silver Lane to pick up a set of dominoes from Rivera's father.  When they arrived at the Rivera apartment, Jaime Rivera, Fernando Rivera's brother, was arguing with people who lived in an apartment across the hall, unit C-17.  The argument involved no physical contact--it was just a verbal dispute.  Plaintiff, who was not involved in the argument at all, stood away from the group, near the fire door at the end of the hallway.  While the others were arguing, Bruno, alone and unleashed, entered the third floor hallway through a door at the opposite end of the hallway from the fire door.  The people in

4

the hallway scattered, most of them retreating into either the Rivera apartment or unit C-17 and closing the doors. Only Jesus Santana and plaintiff remained in the hallway. Plaintiff turned to the fire door and Bruno attacked him, biting him on his left calf while he attempted to escape through the fire door. Police officers on the other side of the fire door were holding it shut to prevent plaintiff from escaping. After some time, Bruno released his bite, then bit plaintiff again. Together, the two bites lasted up to five minutes. At some point during the attack, some of the defendants kicked plaintiff in the ribs as he lay on his stomach while being bitten.[3] [C ¶ 15] Plaintiff pleaded with the officers to order Bruno to release him. They responded that Bruno "must be hungry" and permitted Bruno to continue to bite the plaintiff as he lay on the floor screaming and bleeding.

Plaintiff was arrested and charged with breach of peace, cruelty to animals and interfering with an officer. The cruelty to animals charge was nolled but a trial was held on the other charges. After the state rested, plaintiff pleaded guilty to breach of peace. The interfering charge was dismissed in conjunction with the guilty plea.

II. DISCUSSION

To prevail on a motion for summary judgment, the moving

---

[3] The complaint does not specify which defendants kicked plaintiff.

party must establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317 (1986). To withstand a properly supported motion, a plaintiff who would bear the burden of proof at trial cannot rest on the allegations in the complaint but must offer evidence that would permit a reasonable person to find in his favor. See Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, the court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party . . . ." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.), cert. denied, 506 U.S. 965 (1992). Only when reasonable minds could not differ is summary judgment proper. Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

Claims Against Sergeant Leonard and Officer Castagna

Defendants argue that they are entitled to summary judgment on all claims against Sergeant Leonard and Officer Castagna, because, they allege, Castagna was never present on the third floor on the evening of plaintiff's arrest, and Leonard arrived at the scene only after plaintiff was in custody. Therefore, defendants argue, neither Castagna nor Leonard was present when Bruno was biting plaintiff. In his Local Rule 56(c)(2) statement, plaintiff admits that by the time Leonard arrived on the third floor, plaintiff was already in custody [D's ¶ 36] and further admits that Castagna never went to the third floor. [D's ¶ 37] Plaintiff further alleges, however, that Bruno continued

6

to bite him after he was placed in handcuffs. [P's ¶¶ 15-19] Since it is unclear whether Bruno was still biting plaintiff when Leonard arrived on the third floor, a disputed issue of material fact exitst as to the claim against Leonard. However, given plaintiff's admission that Castagna never went to the third floor, summary judgment is granted as to the claim against him.

Claims Against "John Doe" Defendants

Defendants argue that plaintiff's claims against defendants John Doe #1 and John Doe #2 are barred because the time for filing suit under the applicable statutes of limitations has passed. I agree. "It is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Barrow v. Wethersfield Police Dept., 66 F.3d 466, 468 (2d Cir. 1995) (internal quotation marks omitted). Therefore, summary judgment is granted as to the Doe defendants.

Excessive Force under the Fourth Amendment and the State Constitution

Defendants claim that because their actions in effecting plaintiff's arrest were objectively reasonable, they are shielded by qualified immunity against his claim that they used excessive force in violation of his rights under the Fourth Amendment and Article I, §§ 7 and 9 of the Connecticut Constitution.[4]

---

[4] Plaintiff also relies on the Fourteenth Amendment but excessive force claims are properly analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989).

Defendants are entitled to summary judgment based on qualified immunity if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[], could conclude that it was objectively unreasonable for the defendant[s] to believe that [they were] acting in a fashion that did not clearly violate an established federally protected right." Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)(internal quotation marks omitted). Crediting plaintiff's version, he was bitten twice and held by Bruno for five minutes, and kicked in the ribs by more than one officer while still in Bruno's grasp. A jury could readily conclude that this alleged use of force was not objectively reasonable. Accordingly, the motion for summary judgment on plaintiff's excessive force claims under the federal and state constitutions must be denied.

False Arrest

Defendants contend that they are entitled to summary judgment on plaintiff's false arrest claims under the federal and state constitutions because his guilty plea conclusively establishes that they had probable cause to arrest him.[5] It is well-established that a person who has been convicted of the offense for which he was arrested cannot recover for false arrest or false imprisonment in an action brought pursuant to § 1983.

---

[5] Plaintiff did not include a Fourth Amendment false arrest claim in his complaint but both sides have briefed the case as if he did. Accordingly, the complaint is deemed to include a § 1983 claim for false arrest in violation of the Fourth Amendment.

