UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*********************************************

| | | |
|---|---|---|
| PABLO ROSA, | * | CIVIL ACTION NO: |
| Plaintiff. | * | 3:00CV1367 (RNC) |
| | * | |
| VS. | * | |
| | * | |
| TOWN OF EAST HARTFORD; | * | |
| OFFICER WILLIAM PROULX; | * | |
| OFFICER FRANCIS J. MCGEOUGH; | * | |
| SGT. JAMES E. LEONARD;      AND | * | |
| CHIEF JAMES W. SHAY. | * | |
| Defendants. | * | August 17, 2004 |

*********************************************


**<u>PLAINTIFF'S REQUEST TO CHARGE</u>**

**INSTRUCTIONS NO. 1**

General Instructions

It must be clear to you by now that you're being called upon to resolve

various factual issues raised by the parties. In making these decisions, you

should carefully scrutinize all the testimony of each witness, the circumstances

under which each witness testified, and other matters in evidence which may

help you decide the truth and importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness

testify. Everything the witness said or did on the witness stand may count in your

determination. How did the witness appear, that is, what was his or her

demeanor, his or her behavior, bearing and manner while testifying? Often, it's

not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in

1

determining matters of importance to you in your everyday life.[1]


## INSTRUCTION NO. 2

Fair Preponderance Of The Evidence

The plaintiffs must prove the material facts of their case by a fair preponderance of the evidence.  A fair preponderance of evidence means this: They must prove them by the better and weightier evidence. You will take all the evidence that is offered here, and consider the various circumstances which are involved; you will weigh them and balance them, and then if you find that the evidence fairly exceeds in weight and influence in favor of the plaintiffs, they will have proved the particular issue you have before you.[2]

If the plaintiffs tip the scales ever so slightly in their favor, then they will be deemed to have proven their case.[3]  If, on the other hand, the evidence does not fairly exceed in weight and influence in their favor, if the better and weightier evidence does not seem to establish their position, then they have failed in their duty to prove to you the facts upon which they rely; and in case it happens that the evidence is evenly balanced so that you cannot say it inclines this way or that way, then upon the issue in question your decision must be against the plaintiffs, because it is for them to prove it, and not for the defendants to disprove it.[4]

---

[1] Bosco v. J. Neale MacDonald Company, Inc., No. CV90-0094078 (Conn. Sup. Ct. August 25, 1995).
[2] Wright, Connecticut Jury Instructions, §311 (4th ed. 1993).
[3] State v. Lewis, 220 Conn. 602, 627 n. 8 (1991).
[4] Wright, Connecticut Jury Instructions, §311 (4th ed. 1993).

**INSTRUCTION NO. 3**

Circumstantial Evidence

Now, generally speaking, there are two kinds of evidence from which a jury may properly find the truth as to the facts of the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is inferences which may be drawn with reasonable certainty for proven facts.

An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence.[5]  For example, an illustration frequently given in law school concerning circumstantial evidence and inferences encompasses the following situation: a house wife goes to the store, leaving her cat in the locked kitchen, with a bowl of cream on the table. When she returned, she found that the cream had disappeared and that the cat was sporting a white mustache. Although there were no eye witnesses, the lady could reasonably draw the inference from the circumstantial evidence of the case that the cat had drunk the cream.[6]

Evidence of this kind is just as good as direct testimony, but it must satisfy you.  It must be a logical deduction, an inference which you can say is reasonable in view of your experience as reasonable men and women and in view of the testimony and exhibits offered in this case.  It is a reasonable and logical deduction from the other facts which you find existed and proven by a fair preponderance of the evidence. The plaintiffs must prove their case either by

---

[5] <u>Bosco v. J. Neale MacDonald Company, Inc.</u>, No. CV90-0094078 (Conn. Sup. Ct. August 25, 1995).
[6] Wright, <u>Connecticut Jury Instructions</u>, §327c. (4th ed. 1993).

direct or circumstantial evidence.[7]

**INSTRUCTION NO. 4**

Expert Testimony

You have heard from several expert witnesses in this case.  In weighing the credibility of the experts who testified in this case, you should apply the same standards to which any other witness is subjected.  Ordinarily, the Rules of Evidence do not permit witnesses to testify as to opinion or conclusions. An exception is made with respect to expert witnesses.[8]

An expert witness is a witness with specialized knowledge beyond that or the ordinary person whose testimony may help clarify a material fact or issue in the case.[9]

This type of witness may state an opinion on relevant questions in his or her field of expertise. You should consider each expert opinion received in the evidence in this case and give it such weight as you think it deserves.  Among other things, you may consider the amount of skill possessed by the expert, the experience he or she has had and the training he or she has had. You should also consider the expert's manner of testifying.  Did he or she indicate care, skill, intelligence and candor?  Moreover, you should decide whether his or her opinion was based on sound, logical and rational reasons.[10]

---

[7] Arroyo v. State of Connecticut, No. CV93-116933S (Conn. Super. Ct. March 6, 1997).
[8] Wright, Connecticut Jury Instructions, §324(d) (4th ed. Cumulative Supplement 2003).
[9] Conn. Code of Evid. § 7-2 and Commentary.
[10] Wright, Connecticut Jury Instructions, §324(d) (4th ed. Cumulative Supplement 2003).

**INSTRUCTION NO. 5**[11]

The Statute, Its Function, and Elements of Claim for Relief


*The Statute and Its Function*

The Plaintiff asserts claims under a federal civil rights law, 42 U.S.C. § 1983. The statute provides a remedy for individuals who have been deprived of their federal constitutional rights under color of state law. Section 1983 states in part that:

> Every person who, under color of [state law], subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws, shall be liable to the party injured [for damages].

Section 1983 creates a form of liability in favor of people who have been deprived of rights secured to them by the United States Constitution. It was passed

---

[11] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 3.01.1 *adapted from instructions in appendix to opinion in* <u>Morello v. James</u>, 797 F. Supp. 223 (W.D.N.Y. 1992).

by Congress to enforce the Fourteenth Amendment of the Constitution. The Fourteenth Amendment provides in relevant part that:

> no state shall . . . deprive any person of life, liberty, or property, without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

Section 1983 itself does not establish or create any federally protected right. Rather, it is the statute that allows the plaintiff in this case to enforce rights guaranteed to her by the federal Constitution. Later in these instructions I will explain to you what these federal constitutional rights are, and what the plaintiff must show to demonstrate a violation of these rights.

To establish her claim under section 1983, the plaintiff must demonstrate, by a preponderance of the evidence, the following three elements:

First, that the defendants' conduct was under color of state law;

Second, that this conduct deprived the plaintiff of a right protected by the Constitution of the United States [*or* a federal statute]; and

Third, that the defendants' conduct was a proximate cause of the injuries and damages sustained by the plaintiff.

I will explain each of these elements to you.

*First Element: Color of Law*

As to the first element—whether the defendant was acting under color of state law—there is no dispute in this case that during the events in issue here the defendant as a police officer was acting under color of law. Therefore, you need not concern yourself with that element of the plaintiff's case.

*Second Element: Deprivation of a Federal Right*

The second element of the plaintiff's claim is that defendant's conduct deprived plaintiff of a federal right. Plaintiff claims in this case that he was deprived of his right to be free of an unreasonable seizure under the Fourth Amendment to the federal Constitution. I will explain the elements of the plaintiff's Fourth Amendment claim later in these instructions.

