**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| PABLO ROSA, | * |
| Plaintiff | * |
|  | * |
| VS. | *   CIVIL ACTION NO. |
|  | *   3:00CV1367 (RNC) |
| TOWN OF EAST HARTFORD, ET AL. | * |
|  | * |
| Defendants | * |
|  | * |
|  | *   AUGUST 17, 2004 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MOTION IN LIMINE

The Plaintiff, Pablo Rosa, moves to have the court grant his Motion in Limine requesting a ruling on whether certain evidence which he intends to introduce against the defendant, police officer, William Proulx is admissible, to wit:

## I.  INTRODUCTION:

Numerous similar prior acts contained within citizen complaints and lawsuits lodged and/or filed against Officer William Proulx after he joined the East Hartford police force and occurring before November 26, 1998, the day of the incident in question in which he ordered his police canine Bruno to attack the Plaintiff, as more particularly set forth herein, under Federal Rules of Evidence, may be introduced to

show "motive opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident," or other purposes.  Fed. R. Evid. 404(b).

Reports and photographs of injuries taken and filed pursuant to General Order 41.02.17 in which Officer Proulx used police canine Bruno to apprehend and arrest other citizens by commanding Bruno to bite them are also relevant to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident," or for other purposes, Fed. R. Evid. 404(b), or as "evidence of the habit of a person . . . , whether corroborated or not and regardless of the presence of eyewitnesses . . . to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit or routine practice."  Fed. R. Evid. 406.  This other act and /or habit evidence in the instant dog bite incident is relevant and admissible for jury comparison of the nature and extent of injuries inflicted by such canine as well as the proper or improper circumstances in which such canine should be utilized and whether the use of force in this case was unreasonable.


II.    **OVERVIEW**

The incident which is the subject matter of this lawsuit occurred on Thanksgiving, November 26, 1998, at 140 Silver Lane in East Hartford, Connecticut at around 7:00 p.m.  Mr. Rosa's Complaint alleges unreasonable force in the use of a police canine, Bruno, by certain of the defendant police officers, primarily Bruno's

handler, William Proulx, as well as the arresting officer, Francis McGeough, in

violation of the Fourth and Fourteenth Amendments to the United States Constitution,

as enforced by 42 U.S.C. § 1983, and of the corresponding provisions of the

Connecticut Constitution, directly.  The Plaintiff also asserts common law claims of

assault and battery, intentional and negligent infliction of emotional distress,

recklessness and negligence, and a statutory claim under Conn. Gen. Stat. § 22-357.

Additionally, the Complaint alleges that the Defendant, Town of East Hartford,

was deliberately indifferent to the civil rights of Mr. Rosa in that it failed to establish

policies and effectuate any meaningful oversight, supervision or discipline of its police

officers, in connection with mishandling of canines when apprehending suspects, in

violation of their Constitutional rights, even though the potential for violation of

citizens' rights because of mishandling or improperly utilizing canines was plainly

obvious (the Monell Count). As such, it is alleged that Officer Proulx, who had a long

and problematic prior history of similar acts of mishandling of his canine, often in

violation of suspects' Constitutional rights, was essentially given free reign by the

Defendants, Town of East Hartford and Chief Shay, to continue such pattern of

conduct, unguided, unmonitored, undisciplined and unabated.  (See, attached hereto,

as Exhibits A and B, a list and affidavit, respectively, containing prior complaints for a

five-year period involving Officer Proulx, thirty-three of which pertain to use of a

police canine in a manner resulting in the attacking and biting and/or injuring of

citizens by the canine, which incidents contain a pattern of similarities with the current incident in that they regularly contain references to improperly using the canine to chase and attack and bite fleeing unarmed suspects; to bite suspects twice or more; to bite unarmed stationary suspects; and, to bite suspects during and/or after handcuffing.  Such a high volume of prior similar incidents over a five year period demonstrate a pattern of conduct which is highly relevant to intent, lack of mistake and pattern or practice in this case.)