8

Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986), cert. denied, 481 U.S. 1016 (1987). Under Connecticut law, the rule is substantially the same . See McMahon v. Florio, 147 Conn. 704, 706 (1960)(plaintiff not permitted to challenge probable cause in face of valid judgment of conviction); Clewley v. Brown Thomson, Inc., 120 Conn. 440, 442-44 (1935)(same); Beinhorn v. Saraceno, 23 Conn. App. 487, 490 (1990), cert. denied, 217 Conn. 809 (1991)(plaintiff bears burden of proving lack of probable cause in false arrest action). Accordingly, defendants' motion for summary judgment on the false arrest claims is granted.[6]

State Common Law Claims

Defendants contend that plaintiff's state law claims for assault and battery, intentional and negligent infliction of emotional distress, recklessness and negligence all fail because their use of nondeadly force was justified under Conn. Gen. Stat. § 53a-22.[7] This defense fails for the same reason as the defense

---

[6] Plaintiff contends that he has a viable false arrest claim, even assuming his arrest was supported by probable cause, because the charge of cruelty to animals was unfounded. "Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest." Price v. Roark, 256 F.3d 364, 370 (5th Cir. 2001). Moreover, plaintiff offers no evidence that piling the cruelty to animals charge on top of the breach of peace and interfering charges caused any injury to his interest in being free from an arrest lacking probable cause.

[7] Section 53a-22 provides, in relevant part, "[A] peace officer . . . is justified in using physical force upon another person when and to the extent he reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense . . . (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting

based on qualified immunity. Crediting plaintiff's version, defendants' use of force was not only unreasonable, it was sadistic.

## Conn. Gen. Stat. § 22-357

Defendants contend that Connecticut's dog bite statute, Conn. Gen. Stat. § 22-357, is inapplicable to this case because plaintiff was bitten while committing a tort, namely, fleeing from the police and not heeding instructions to stop resisting arrest.[8] Accepting plaintiff's version, he was not committing any tort. Summary judgment on the basis of the statute is therefore denied.

## Section 1983 claims against the Town and Shay

A municipality and its supervisory officials may not be held liable under § 1983 for the unconstitutional acts of police officers solely on the basis of the employment relationship. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

---

to prevent an escape."

[8] Section 22-357 provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was *committing a trespass or other tort*, or was teasing, tormenting or abusing such dog." (Emphasis added.) See Funk v. Bannon, 148 Conn. 557, 560 (1961)("other tort" means "only torts committed upon the person or property of the owner or keeper or his family, whom a dog, with its characteristic loyalty, would instinctively defend and protect, and torts, committed on the dog, which would be likely to excite it to the use of its natural weapons of defense.")

10

Plaintiff must establish that the unconstitutional acts were carried out in "execution of a government's policy or custom." Monell, 436 U.S. at 694; see also Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992). Excessive force by police officers in violation of the Fourth Amendment may subject a municipality and its supervisory officials to liability when the City's failure to supervise, train or discipline its officers amounts to a policy of deliberate indifference to civil rights. See Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999). Liability also may be imposed when supervisory officials fail to exercise reasonable care in inquiring into the actions of subordinates. See, e.g., Fiacco v. City of Rensselaer, 783 F.2d 319, 329-31 (2d Cir. 1986), cert. denied, 480 U.S. 922 (1987).

Plaintiff claims that the policies the Town and Shay had in place regarding the use of force, and the use and control of police canines, were inadequate. He further claims that even if those policies were adequate, the Town's practice of failing to enforce them constituted a failure properly to supervise, train, hire and retain police officers, exhibiting a deliberate indifference to plaintiff's civil rights and promoting or encouraging the violation of those rights by the defendant police officers. This claim survives summary judgment because whether the Town's policies were inadequate presents a triable issue of fact.[9]

---

[9] Plaintiff's other theories of municipal liability are unsupported.

Reformat:

Defendants have two policies in place that are relevant to plaintiff's claims--a policy governing the use of nondeadly force and a police canine policy.

The Town's nondeadly force policy is set forth in General Order 03.10.00-03.16.14. [D's Ex. M] It defines nondeadly force, explains under what circumstances such force is necessary and therefore may be used by a police officer, requires that the force used be no greater than necessary under the circumstances, lists factors relevant to that determination, explains when escalation of force is justified, and discusses the brandishing, modification, training and use of certain weapons. The policy does not discuss the use of police canines.

The police canine policy is set forth in General Order 41.02.17. [D's Ex. N] It identifies the tasks for which a canine team is particularly useful, outlines procedures to be followed in using police canines for crowd control and various types of searches, establishes training and record keeping requirements, lists the responsibilities of the handler in caring for the canine, provides for the kenneling and retirement of the canines, provides guidance on personnel safeguards in interacting with the canines, and identifies procedures to be followed in the event of a dog bite. The canine policy does not, however, address in any way the use of police canines in apprehending a suspect.

Defendants contend that because the use of a police canine constitutes the use of nondeadly force, it was unnecessary to promulgate a policy specifically addressing the use of police

12

canines. But a jury could reasonably conclude that proper use of a police canine to apprehend a suspect is beyond the scope of the policy on nondeadly force. Defendants also contend that the Town adopted the canine use of force policy of the Connecticut State Police [D's Ex. O] by requiring that handlers be trained and certified by the State Police. The Town's position in this regard also raises issues of fact for a jury to decide.

<u>State Constitutional Claim Against the Town</u>

Plaintiff sues the Town for violating his rights under Article I, §§ 7 and 9 of the Connecticut Constitution, asserting the same theories of liability as he does for his <u>Monell</u> claim. In <u>Binette v. Sabo</u>, 244 Conn. 23 (1998), the Connecticut Supreme Court held that "the Connecticut constitution gives rise to a private cause of action for money damages stemming from alleged violations of article first, §§ 7 and 9, of [the] state constitution." <u>Id.</u> at 25-26. Rather than create a per se rule allowing such actions, however, the Court concluded that in the future, it would decide whether to recognize a cause of action based on the state constitution on a "case-by-case basis." <u>Id.</u> at 48. The Court has not yet recognized such a cause of action against municipalities. Therefore, summary judgment on this claim is granted.

## III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [Doc. #68] is granted in part and denied in part.

So ordered.

Dated at Hartford, Connecticut this 31st day of March 2004.

Robert N. Chatigny
United States District Judge