*Third Element: Proximate Cause*

The third element that plaintiffs must prove is that the defendant's conduct was a proximate cause of plaintiff's injury and damage. Under Section 1983 the defendants are responsible for the natural consequences of their actions. An act is a proximate cause if it was a substantial factor in bringing about the plaintiff's injuries. You must determine whether injury or damage suffered by the plaintiff was a reasonably foreseeable consequence of the defendants' conduct. An injury that is a direct result, or a reasonable probable consequence of a defendant's conduct, was proximately caused by that conduct. The question is whether a reasonable person would regard defendants' conduct as being a cause of the injury. If so, the conduct is a proximate cause.

A proximate cause need not always be the nearest cause either in time or in location. In addition, the law recognizes that there may be more than one proximate cause of an injury. Many factors, or the conduct of two or more people, may operate at the same time, either independently or together, to cause an injury.

*General Wrap-up on Elements of the Claim: Multiple Defendants*

If you find that plaintiff has proven all three elements of his claim by a preponderance of the evidence with respect to a particular defendant whom you are considering separately, you should find that defendant liable. If you find that plaintiff has not proven any one of these elements with respect to the particular defendant you are considering, then you must find that defendant not liable and return a verdict for him. Remember that the case as to each of these individual defendants must be considered separately by you. The fact that you find that one of the defendants is or is not liable does not determine your verdict as to any other one of these defendants.

## INSTRUCTION NO. 6[12]

Separate Consideration of Each Defendant—Apportionment—Joint and Several Liability

This case involves multiple defendants. Therefore, you must be careful to impose any damages that you may award only against the defendant or defendants

---

[12] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 18.06.1 *adapted from* Hynes v. La Boy, 887 F. Supp. 618 (S.D.N.Y. 1995); See also, Fifth Circuit Pattern Jury Instructions Civil 51.14.

that the plaintiff has proved liable. The fact that the plaintiff proves that one defendant is liable does not necessarily mean that the other defendants are liable as well. Each defendant is entitled to a separate and individual consideration of his liability without regard to your decisions on any other defendant.

If the plaintiff proves that a particular defendant is liable and responsible for a particular injury, you must impose damages for that particular injury upon that particular defendant. This requires you to estimate the dollar amount of the plaintiff's injuries that is attributable to a particular defendant's conduct. The law calls this apportionment.

It is not always possible to apportion damages to a particular defendant's conduct. The plaintiff, however, may be able to prove that more than one defendant is liable for a particular injury. If two or more persons united in an intentional act that violated the plaintiff's rights, all of those persons are jointly liable for the violation of the plaintiff's rights. The law does not require the injured party to establish how much of the injury was done by each particular defendant that is shown to be liable. So, if the plaintiff proves that the defendants who are liable acted jointly, then you may treat them jointly for purposes of assessing damages. If he proves that two or more of the defendants are jointly liable on a particular claim, you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages. Each defendant would then be liable for the overall damages. The plaintiff, however, would be able to recover only once for his injury, because the law disallows double recoveries.

## INSTRUCTION NO. 7[13]

### Excessive Force Arrest Claim

Plaintiff claims that the defendant police officers violated his Fourth Amendment rights by using excessive force when they let loose canine Bruno, who suddenly and without warning attacked the Plaintiff, by charging at him, knocking him to the ground and viciously biting him on the leg for several minutes or more. The Plaintiff also asserts that during the course of his arrest, the defendants kicked him and allowed the dog to bite him while he was being handcuffed and after he was handcuffed.  Additionally, the Plaintiff contends that other, unknown officers blocked the fire door while canine Bruno bit the Plaintiff. Defendants admit that canine Bruno bit the Plaintiff but allege that the force used was justified and that the bite only lasted five to ten seconds. The Defendants also claim that the Plaintiff hid his hand while running from the dog and that the Plaintiff went through the fire door and held it shut from the other side; the Defendants claim in response to this that the officers pushed the door open allowing the canine through to bite the Plaintiff and force him to release the door.

The Fourth Amendment to the United States Constitution states that there shall be no unreasonable seizures. An arrest is a seizure. A police officer may use reasonable force in making an arrest, but the Fourth Amendment prohibits the use of unreasonable force. Therefore, a person has a constitutional right under the Fourth Amendment to be free of excessive force when arrested.

---

[13] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 7.01.1 *adapted from* Levin v. Armstrong, No. 94 Civ. 4260 (E.D.N.Y. 1995).

The Plaintiff claims that when they arrested him, the Defendant officers employed excessive force by releasing the dog out of their control, allowing the dog to attack him, blocking a reasonable means of avoiding being bitten, kicking him and allowing the dog to bite him while being handcuffed and after being handcuffed. The Defendants deny these allegations.

Every person has the right not be subjected to unreasonable or excessive force while being arrested by a law enforcement officer, even though the arrest itself is otherwise in accordance with the law. On the other hand, in making a lawful arrest police officers have the right to use such force as is necessary under the circumstances to effect the arrest, and at the same time to protect themselves or others from physical harm. Whether or not the force used in making an arrest was reasonable is an issue to be determined by you, on the basis of that degree of force a reasonable and prudent police officer would have applied in effecting the arrest, under the circumstances in this case.

In a case such as this, where the parties' factual contentions are disputed, you must determine what actually occurred, and how much force was used. The mere fact that the evidence in this case establishes that there was some forcible contact between the Plaintiff and the Defendants would not be sufficient by itself to demonstrate that the Defendants violated the Plaintiff's constitutional rights. On the other hand, you may find that allowing the dog to bite the Plaintiff for several minutes and kicking him, even while handcuffed, if you so find, constituted unreasonable and excessive force that would render the Defendants liable.

The question before you is whether the actions of the Defendant police officers on November 26, 1998, were objectively reasonable, meaning what a reasonably prudent police officer would have done under similar conditions in light of the facts and circumstances confronting the officer. You are to make this determination without regard to the police officers' underlying subjective intent or motivation. That means that "evil intentions" will not be considered excessive force if the force used was in fact reasonable. On the other hand, an officer's good intentions will not make the use of excessive force constitutional. The reasonableness of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, rather than with the 20/20 vision of hindsight. In determining whether the force exercised was reasonable, you should consider the facts and circumstances as you find them to be, including the severity of the offenses at issue, whether the plaintiff posed an immediate threat to the safety of the police officers or others, and whether the plaintiff was actively resisting arrest at the time the alleged excessive force was applied.

Now the Constitution must not be trivialized. Not every push or shove by a police officer, even if it may later seem unnecessary in the peace and quiet of this courtroom, constitutes excessive force. The concept of reasonableness makes allowance for the fact that police officers are often forced to make difficult split-second judgments in circumstances that are sometimes tense, uncertain, dangerous, and rapidly evolving, about the amount of force that is necessary in a particular situation.

If you find that the Defendants' use of force was reasonable, you must return a verdict for the Defendants. If you find that the Defendants' use of force was unreasonable, your verdict must be for the Plaintiff. In that case you must then determine whether the Plaintiff's alleged injuries were proximately caused by the Defendants' use of excessive force.

The Plaintiff has the burden of proving that the Defendants' actions were a proximate cause of injury to the Plaintiff. Injury is proximately caused by the Defendants' conduct when it appears from the evidence in the case that the conduct played a substantial role in bringing about the injury, in this case, a severe dog bite.