Mr. Rosa further alleges that as a result of such policies, the Defendants, William Proulx, commanded and/or allowed the canine Bruno to bite the Plaintiff for up to several minutes, prior to his being handcuffed, while he was being handcuffed, and after he was handcuffed, and also cursed at, kicked and hit the Plaintiff during that same time.  This unprovoked attack, which lasted a prolonged period of time, resulted in skin and muscle tissue being essentially "ripped off", which thereby required the Plaintiff to suffer several days of hospitalization and extensive skin graft surgery which resulted in permanent deformity and disability to the Plaintiff's left leg and skin graft donor site, as well as related clinical depression and anxiety and loss of dignity and self-esteem.  (See, photographs of injuries to Pablo Rosa attached hereto as Exhibit C; and, photographs of other dog bite victims of Proulx attached hereto as Exhibit D).

## III.    LAW AND ARGUMENT

### A.    Evidence of other crimes, wrongs or acts is admissible pursuant to Federal Rules of Evidence 404(b) and the Second Circuit is committed to the "inclusionary approach" to other act evidence.

Federal Rules of Evidence Rule 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .."  The advisory committee's note to Rule 404(b) demonstrates that the intent of Rule 404(b) is to admit such evidence if it is admitted for any other purpose except to show character, unless the admission of prior acts can be excluded for reasons set forth in Rule 403.

The advisory committee's note states:

> This rule provides that evidence of other crimes, wrongs, or acts is not admissible to prove character but may be admissible for other specified purposes such as proof of motive.
>
> Although your committee sees no necessity in amending the rule itself, it anticipates that the use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion or waste of time.  Fed. R. Evid. 404(b) Advisory Committee's Note.

The Second Circuit follows the "inclusionary approach" to other act evidence. United States v. Muniz, 60 F.3d 65, 68 (2d. Cir. 1995); Ismail v. Cohen, 899 F.2d 183, 188 (2d. Cir. 1990). "Evidence of prior crimes, wrongs, or acts is admissible for *any* purpose other than to show . . . propensity." Muniz, 60 F.3d at 69. (internal quotation marks and citations omitted; emphasis in original); See also, Ismail, 899 F.2d at 188 (stating that other acts are admissible for any other relevant purpose.) Relevant evidence is only excluded under Federal Rules of Evidence Rules 403 if the probative value of the evidence is *substantially outweighed* by the danger of unfair prejudice. Ismail, 899 F.2d at 188; Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d. Cir.1991); United States v. Brennan, 798 F.2d 581, 589 (other act evidence admitted if it is relevant to some issue at trial and satisfies probative-prejudice balancing test of Fed. R. Evid. 403).

"The strength of the evidence establishing the similar act is one of the factors the court may consider when conducting the Rule 403 balancing." Id. at 689 n. 6. Other acts may be offered to show a "modus operandi" or pattern of conduct if the other acts share unusual characteristics with the act charged or represent a unique scheme. Berkovich v. Hicks, 922 F.2d 1018, 122 (citing United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978). However, when offered for other relevant purposes pursuant to Rule 404(b), the offering party need only show some similarity

or tangible connection between the acts that makes the prior act relevant to prove a contested fact.  U.S. v. Edwards, 342 F.3d 168, 177 (2d Cir. 2003).

The District Court has broad discretion in determining whether the other act evidence is relevant, and if so, whether any danger of unfair prejudice substantially outweighs the other act's probative value and will be reversed only for an abuse of that discretion.  Ismail, 922 F.2d at 188; United States v. Brennan, 798 F.2d 581, 589 (2d. Cir 1986) (admission of other acts "will not be overturned on appeal absent abuse of discretion.").

Other act evidence has been admitted in cases alleging individual officer misconduct for myriad purposes, pursuant to Rule 404(b).  In Ismail v. Cohen, 899 F.2d 183, 188 (2d. Cir. 1990), the Court affirmed the District Court's ruling admitting a subsequent citizen complaint against the officer to show a common pattern of behavior.  In Ismail, the Plaintiff was allowed to admit a subsequent citizen complaint in which the officer falsely claimed he had struck the citizen in response to a threat to his partner and then falsely arrested the citizen to cover up the act.  899 F.2d at 188.