In sum, if you find that the Plaintiff has established, by a preponderance of the evidence, that the Defendants used excessive force in placing him under arrest, the Plaintiff is entitled to recover from that Defendant for the injuries and damages caused by the excessive force.

However, if you find that the Plaintiff has failed to establish, by a preponderance of the evidence, either that the Defendants used excessive force in effecting the arrest, or that the excessive force caused plaintiff's injuries, then your verdict will be in favor of the Defendants.

## INSTRUCTION NO. 8[14]

### Definition of Police Dog Use of Force

---

[14] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 7.01.3 *adapted from* Gilliam v. Los Angeles, 37 F.3d 1505 (9th Cir. 1994) (table) (unpublished memorandum).

A police dog is a tool of law enforcement. Its use constitutes the use of force. The force resulting from the use of a police dog can be proper or unreasonable, just as the use of a gun, baton, or other tool can be.

When deciding whether the force used was reasonable, you are to base your decision on the same standard applied to other types of force used by police officers while acting under color of law.

## INSTRUCTION NO. 9[15]

### Use of Police Dogs—Special Verdicts

### *VERDICT*

1.    Did Defendant Officer William Proulx use unreasonable force in apprehending the plaintiff, Pablo Rosa?

Yes _____ No _____

a.    If yes, was such use of unreasonable force a proximate cause of his injuries?

Yes_____ No_____

2.    Was there a failure on the part of the Defendant Chief James Shay to establish adequate investigation, monitoring and review of use of canines by East Hartford police officers in apprehending suspects?

Yes_____ No_____

---

[15] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 7.01.11 *adapted from* Kerr v. City of W. Palm Beach, No. 85 Civ. 8190 CIV-KLR 797 (S.D. Fla. 1997); See, Kerr v. City of W. Palm Beach, 875 F.2d 1546 (11th Cir. 1989).

    a.    If yes, were such inadequate policies a proximate cause of Pablo Rosa's injuries?

Yes_____No_____

3.    Was there a failure on the part of the Defendant Town of East Hartford to establish adequate investigation, monitoring, and review of use of canines by East Hartford police officers in apprehending suspects?

Yes_____No_____

    a.    If yes, were such inadequate polices a proximate cause of Pablo Rosa's injuries?

Yes_____No_____

4.    Did the Defendant, Chief James Shay, fail to establish adequate orders and rules to guide its police officers on how to use police canines when apprehending suspects?

Yes_____No_____

    a.    If yes, was such a failure a proximate cause of Pablo Rosa's injuries?

Yes _____        No _____

5.    Did the Defendant, Town of East Hartford, fail to establish adequate orders and rules to guide its police officers on how to use police canines when apprehending suspects?

Yes_____No_____

    a.    If yes, was such a failure a proximate cause of Pablo Rosa's

injuries?

Yes_____No_____

**INSTRUCTION NO. 10**[16]

Claims Against Officer Who Used Force and Against On-Looking Officer Who

Failed to Intervene

The plaintiff alleges that defendant police officers employed by the Town of East Hartford violated his Fourth Amendment rights on November 26, 1998, when Officer Proulx used unreasonable force to restrain him and when Officer McGeough and Sergeants Mormino and Leonard failed to intervene and stop Officer Proulx's actions.

Under the Fourth Amendment, a police officer may not use unreasonable force in the course of restraining or taking physical custody of an individual. Essentially then, you will be making the following findings based on these instructions:

1.      Do you find that defendant Officer Proulx used unreasonable force under the circumstances in restraining plaintiff on the evening of November 26, 1998, thereby violating the plaintiff's Fourth Amendment rights?

2.      Do you find that defendants Officer McGeough and Sergeant Leonard, although having a realistic opportunity to do so, failed to intervene to prevent Officer Proulx from using unreasonable force to restrain plaintiff on the

---

[16] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 7.02.1 *adapted from* <u>Colangelo v. Town of Irondequoit</u>, (W.D.N.Y.) (Hon. Michael A. Telesca) (undated).

evening of November 26, 1998 thereby violating the plaintiff's Fourth Amendment rights?

*Each Defendant Considered Separately*

The plaintiff must prove each of the elements of his claim by a preponderance of the evidence as to each of the defendants Francis McGeough and James Leonard, in accordance with these instructions. In other words, in determining whether the plaintiff's Fourth Amendment rights were violated, you must consider each defendant's conduct and liability separately and independently of the other.

*Plaintiff's Claims Against Officer McGeough and Sergeant Leonard: Excessive Use of Force*

The plaintiff claims that Officers Proulx and McGeough and Sergeant Leonard violated his Fourth Amendment right to be free from unreasonable seizures by using excessive force in apprehending him on the evening of November 26, 1998.

The Fourth Amendment protection against unreasonable seizures guarantees that every person has the right not to be subjected to unreasonable or excessive force while being restrained or taken into custody by a law enforcement officer.

A police officer may use only such force as is reasonably necessary under the circumstances that exist at the time of the restraint. The critical issue is whether

the defendant police officer acted the way a reasonable police officer would have acted in the particular circumstances. You are not to consider the subjective good faith or bad faith of the defendant police officer. A police officer is justified in using physical force when and to the extent reasonably necessary to restrain an individual or to assure that person's continued custody. If a police officer exceeds this justifiable use of force, then that officer violates an individual's Fourth Amendment right to be free of unreasonable seizure. You need consider only whether Officers Proulx and McGeough and Sergeants Leonard and Mormino acted reasonably in light of the facts and circumstances they encountered on the evening of November 26, 1998, without considering their underlying motives or intent.

What is unreasonable force?

It is force beyond that necessary or reasonably required to restrain an individual. Unreasonable force is a relative term, and you must take into account all of the circumstances surrounding the plaintiff's arrest.

In determining whether the constitutional line has been crossed, you must look to such factors as the need for the application of force, the relationship of the need and the amount of force that was used, and the extent of the injury inflicted.

In restraining an individual or taking an individual into custody, a police officer is not constitutionally required to be courteous. The use of minimal force is not uncommon or unusual in the course of restraining an individual. Not every push or shove violates a person's constitutional rights. In determining whether the amount of force used by Officers Proulx and McGeough and Sergeant Leonard

was reasonable under the circumstances, you may take into consideration that police officers are often forced to make difficult split-second judgments in circumstances that are tense, uncertain, and rapidly evolving.

On the other hand, where an individual does not represent danger to the arresting officer, the officer is not justified in using force that would likely result in physical injury or disability.

In sum, you are called upon to resolve the factual issue of whether defendants Officers Proulx and McGeough and Sergeant Leonard, as plaintiff claims, used unreasonable force in restraining him, or whether, as Officers Proulx and McGeough and Sergeant Leonard assert, they used force that was at all times reasonable and justifiable under the circumstances.

*Plaintiff's Claim Against On-Looking Officer McGeough and Sergeant Leonard: Failing to Prevent Unreasonable Use of Force*

The plaintiff also claims that, Officers McGeough and Sergeant Leonard violated his civil rights by failing to intervene and stop Officer Proulx from using excessive force in restraining him on the evening of November 26, 1998.

Police officers have an affirmative legal duty to enforce the law and preserve the peace. This includes taking reasonable steps to prevent other police officers from violating the law. Thus, if you find that, the plaintiff was subjected to the excessive or unreasonable use of force by Officer Proulx, and you further find that Officer McGeough and Sergeant Leonard and did nothing to prevent these actions,

despite having a realistic opportunity to do so, then you will find Officer McGeough and Sergeant Leonard and liable for that excessive use of force.