In United States v. Livoti, 196 F.3d 322, 327 (2d. Cir. 1999), the court held that evidence that the defendant police officer had choked an arrestee in the past was relevant to rebut the officer's claim that he had choked the arrestee unintentionally.  In Kopf v. Skyrm, 993 F.2d 374, 380-81 (4th Cir. 1993), the Fourth Circuit Court of Appeals, also committed to the "inclusionary approach," held it was error for the trial

court to exclude evidence of a prior act offered to demonstrate intent and lack of mistake.

Other act evidence has also been admitted to demonstrate that use of unreasonable force and denial of medical care were intentional and is probative of the need for an amount of punitive damages to deter future similar conduct. <u>Swans v. City of Lansing</u>, 65 F. Supp.2d 625, 646 (W.D. Mich. 1998).

In the present case, evidence of other similar acts committed by Officer William Proulx contained within prior citizen complaints, lawsuits, police reports and reports written and photographs taken pursuant to General Order 41.02.17 (See, General Order 41.02.17, attached hereto as Exhibit E) are relevant and admissible under the following, separate purposes, other than propensity, pursuant to Rule 404(b) of the Federal Rules of Evidence and that danger of unfair prejudice, if any, does not substantially outweigh their probative value under Rule 403 of the Federal Rules of Evidence.

**1.    The prior dog bite incident reports and photographs are admissible to demonstrate the severity of the Plaintiff's injuries as compared to other injuries inflicted by the same canine Bruno which are relevant to substantiate the Plaintiff's claim that the dog bite lasted an extensive period of time and to refute the Defendants' assertion that the bite lasted only five to ten seconds.**

Evidence of other dog bites inflicted by canine Bruno at the command of Officer Proulx are relevant to whether the force used in the present case was

reasonable and occurred as the Defendants assert it occurred.  In this regard, the

Plaintiff will offer expert testimony that the dog bite did not last only five to ten

seconds as Officer Proulx claims.  However, the best method that the jury can use in

determining the time length, severity and reasonableness of the bites inflicted in this

case, is by comparing the photographs of the present bites, within the factual account

presented by the Plaintiff and Defendants, with photographs of bites inflicted by the

exact same dog, at the instruction of the exact same handler, under similar

circumstances described in police reports or citizen complaints. The reason for

admitting the other acts is clearly not to show propensity, but is show that the extent

and severity of the injuries inflicted by canine Bruno in the present case are severe

as compared to previous injuries inflicted by canine Bruno under circumstances, as

described in the written police reports that accompany the photographs, that are

nearly identical to the claimed circumstances of Officer Proulx and McGeough.

The citizen complaints and written police records of the prior dog bites must be

admitted in addition to the photographs of the prior injuries inflicted by the canine in

order for the jury to have a complete understanding of the circumstances of each bite

and to properly evaluate the wounds inflicted in each case, as compared to the

wounds inflicted on Pablo Rosa.  If the citizen complaints about bites and written

police records were not admitted, the jury would be left to speculate as to the

circumstances of the other bites.  The citizen complaints of dog bites should be admitted to offer a complete account of the prior incidents.

It should be noted that in one of the two citizen complaints about a dog bite, the photographs, as of July 13, 2004, have not been provided or are missing and the photographs taken in the other complaint show more severe injuries that in most cases, not necessarily in damage, but in number because this complainant suffered numerous bites to his back, arm, and both legs.  Additionally, **both** complaints allege that the bite victim was either handcuffed or being held by another officer while the dog was still biting the complainant.  And, in one dog bite incident, the bite victim was definitely handcuffed, as implicitly stated in the **officers' accounts** of what happened when the bite took place, but the victim never made a formal complaint.