Thus, in order to find defendants Officer McGeough and Sergeant Leonard liable for this particular conduct, you must find the following:

1.      That the Plaintiff was subjected to excessive force by Officer Proulx; and

2.      That Officer McGeough and/or Sergeant Leonard stood by without trying to assist the plaintiff, and that there was a realistic opportunity for one or more of them to intervene to prevent the harm from occurring to the plaintiff.

## INSTRUCTION NO. 11[17]

### No Specific Intent

Section 1983 does not require the plaintiff to demonstrate that the defendant acted willfully, or with the specific intent to violate the plaintiff's federally protected rights. Nor does § 1983 require the plaintiff to show that the defendant abused governmental power.

---

[17] <u>Stengel v. Belcher</u>, 522 F.3d 438 (6th Cir. 1975).

**INSTRUCTION NO. 12**[18]

Action By Private Citizen Against Police Officers All Persons Stand Equal Before

the Law

As you know this action was brought by a private citizen against a police

officer of the Town of E. Hartford.  This case should be considered and decided

by you as an action between persons of equal standing in the community, of

equal worth, and holding the same or similar station in life.  All persons stand

equal before the law, and are to be dealt with as equals in a court of justice.

**INSTRUCTION NO. 13**[19]

Police Officer and Civilian Witnesses

You have heard the testimony of witnesses who are civilians and the

testimony of witnesses who are police officers.

In evaluating this testimony, you are to apply the same standards of

evaluation to each witness. You shall not give any greater or lesser weight to the

testimony of a witness solely because of his occupation as a police officer.

---

[18] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 2.03.11 *adapted from* Kerr v. Chicago, 424 F.2d 1134, 1138 (7th Cir.) 1970), cert. denied, 400 U.S. 833 (1970).
[19] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 2.03.7 *adapted from* Perla v. Village of Hempstead, No. 90 Civ. 3182 (ADS) (E.D.N.Y. 1993).

## INSTRUCTION NO. 14[20]

### Police Officer Witness—Bias


Police officers William Proulx, Francis McGeough, James Shay, and James Leonard testified at the trial. At the time of the occurrence involved in this case they were and some still are, employees of the defendant Town of E. Hartford.

The fact that they were and still are employed by the defendant's police department may be considered by you in determining whether their testimony was in any way influenced by their employment relationship with the police department.

## INSTRUCTION NO. 15

### State Law Claims Supplemental to 1983 Excessive Force Claim

*STATE LAW CLAIMS*


I now turn to the plaintiff's state law claims against the defendants. We call these claims "supplemental state law claims," because they are alleged in addition to the federal constitutional claims. These claims are not for deprivations of constitutional rights, but they are claims based on common law torts, namely, negligence, assault and battery, and negligent and intentional infliction of emotional distress brought under state law principles.

---

[20] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 2.03.7 *adapted from* <u>Perla v. Village of Hempstead</u>, No. 90 Civ. 3182 (ADS) (E.D.N.Y. 1993).

In this case, the elements of these state law claims track the elements of the federal Section 1983 claims. They have generally similar elements. But the state claims have certain differences in the "rights and obligations," which I will point out to you during these instructions.

I have already instructed you on the elements of the federal Section 1983 excessive force claims which the plaintiff must prove by a preponderance of the evidence. Now I will review the similar causes of action brought as supplemental state law claims.

## INSTRUCTION NO. 16

### Proximate Cause

Proximate cause means that the Defendants conduct must be a substantial factor in producing the plaintiff's injury.[21]

## INSTRUCTION NO. 17

### Negligence

Where the activities of two persons come into such conjunction that unless proper care is used injury is likely to occur, each must use such care to avoid the injury.  Negligence consists of a failure to use reasonable care, that is, the care which an ordinarily prudent person would use under the circumstances of the particular case.  But to find that a defendant did fail to use such care is not in all

---

[21] <u>Mahoney v. Beatman</u>, 110 Conn. 184, 195 (1929).

cases a sufficient basis for a recovery by the plaintiff, because before the plaintiff

can make use of it himself, the defendants must owe him a duty to use that care.

The test is: should the police officers, knowing what they knew or reasonable

should have known by reasonably exercising their faculties, have anticipated

that, unless they used reasonable care, harm was likely to result, not the precise

harm suffered by the plaintiff, but harm of the same general nature?

If you find that this is true, then the defendant's owed a duty to the plaintiff.

The plaintiff claims that the defendants were negligent in the way they

acted.  Again, negligence is the doing of something which a reasonably prudent

man would not do under the circumstances, or the omitting to do what a

reasonably prudent man would do under the circumstances.  It is the breach of a

legal duty owed by one person to another, and such legal duty is the exercise of

reasonable care.[22]  For the plaintiffs to recover on their claim based upon

negligence, it is necessary for you to be satisfied:

First, that the defendant was negligent in one of more of the ways

specified in the complaint.  These claims by the plaintiffs with respect to Officers

Proulx and McGeough and Sergeants Leonard and Mormino include:

   a.      Releasing canine Bruno in the hallway without first investigating if

           any persons were present in the hallway.

   b.      Allowing canine Bruno to attack the Plaintiff

   c.      Failing to stop canine Bruno from continuing that attack on the

           plaintiff once begun; and,

---

[22] New England Iron Works Co. v. Connecticut Co., 98 Conn. 609-11 (1923).

       d.       Allowing the other Defendant Officers to kick, shove, restrain, and verbally threaten the plaintiff.

Second, you must be satisfied that such negligence, if any existed, was a substantial factor in causing the injuries to the plaintiffs; and, third, that negligence of the plaintiff himself was not greater than the negligence of the defendant. If the plaintiff fails to prove either of the first two elements by the better evidence, or if a defendant has proved to you that the negligence of the plaintiff was greater than the negligence of the defendant as I have explained to you, it is your duty to bring in a verdict for the defendant.

If you reach a conclusion that these three important allegations have been established in favor of the plaintiff, you will then come to the question of damages, and only then will you take up the questions of damages.[23]

**INSTRUCTION NO. 18**

Comparative Negligence/Contributory Negligence

It is now necessary for the court to instruct you on the comparative negligence rules. Connecticut has adopted rules of law concerning the doctrine of contributory negligence. The law provides as follows:

       In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal

---

[23] Douglas B. Wright ET AL., <u>Connecticut Jury Instructions</u>, §520, §523 (4th ed. 1993).

representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or non-economic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering.[24]

In this case the defendants have plead and claimed that the plaintiff cannot recover because he himself is guilty of contributory negligence. Before you can determine whether this is a valid defense, you must first consider whether the plaintiff's own negligence was greater than the defendants' negligence and, if so, whether the plaintiff's own negligence, if you so find, was a proximate cause of the accident and the damages claimed.  If you find that the plaintiff's negligence was greater than the defendants' and that it was a proximate cause of the accident, then you must conclude that the plaintiff is barred from recovery of damages and you must bring in a verdict for the defendants.  In considering the question of the plaintiff's own negligence contributing in a substantial way to the accident, you will apply the rules of proximate cause or substantial factor as the court has already instructed you.