The written reports of dog bite incidents describe the circumstances of the bites and the photographs depict those injuries.  In many cases, the written reports and citizen complaints describe the injury, how long the bite lasted and why a canine bite was utilized.

It would not be unfair to admit into evidence citizen complaints about those bites, given that in most of the dog bite incidents a citizen complaint gives the only account of the citizens' version of the circumstances because the police failed to obtain witness and victim statements about the incident, even though required to do so.  See, General Order 41.02.17. Exhibit E.  In essence, the Defendants had the

opportunity to negate any appearance of wrongdoing in the use of police canines that may be represented by the General Order reports and complaints by obtaining witness or victim statements, but failed to do so.  Given that the police themselves failed to follow the requirements of the General Order, any prejudice that might result from the appearance that the force used was not appropriate is not unfair because they were responsible for adequately investigating and documenting police canine bites.

The photographs depicting other dog bite injuries inflicted by canine Bruno and the written reports or how they occurred, when compared to the injuries to the Plaintiff and his factual account of the circumstances of the bite, are highly probative of the fact that the force used was unreasonable and that the bite did not occur as Officer Proulx claims.  When the photographs are compared, it is clear that the bite to the Plaintiff was one of the most injurious and extensive ever inflicted by Bruno.  The written reports are highly probative in that they generally assert that other bites that took place lasted about the same amount of time.  The probative value clearly outweighs the danger of any unfair prejudice because without the admission of photographs and written reports, the jury will be guided only by expert testimony and witness descriptions when the best evidence lies in the form of photographs of actual bites inflicted by canine Bruno coupled with written descriptions of the circumstances

of those bites. Unfair prejudice to the Defendants, if any, can be properly cured with a limiting instruction.

The other act evidence in the form of police reports has a high degree of reliability because the police wrote the reports, took the photographs and acknowledged that the dog bites occurred.  The citizen complaints are also generally reliable because, in all the cases, there is not dispute that the bite took place, only a dispute about the circumstances.  In addition, citizens must file complaints subject to punishment for filing a false statement punishable under Conn. Gen. Stat. § 53a-157 by up to one year in prison and a $1000.00 fine.  Unfair prejudice, if any, that may result as to Officer Proulx can be negated by a proper limiting instruction similar to that used in Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319, 328 (2d. Cir. 1986), and the court can instruct the jury that there has either never been any authoritative finding as to whether or not any claimant's charge is valid or that Officer Proulx has been exonerated and that the jury is not to assume that the claims are true.

**2.     Prior complaints against William Proulx are admissible to show his knowledge and state of mind that he would not be monitored, investigated or disciplined for unreasonable use of force as applied by canine Bruno and to show the state of mind required of the Recklessness count.**

The other act evidence of prior citizen complaints and written reports made pursuant to General Order 41.02.17 are also relevant and admissible to show

knowledge and state of mind on the part of William Proulx that he would not be investigated, monitored, or disciplined for instructing canine Bruno to bite arrestees to apprehend them.  The written reports relating to dog bite incidents reveal that the Town of East Hartford placed a rubber stamp approval on all dog bites incidents and didn't follow its own rules set forth in General Order 41.02.17.  While, this evidence will clearly be admissible against the Town as part of the Monell count, it is also highly relevant to the unreasonable force claim against Officer Proulx because the lack of investigation and rubber stamp approval of dog bit incidents demonstrates knowledge or state of mind on the part of Officer Proulx that he would not be monitored, investigated or disciplined for future dog bite uses of force that may be improper.

State of mind and knowledge are relevant to the unreasonable use of force claim in this case because Officer Proulx was more inclined to utilize the canine by use of a "bite and hold" technique rather than more reasonable and less injurious methods and levels of force because he knew he would not be disciplined, investigated or monitored, even if the use of a dog bite was unreasonable.

The prior citizen complaints and also reports written and photographs taken pursuant to General Order 41.02.17 are admissible and relevant to proving the intent and state of mind required of a claim of Recklessness.

> Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater than that which is necessary to make his conduct negligent.   Recklessness requires a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence.  The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.  <u>Matthiessen v. Vanech</u>, 266 Conn. 822, 833-34 (2003).

A count of Recklessness requires the Plaintiff to show that William Proulx made a conscious choice of a course of conduct or action with knowledge of the serious danger to others.  All the previous dog bite incidents and injuries inflicted, in which Proulx was involved, are relevant and probative to demonstrate that Proulx was aware that his actions in releasing and instructing the dog to bite Pablo Rosa and allowing the dog to continue to bite Pablo Rosa created serious danger to Rosa. This awareness of serious danger may be inferred not only from his conduct that evening, but also from his conduct and knowledge from other dog bite incidents.

Again, previous injuries inflicted are highly probative of serious danger and unfair prejudice, if any, may be properly addressed with a limiting instruction to the jury that the prior incidents are to be considering by the jury in this regard on to

determine such awareness of serious danger to the Plaintiff when Proulx released

the canine Bruno.

The complaints, photographs and written reports have a high degree of

reliability for reasons discussed above in Part III. A.1., <u>supra</u>.

**3. Prior dog bite incidents are admissible to show a pattern of immediately utilizing a canine by using the "bite and hold" technique to apprehend a suspect rather than less injurious levels of force and absence of mistake in claiming the possible existence of a weapon or threatening behavior to justify the elevated level of force.**

The prior dog bite citizen complaints, reports written and photographs taken

pursuant to General Order 41.02.17 are relevant and admissible to show a pattern of

conduct on the part of Officer Proulx to utilize the canine before other less injurious

levels of force and use the "bite and hold" technique to apprehend a suspect.  Proulx

then asserts a claim of a possible weapons or threatening behavior on the part of a

suspect and inability to capture by other means as well as claims of animal cruelty to

justify the level of force used.  (Closely related is Plaintiff's theory of admissibility

under Federal Rules of Evidence Rule 406 Habit.)

A review of the prior dog bite incidents reveals that in many cases Officer

Proulx utilized the "bite and hold" technique to capture a suspect because the

suspect's conduct indicated he had a weapon.  In many of these instances, the

suspect did not have any weapon.  This evidence is probative of the fact that Proulx

often falsely perceives or even fabricates possible possession of weapon by a dog

bite victim to justify the use of a "bite and hold" technique rather than the less

injurious and forceful levels of force and may have fabricated the claim of a weapon

in the present case.  The prior incidents will be used properly to show an absence of

mistake on the part of Proulx in this case.

Unfair prejudice, if any, may be cured by a limiting instruction to the jury that

there is no evidence in the other cases that Officer Proulx fabricated these claims.

However, the mere fact that no weapon was found in prior incidents is sufficient

evidence for a jury to find that he did fabricate these claims in prior incidents in order

to utilize the canine to apprehend those suspects and is relevant to the present case

to proving that he fabricated a claim that Pablo Rosa was running away with his

hands pulled toward him at his waist in a manner that indicated he had a weapon.

Additionally related to pattern or practice, Proulx often claims the suspect

exhibited threatening behavior or indications that he had a weapon, even though one

is not found.  In the case at hand, Officer Proulx, similarly, specifically claims that he

needed to release Bruno on the Plaintiff, Pablo Rosa, because Mr. Rosa reportedly

was identified on the scene as having a gun and was running with his hand placed

furtively under his shirt near his waist.  Despite the fact that all witnesses from

Apartment C-17, the complainants, testified they told the officers on the scene that

the person suspected of having a gun went into apartment C-10 diagonally across

the hall and despite the fact that no gun was ever found.  Certainly, a practice or pattern of claiming that his dog was unleashed on a fleeing suspect because he believed the suspect had a gun, where no gun was ever found, falls within the ambits of admissible evidence pursuant to Fed. R. Evid. Rule 404(b).