Now the doctrine of comparative negligence does not begin to apply unless and until you first determine the plaintiff's contributory negligence was not greater than defendants' causal negligence.  If you find that the plaintiff's

---

[24] Conn. Gen. Stat. § 52-572h(b).

contributory negligence was less than or equal to the negligence of the defendants, then you will apply the rules of comparative negligence as the are called. That is, if you find that the plaintiff's contributory negligence, if you so find, was less than or equal to the negligence of the defendant that you are considering in causing the accident, then you must conclude that the plaintiff's negligence does not operate as a bar to recovery by him, but his damages are to be diminished.

Stated another way, the first question you must consider is if the plaintiff's negligence, if any, is a complete bar to recovery. If we combine every act or omission of every party to the action which caused the injury, we have all, or 100% of the negligence involved. If the person seeking recovery for that injury is more than 50% to blame (negligent) for that injury, he cannot recover any damages from any of the other participants in the accident. His recovery is barred.

The second questions you must answer is if the plaintiff is 50% or less at fault for his injury (again taking 100% as the total negligence of all the parties to the action) what percentage is the plaintiffs fault between 0% and 50%. This rule provides for a reduction or diminution of whatever sum of money would fairly compensate such person for his injury/or damages.

The negligence which we are talking about is what we may define as causal negligence, that is, negligence which causally contributed to produce the injuries. You will apply the same test that you apply to the defendants' negligence, that is, was the negligence of the plaintiff a substantial factor in

bringing about his injuries?  If the plaintiff's negligence is so slight or

inconsequential to be regarded as a substantial factor and that the accident

would have happened, whether or not the plaintiff had been negligent, his

negligence would not be a cause of the accident and would not operate either to

defeat his cause of action of to diminish his damages.[25]


## INSTRUCTION NO. 19

### Assault and Battery


A civil assault is the intentional causing of imminent apprehension of

harmful or offensive contact in another.[26]  Actual, physical contact is not

necessary to prove assault.[27]  A battery is a completed assault.[28]  A defendant is

liable for battery if he a) he acts intending to cause harmful or offensive contact

to another person and b) a harmful contact with the other person either directly or

indirectly occurs.[29]  An assault and battery may be committed intentionally,

recklessly, or negligently.[30]


## INSTRUCTION NO. 20

---

[25] Douglas B. Wright ET AL., Connecticut Jury Instructions, §193 (4th ed. 1993).
[26] Dewitt v. John Hancock Mutual Life Ins. Co.,.. 5 Conn. App. 590, 594 (1985).
[27] Boccanfuso v. Gorham, No CV 00-0379584 S (Conn. Sup. Ct. Jan. 22, 2004).
[28] Scalzi v. The Mead School for Human Development, Superior Court, J.D. of Stamford, Docket No. 148213 (June 4, 1999).
[29] Alteiri v. Colasso, 168 Conn. 329, 334 n. 3 (1975).
[30] Markey v. Santangelo, 195 conn. 76, 78 (1985).

Intentional Infliction of Emotional Distress

The plaintiff has alleged a cause of action for what is known as intentional infliction of emotional distress.  In order to succeed on this claim you must find that the plaintiff has proven by a fair preponderance that the defendant or defendants intended to inflict emotional distress or that he or they knew or should have known that emotional distress would likely result from his or their conduct.  Furthermore, the plaintiff is required to prove that the conduct was extreme and outrageous and that the defendants' conduct was the proximate cause or legal cause of the plaintiff's distress.  The plaintiff must also establish that the emotional distress sustained by the plaintiff was severe.  Here, the plaintiff alleges that the defendants acted with malice and bad faith and with reckless disregard for the consequences of their actions and thereby caused the plaintiff to experience extreme emotional distress.  The plaintiff claims that he suffered shock, mental and emotional distress and anguish as a result of this conduct.  If you find that the plaintiff has proven by a fair preponderance that he suffered extreme emotional distress under the law which I have just stated to you then you may award damages as are fair, just and reasonable to compensate the plaintiff for his injuries.[31]

---

[31] Douglas B. Wright ET AL., <u>Connecticut Jury Instructions</u>, §311 (4th ed. 1993).

**INSTRUCTION NO. 21**

Negligent Infliction of Emotional Distress


In the alternative, the plaintiff in this case has also claimed the defendants are responsible for negligent infliction of emotional distress.  In order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove by a fair preponderance that the defendant or defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.  The fear or distress experienced by the plaintiff must be reasonable in light of the conduct of the defendants.  If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable.[32]


**INSTRUCTION NO. 22**

Recklessness


In addition to claiming a recovery on the ground of negligence, the plaintiff also alleges that his injuries were caused by the reckless, wanton and willful

---

[32] <u>Carrol v. Allstate Ins. Co.</u>, 262 Conn. 433, 446-47 (2003).

misconduct of the defendants.  The amount of damages to which he would be entitled if he has proved a cause of action resting on negligence are the same as they would be if he had proved a cause of action based on such misconduct, and you may wonder why he should allege both causes of action.  The reason is this: As I have told you, even if the plaintiff proved that the defendants were negligent, he still could not recover if you find that he was himself guilty of negligence which contributed to producing his injuries more than 50%.

On the other hand, if the plaintiff has proved a cause of action based on reckless, wanton or willful misconduct, he is still entitled to recover, although he was himself guilty of mere negligence contributing to the injury.  His own misconduct would defeat his right to recover only if it was in itself reckless, wanton or willful, and as such contributed to produce his injuries.[33]

> Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent.  Recklessness requires a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence.  The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.  Wanton misconduct is reckless misconduct.  It is such

---

[33] Douglas B. Wright ET AL., <u>Connecticut Jury Instructions</u>, §610a. (4th ed. 1993).

conduct as indicates a reckless disregard of the just rights or safety of others or

of the consequences of the

action.  While we have attempted to draw definitional distinctions between the

terms willful, wanton or reckless, in practice the three terms have been treated as

meaning the same thing. The result is that willful, wanton, or reckless conduct

tends to take on the aspect of highly unreasonable conduct, involving an extreme

departure from ordinary care, in a situation where a high degree of danger is

apparent.[34]

**INSTRUCTION NO. 23**

As to Proulx and Town of East Hartford,

Dog Bite Pursuant to C.G.S. § 22-357

If any dog does any damage to either the body or property of any

person, the owner or keeper, or, if the owner or keeper is a minor, the parent or

guardian of such minor, shall be liable for such damage, except when such

damage has been occasioned to the body or property of a person who, at the

time such damage was sustained, was committing a trespass or other tort, or

was teasing, tormenting or abusing such dog.[35]

There are two methods in under which you may find Officer Proulx liable.

In the first method, in order to find liability under this statute you mjust answer

two questions. First, you must determine, if, when Officer Proulx released canine

---

[34] <u>Matthiessen v. Vanech</u>, 266 Conn. 822, 833-34 (2003).
[35] Conn. Gen. Stat. § 22-357.

Bruno and canine Bruno bit the plaintiff whether Officer Proulx acted with malice, wantonness, or intent to injure the plaintiff.[36]

If you so find, you must determine if, at the time canine Bruno bit the plaintiff, whether the plaintiff was teasing, tormenting or abusing the dog[37] or whether the Plaintiff was committing a trespass or other tort. Other tort means only torts committed upon the person or property of the owner or keeper, who, a dog, with its characteristics of loyalty, would instinctively defend and protect, and torts, committed on the dog, which would be likely to excite it to the use of its natural weapons of defense."[38]

Malice and wantonness mean essentially the same thing, that the conduct that Officer Proulx engaged in must have been done intentionally or with reckless disregard of the consequences of his conduct.[39]

If you so find that Officer Proulx acted with malice, wantonness or intent to injure when he instructed canine Bruno to bite the plaintiff, and that the plaintiff was not teasing, tormenting or abusing the dog or committing a trespass or other tort, then you must find for the plaintiff and consider damages.