Furthermore, the Defendant, Officer Proulx, also claims that while Bruno was within his immediate control at all times prior to releasing him to chase and bite the Plaintiff, Pablo Rosa; that he observed Pablo Rosa arguing and pushing; he released Bruno in part because Pablo Rosa then fled in disobedience to his command; that the bite was brief; and that he commanded Bruno to release the bite before Pablo Rosa was handcuffed.  However, Pablo Rosa and various other witnesses have testified that in addition to being unarmed, Mr. Rosa was in the hallway separate from and not part of any argument; he never fled; he was bitten within a coupled of feet from where he had been standing inside the hallway door; the attack on him by Bruno occurred while Officer Proulx was nowhere in site; and it continued for up to several minutes, including while an officer placed his knee on Mr. Rosa's back and handcuffed him, and thereafter.

Certainly, a recent pattern of Officer Proulx releasing Bruno on persons who are fleeing, but not dangerous, and/or who are unarmed and not fleeing, as well as a recent history of permitting Bruno to keep biting persons who were handcuffed, is highly probative of intent, lack of mistake, malice, and pattern or practice.

Finally, Officer Proulx claims that the injuries to Pablo Rosa were so severe because he was struggling while being bitten.  This claim is also similar to prior claims by Officer Proulx that his other bite victims struggled as well, thereby producing the need for a longer bite.  Again, evidence of such prior, similar misconduct goes toward intent, lack of mistake, malice, and pattern or practice.

Certainly, when viewed as a whole, the other prior acts share a high degree of similarity to current alleged acts of Officer Proulx as well as his motivation and common practice.  Indeed, they were all inflicted by the same dog, at the command of the same officer and allegedly under very similar circumstances to the present incident.

**B.    The prior dog bite incident reports and photographs are relevant and admissible pursuant to Federal Rules of Evidence Rule 406 Habit; Routine Practice, to demonstrate a habit or routine practice on the part of Officer Proulx to automatically and instinctively utilize the canine Bruno as a means of apprehending suspects while less severe levels of force were available.**

State of Connecticut police canine training records indicate that canine Bruno and Officer were trained in technique known as "bite and hold."  The "bite and hold" technique consists of the handler giving the canine and order which the canine understands as a command to seek out a person and bite him when he is found or to run down a fleeing suspect and stop him by biting him.  The dog will continue to bite the suspect until the dog is ordered to release by its handler.  The use of canine in

this manner generally is considered to be equal to the use of a baton on the continuum of force and it has been held that the use of a police dog to attack could be deadly force in some instances.  See. e.g., Trujillo v. Bernalillo County, Civ. No. 00-1682 JP/LCS-ACE, slip. op. at 5-6 (D.N.M. Dec. 14, 2001) (unpublished memorandum opinion and order).

A review of prior dog bite incidents involving Proulx reveals that Proulx instinctively and automatically reacts to a fleeing suspect be utilizing the canine and disregarding other levels of force.  In almost all instances, Proulx does not claim that he could not physically run down a suspect, nor does he state he calls for assistance. He merely instinctively and immediately uses the canine to apprehend a fleeing suspect.  See, Exhibits A and B, supra.

**WHEREFORE**, the Plaintiff hereby requests that the Court grant his Motion in Limine admitting evidence of prior dog bites by canine Bruno at the instructing of Defendant, William Proulx.

**THE PLAINTIFF, PABLO ROSA,**

BY:_____
David K. Jaffe, Esq.
Eisenberg, Anderson, Michalik & Lynch LLP
Fed. Bar No. 04640
E-mail: DavidJaffe@eaml.com
136 West Main Street
P.O. Box 2950
New Britain, CT 06050-2950
Telephone: (860) 229-4855
Fax: (860) 223-4026

**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing was mailed, postage prepaid on this 17th day of August, 2004 to the following counsel of record:

Thomas R. Gerarde, Esq.
Daniel C. DeMerchant, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114


_____
David K. Jaffe, Esq.

**EXHIBIT A**

**EXHIBIT B**

**EXHIBIT C**

**EXHIBIT D**

**EXHIBIT E**