In the second method, you must still must consider whether the plaintiff was teasing, tormenting, or abusing the dog or committing a trespass or other tort.[40] If you find that he was not, the next question you must resolve is whether

---

[36] Tyron v. Town of North Branford, 58 Conn. App. 702, 709 (2000).
[37] Conn. Gen. Stat. § 22-357.
[38] Funk v. Bannon, 148 Conn. 557, 560 (1961).
[39] Pane v. City of Danbury, 267 Conn. 669, 685 (2004).
[40] Conn. Gen. State § 22-357.

it was apparent to Officer Proulx, at the time canine Bruno bit the plaintiff, that the plaintiff was in imminent harm.[41]  If you so find, then you must find for the plaintiff.

# Instructions as to Municipal and Supervisory Liability

## INSTRUCTION NO. 24[42]

Municipal Liability Based on Custom or Practice of failing to Supervise, Monitor and Discipline Officers that Unconstitutionally Used Canines

In order to establish his 1983 claim against the Town of E. Hartford, the plaintiff is required to establish an additional element that he need not prove against the individual defendants. To hold the Town and/or Chief Shay liable under 1983, the plaintiffs must prove by a preponderance of the evidence that the violation of their federally protected rights was pursuant to a custom or practice of the Town of East Hartford or Chief Shay.

If you have found that the individual defendants violated the plaintiff's federally protected rights, then you must also consider plaintiff's claim against the Town of East Hartford.

The fact that an employee or employees of the City deprived the plaintiff of his federally protected rights is not itself a sufficient basis for imposing § 1983 liability against the Town.

The plaintiff does not contend that the Town of E. Hartford has a formal policy of allowing officers to command canines to attack citizens without cause of

---

[41] Subject to a finding by the Court that Mr. Rosa was an identifiable person.  Tyron, 58 Conn. App. 715-18.

[42] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 15.04.1.

justification and kick citizens after they have been handcuffed. Plaintiff alleges instead that even if the Town and Chief's policies regarding use of force and use and control of canines were adequate, the Town has had a long-standing custom or practice of failing enforce such policies and faikling to train, monitor or supervise officers and Officers Proulx, McGeough and Leonard in this case, even though the Town had notice of the potential for use of excessive force because of prior citizen complaints, lawsuits and General Order 41.02.17 reports.

A custom or practice is a well-settled, persistent, widespread course of conduct by municipal officials having the force of law. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination you may consider how long the alleged practice existed, the number and percentage of municipality officials engaged in the practice, and the similarity of the conduct engaged in by its employees.

A municipal practice or custom has the force of law when it has been approved, either expressly or implicitly, by the municipal entity's policymakers, or when the policymakers, after being placed on notice of a practice or custom of unlawful conduct, are deliberately indifferent to it. I am instructing you as a matter of law that Chief Shay and the Town of E. Hartford are the policymakers for use of police dogs in making arrests and the use of force in making arrests. Therefore, to find in favor of the plaintiff and against the Town of E. Hartford you must find: (1) that the individual defendants violated the plaintiff's federally protected rights; (2) the violation of the plaintiff's rights was pursuant to a custom or practice of the Town; and (3) Chief Shay and the Town of E. Hartford either approved or were

deliberately indifferent to the custom or practice. If you find that the plaintiff has failed to establish any of these elements, your verdict must be for the Town of E. Hartford.

## INSTRUCTION NO. 25[43]

### Inadequate Training

The plaintiff seeks to hold the defendant police officers who used excessive force while arresting him liable under 1983. He also seeks to hold the town liable for that use of excessive force because, he claims, the policies the Town of East Hartford and Chief Shay had in place regarding the use of force, and the use and control of police canines in making arrests, were inadequate. I have already instructed you about the constitutional standard for an individual police officer's use of force in making arrests.

To recover on his claim against the Town, in addition to showing that the individual officers violated his federally protected rights, the plaintiff must also demonstrate, by a preponderance of the evidence: (1) specific inadequacies in the way the town trained its police officers in handling and using police dogs to make arrests; (2) that the inadequate training was the result of deliberate indifference on the part of the city toward the federal rights of persons with whom the police officers come into contact; and (3) that the inadequate training was the proximate cause of the violation of the plaintiff's federally protected rights. Proximate cause means a

---

[43] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 15.05.1 *adapted from* <u>City of Canton v. Harris</u>, 489 U.S. 381 (1989).

close causal connection between inadequate training and the violation of the plaintiff's federally protected rights.

Deliberate indifference does not require you to find that any of the town's officials in charge of training the police had a wrongful motive or state of mind. Rather, deliberate indifference is defined by what the Supreme Court calls an "objective obviousness" test. Let me explain. A plaintiff might establish deliberate indifference by showing a pattern of certain specific violations of federally protected rights that puts the city's policymakers on notice that its training program was inadequate.

A plaintiff may establish the Town was deliberately indifferent by showing that his federally protected rights were violated *and* that the Town failed to train its employees to handle recurring situations that present an obvious potential for such a violation.

The plaintiff contends that the Town's training deficiencies in using police dogs as a means of force in making arrests presented an obvious potential for police use of unreasonable force against these individuals, and that by continuing its inadequate training, the Town acted with deliberate indifference. The plaintiff has introduced evidence that it is common for police officers to make arrests using police dogs as a means of force in making arrests. The plaintiff has also introduced the testimony of expert witnesses that the Town's policy and training on use of police dogs was contrary to generally accepted police practices, and that the training suffered from certain inadequacies. Defendants have introduced evidence

of the nature and extent of the Town's training program, and they contend that the training and policy was adequate.

You must decide, based upon all of the evidence in the case, whether the plaintiff has established that: (1) the city's training of its police officers on how to use police dogs in making arrests was inadequate; (2) if there were inadequacies, whether they were the result of the Town's deliberate indifference to the rights of persons with whom the police come in contact; and (3) if the city was deliberately indifferent in its training, whether that deliberate indifference was the proximate cause of the violation of the plaintiff's federally protected rights. Proximate cause means that there must be a close connection between the city's deliberately indifferent training and the unreasonable force used on the plaintiff.

## INSTRUCTION NO. 26[44]

### Municipal Liability Based Upon Policy of Inaction

The defendant Town of East Hartford may be found liable for failing to act to prevent a violation of the plaintiff's federally protected rights only if you find that its failure to act was the result of its deliberate indifference. This occurs when it is shown that the Town of East Hartford failed to take action even though the need to act was plainly obvious and the failure to act would very likely result in violations of federally protected rights. The plaintiff contends that the Chief of Police had a policy or practice of failing to promulgate and implement sufficient policies regarding the

---

[44] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 15.05.1 *adapted from* <u>Oviatt v. Pearce</u>, 954 F.2d 1470 (9th Cir. 1992).

use and control of canines in making arrests. If the Chief had such a policy or practice, then, because he was the policymaker for the Town of East Hartford regarding the use and control of police canines in making arrests, the Town itself was deliberately indifferent to the constitutional rights of citizens subjected to the use of unreasonable force by an officer using a canine.

The plaintiff has the burden of establishing, by a preponderance of the evidence, that: (1) the Town was deliberately indifferent to the constitutional rights of citizens to be free from unreasonable seizure by use of force, and (2) if so, that this deliberate indifference was the proximate cause of the deprivation of plaintiff's federally protected rights. It is for you, the jury, to determine whether the Town, through its policymaker, the Chief of Police, was deliberately indifferent to the rights of citizens to be free from unreasonable seizure by use of force, and whether that deliberate indifference caused the plaintiffs to be subjected to unreasonable seizure by the use of force.

**INSTRUCTION NO. 27**

Inadequate Investigation of this Case

A Section 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference.[45]  If you find that the Town of East Hartford failed to adequately investigate this case, you may take that fact into consideration in determining if

---

[45] Vann v. City of New York, 72 F.3d at 1040, 1049 (2d Cir. 1995).

the Town of East Hartford had such a policy of inappropriate and insufficient review, investigation and/or discipline of canine unreasonable force claims brought against the defendant police officer.[46]


### INSTRUCTION NO. 28[47]

Supervisory Liability—No Personal Involvement by Supervisor in Alleged Violation of Rights—Second Circuit Approach


I have already instructed you about the law governing the plaintiff's 1983 claim against Officers Proulx, McGeough and Leonard. If you find that the plaintiff has demonstrated that defendants Proulx, McGeough and Leonard violated the plaintiff's constitutionally protected rights, you must then determine whether the plaintiff has also demonstrated a basis for recovery against their supervisor, defendant James Shay.

The legal rules for determining whether a supervisory official may be held liable under 1983 for the deprivation of a person's federally protected rights are different from the rules pertaining to the rules governing the liability of a subordinate employee whose conduct directly caused the violation of the plaintiff's federal rights.

A supervisory official may not—I stress may not—be held liable under Section 1983 based solely upon the fact that the supervisor had the obligation and

---

[46] Galindez v. Miller, 285 F. Supp.2d 190, 196-97 (D. Conn. 2003); Gentile v. County of Suffolk, 926 F.2d 142, 152-53 (2d Cir. 1991).
[47] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 16.01.1 adapted from Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) and Wright v. Smith, 21 F.3d 496 (2d. Cir 1994).

authority to supervise the subordinate employee. Therefore, the mere existence of the supervisory relationship is not, by itself, a sufficient basis for imposing liability upon the supervisory official.

Liability may be imposed upon a supervisory official who participated directly in the violation of a person's constitutionally protected rights. In this case, there is no evidence that James Shay participated directly in the alleged violation of the plaintiff's federal rights.

A supervisor may, however, be held liable for a violation of federally protected rights even if the supervisor did not participate directly in the violation of the plaintiff's federally protected rights. The law recognizes that a supervisor may be found liable if

1.    The supervisor, after being informed of the violation of federally protected rights, failed to take reasonable steps to remedy the wrong; or

2.    The supervisor created a policy or custom under which unconstitutional practices occurred, or allowed the continuation of unconstitutional practices to continue; or

3.    The supervisor was deliberately indifferent in supervising the subordinate employee or employees who directly engaged in unconstitutional conduct.

By deliberate indifference I mean that the supervisor knew, or had reason to know, that constitutional violations were likely to occur, but failed to take reasonable steps to prevent their occurrence.

Plaintiff has the burden of establishing by a preponderance of the evidence, that Chief Shay acted in violation of at least one of these standards. It is for you, the jury, to determine whether Chief Shay acted in violation of any of these standards. If you find that he did not act in violation of any of these standards you must to return a verdict in favor of defendant James Shay. If you find that he did act in violation of any of these standards, you must return a verdict in favor of the plaintiff against James Shay.

## INSTRUCTION NO. 29[48]

### Final Policymaking Authority—Unreasonable Force Case

The Town of East Hartford may be held liable under 1983 for violations of civil rights that are the result of the Town's policy. The Town is liable for the acts or orders of City officials who possess final policymaking authority with respect to those acts or orders. I am instructing you that, as a matter law, the Chief of Police possessed final authority to establish municipal policy with respect to the individual defendants' actions which are the subject matter of this lawsuit. Thus, if you find that the individual defendants' unconstitutional acts were the result of or caused by a policy established by the Chief of Police, you must also find the Town to be liable.

---

[48] M. Schwartz & G. Pratt, Section 1983 Litigation Jury Instructions, v. 4 Instruction 15.03.2; See also, Amnesty America v. Town of West Hartford, 361 F.3d 113, 127-28 (2d Cir. 2004).

INSTRUCTION NO. 30[49]

Municipal Liability—Various Bases—Special Verdicts


*Special Verdicts*

*Question 1.*  Did the Town of East Hartford violate the constitutional rights of Pablo Rosa not to be deprived of his life or liberty absent due process of law in one or more of the following ways:

> A.    Constitutionally inadequate training?
>
> Yes _____    No _____


> B.    A custom or practice that caused the constitutional deprivation of Pablo Rosa's rights?
>
> Yes _____    No _____


> C.    Ratification of such City custom or practice by Chief Shay?
>
> Yes _____    No _____


*Question 2.*  If you have answered "yes" to either subparts A, B, or C, of Question 1, then answer this question.

> Was such conduct a proximate cause of the injuries to Pablo Rosa?


> Yes _____    No _____

---

[49] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 15.02.2 *adapted from* <u>Monfils v. Taylor</u>, 165 F.3d 511 (7th Cir. 1998) (appendix).

# Damages

### INSTRUCTION NO. 30[50]

Compensatory or Actual Damages

*Damages—Generally*

If you find that the plaintiff is entitled to recover against any defendant, then you will have to determine the amount of damages that will fairly and reasonably compensate him for those injuries that you find the plaintiff has sustained as a result of any of his federal Section 1983 claims and accompanying state law claims.

It is for you to decide on the evidence, and the law as I have instructed you, whether the plaintiffs is entitled to recover from any of the defendants. If you have decided that he is not entitled to recover, you should go no further. Only if you decide that he is entitled to recover, will you consider the amount of damages to be awarded.

I instruct you that an attorney's statement to you of the amount that you should return in your verdict as a formula to use in calculating damages is not evidence and it is not binding upon you. It is a lawyer's statement. However, if you

---

[50] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 18.01.17 *adapted from* <u>Perla v. Village of Hempstead</u>, No. 90 Civ. 3182 (ADS) (E.D.N.Y. 1993).

find such analysis useful, you may consider it as a suggested analysis or guideline. Ultimately, it is your sole and exclusive function to determine the sum of money that will justly and fairly compensate the plaintiff for any injuries and damages you find he sustained. You will make that determination from the evidence in this case, based on the law I will give you.

### Causation and Damages

If you find any defendant liable, you may award damages only for those injuries that you find the plaintiff has proven, by a fair preponderance of the evidence, to have been the direct result of the conduct of the defendants with regard to a federal Section 1983 violation. You must distinguish between, on the one hand, the existence of a violation of the plaintiff's rights and, on the other hand, the existence of injuries and damages naturally resulting from those violations. Thus, even if you find for the plaintiff on any of his claims, you must ask yourself whether the plaintiff has also proven, by a preponderance of the evidence, that the violation of his rights caused the injuries and damages that he claims to have suffered.

### Actual or Compensatory Damages

In considering an award of damages, your first task is to determine the amount of actual or what the law calls "actual" or "compensatory" damages allegedly sustained by the plaintiff. You should award the plaintiff an amount that justly and fairly compensates him for any injuries and damages you believe he actually sustained as a direct consequence of the conduct of a defendant.

Actual or compensatory damages may include damages only for injuries that you find to have been proximately caused by acts for which you find any of the defendants to be liable. In this regard there are eight claims for which you can award compensatory damages: namely the Section 1983 unreasonable force claim, negligence, assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, recklessness, dog bite pursuant to C.G.S. 22-357 and violation of the Connecticut Constitution Article First § 7.

If you find for the plaintiff with respect to any these claims, you should award a sum of money that will compensate the plaintiff for any actual injury he suffered.

In the unreasonable force claim, the plaintiff claims damages for his physical injuries, emotional distress, loss of earnings and medical expenses as a result of the unreasonable force used against him, from the time of the incident, on November 26, 1998 to the present time and in the future as well as damages for personal injuries such as scarring and disfigurement, "hedonic" damages for loss of the ability to enjoy life's activities, or the pleasure of living, and loss of dignity resulting from the shooting.[51]   While not exhaustive, some examples of these injuries include ill health, physical pain, disability, discomfort, fear, humiliation, mental anguish and disfigurement taking into consideration the extent and duration and whether the plaintiff has or will with reasonable certainty, suffer these injuries in the future.   Also, you must take into consideration the violation of the plaintiff's constitutional right to be free from unreasonable seizure.[52]

---

[51] Graham v. Sauk Prarie Police Comn., 915 F.2d 1085 (7th Cir. 1990).
[52] Restatement of Torts II, § 431; Kerr v. City of Chicago, 424 F.3d 1134, 1141 (7th Cir. 1970); Guzman v. Western State Bank, 540 F.2d 948 (8th Cir. 1976).

*As to the Unreasonable Force Claim*

As to the claim based on unreasonable force, if you find in favor of the plaintiff, you will fix one lump sum that will justly and fairly compensate him, individually, for all the injuries you find he sustained, as follows:

*First,* you must include in your verdict an award for all the injuries, including scarring and disfigurement, and pain and suffering that you find the plaintiff has sustained as a result of this incident to this date, if any, and which he is reasonably anticipated to suffer for the remainder his expected life.

*Second,* you must include an award for any mental or emotional distress on the plaintiff's part which you find resulted from the personal injuries sustained in the incident, if any, and which he is reasonably anticipated to suffer for the remainder of his expected life.

*Third,* you must include an award for any loss of earnings that you find were caused by the injuries sustained in this incident.

*Fourth,* if you find that medical expenses were reasonably incurred by the plaintiff as a result of injuries sustained in this incident, you must award such expenses, if any, for which he is reasonably anticipated to suffer for the remainder of his expected life.

*Fifth,* if you find that any of the injuries of the plaintiff are permanent, you must make such allowance in your verdict as you think that circumstance warrants, taking into consideration the period of time that has elapsed from the date of the injury, to the present time, and the period of time that the plaintiff can be expected to live.

In this connection, I instruct you as to permanency, that the plaintiff at age 42 can be expected to live for 34 more years according to the most recent life expectancy table published by the United States Government. These tables are, of course, nothing more than statistical averages. They neither assure the span of life that I have given you, nor assure that the span of the life of the plaintiff will not be greater. The life expectancy figure I have given you is not binding upon you. But it may be considered by you, together with your own experience and the evidence you have heard concerning the condition of the plaintiff's health, and his habits and activities in determining the present life expectancy of the plaintiff.

### INSTRUCTION NO. 31

Punitive Damages

In addition to either actual or compensatory damages, the law permits the jury, under certain circumstances, to award the injured person punitive damages, in order to punish the wrongdoer for some egregious misconduct indicating a reckless disregard for the rights of either or both of the plaintiffs, and to serve as an example or warning to the defendants, Officers Proulx and McGeough, Sergeant Leonard and Chief Shay, and others not to engage in that conduct in the future.

If you find from a preponderance of the evidence that the plaintiff is entitled to a verdict for actual damages, and you further find that the conduct of the defendants, which proximately caused injury or damage to the plaintiff, was done

maliciously, or wantonly, or oppressively, then you may add to the award of actual or nominal damages such amount, as you agree to be proper, as punitive damages.

An act or a failure to act is "maliciously" or "recklessly" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the plaintiff individually, or toward all persons in the group or category of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the plaintiffs.

An act or a failure to act is "oppressively" done, if done in a way or manner that injures, or damages, or otherwise violates the rights of the plaintiffs with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or misfortune of the plaintiff.

If you find, from a preponderance of the evidence in the case, that the defendants' conduct, which proximately caused actual or nominal damage to the plaintiff, was done maliciously, or wantonly, or oppressively, it is within your discretion to decide whether to award punitive damages. However, such extraordinary damages may be allowed only if you should first unanimously award the plaintiff a verdict for either compensatory damages or nominal damages.

The amount of any punitive damages awarded must be fixed with calm discretion and sound reason, and must never be awarded, or fixed in amount,

because of any sympathy, or bias, or prejudice with respect to any party in the case.

It is entirely up to you to decide whether or not punitive damages should be awarded. In this respect you have considerable discretion. You may decide that even though compensatory damages or nominal damages have been awarded, you believe that no punitive damages are called for.

I can give you no objective yardstick for measuring punitive damages. You will have to use your own common sense and experience and determine what amount would be appropriate to punish the defendants and to create a deterrent example. The amount of punitive damages should be fair and reasonable. It should take into account the degree of reprehensibility of the defendants' conduct and the relationship to the actual harm inflicted on the plaintiff. It should be proportionate to the need to punish the defendants and to deter them and others from like conduct; it should not be based on whim or on unrestrained imagination.[53]

The extent to which a particular sum of money will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against whom or which damages are awarded.  Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the Defendant in fixing the amount of such damages.[54] However, you may not award punitive damages against the Town of East Hartford.

---

[53] Section 1983 Litigation Jury Instructions, v. 4 Instruction 18.01.17 *adapted from* Perla v. Village of Hempstead, No. 90 Civ. 3182 (ADS) (E.D.N.Y. 1993).

[54] Restatement II Torts, § 908(2).  Perrin v. Anderson, 784 F.2d 1040, 1047-48  (10th Cir. 1986); Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir. 1978); Newport v. Fact Concerts, Inc., 453 U.S. 247, 269 (1986).

**INSTRUCTION NO. 32**

Joint and Several Liability


When two or more persons or entities unite in causing an indivisible harm to a plaintiff, as is alleged in the present case, they can be charged with what the law calls joint and several liability for their acts. Joint and several liability means that each defendant is held liable for the entire amount of actual injury caused to the plaintiff as a result of the defendants' actions. The law does not require the injured party to establish how much of the injury was caused by each defendant. Rather, if the plaintiff is entitled to compensatory damages, the law permits a total sum of damages to be awarded to the plaintiff without breaking down how much each defendant is responsible for the damages. The plaintiff, however, will be entitled to only one recovery against the defendants.[55]

---

[55] M. Schwartz & G. Pratt, <u>Section 1983 Litigation Jury Instructions</u>, v. 4 Instruction 18.06.2 *adapted from* <u>Smith v. Tucker</u>, No. 88 Civ. 2798 (S.D.N.Y. undated).