LOIS Federal District Court Opinions

CASTILLO v. CITY OF ALBUQUERQUE, (N.M. 2002)

JIMMY CASTILLO, Plaintiff, v. CITY OF ALBUQUERQUE et al., Defendants.

Civil No. 01-626 LFG/WWD.

United States District Court, D. New Mexico

April 26, 2002

MEMORANDUM OPINION AND ORDER DENYING JOINT MOTION TO CONSOLIDATE CASES FOR TRIAL

LORENZO F. GARCIA, United States Magistrate Judge.

THIS MATTER is before the Court on the Joint Motion to Consolidate Cases for Trial [Doc. 43] in four separate cases: Chavez v. City of Albuquerque, CIV 00-307 WJ/KBM; Patterson-Montgomery v. City of Albuquerque, CIV 01-444 WJ/DJS; Marquez v. City of Albuquerque, 01-445 WWD/LFG; and Castillo v. City of Albuquerque, CIV 01-626 LFG/WWD.[fn1] The motion is opposed.

Pursuant to Fed.R.Civ.P. 42(a), Plaintiff, Jimmy Castillo ("Castillo") seeks consolidation of cases, asserting that all cases involve similar claims against the City and against Defendant Officer Andrew Lehocky; and that all claims against Officer Lehocky involve allegations of inappropriate use of force as a result of the use of a police service dog. Castillo further argues that it will be burdensome to try separate cases and that the consolidation of cases for trial will promote judicial economy.

The Castillo case, as well as the other lawsuits subject to this motion, all deal with Fourth Amendment claims relating to the alleged use of excessive force in violation of the Constitution. Each of the four cases asserts this same type of excessive force claim against the City and one officer in relation to the use of a police service dog. These factors alone doe not support consolidation. To the contrary, the determination of whether the force exerted by police was so excessive that it violated the Fourth Amendment is a fact-specific inquiry. Indeed, both the United States Supreme Court and our own Tenth Circuit require that the use-of-force determination must be judged from the perspective of a reasonable officer "on the scene" who is "often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989); see also Allen v. Muskogee, Okla., 119 F.3d 837, 840 (10th Cir. 1997), cert. denied 522 U.S. 1148, 118 S.Ct. 1165 (1998).

Given this fact-specific inquiry, consolidation of these cases as proposed is of little value. The fact finder would have to make separate determinations as to each set of circumstances involving each plaintiff and each defendant. Moreover, since the excessive force inquiry includes not only the officer's action at the very moment any threat was perceived, but also the actions in the moments leading up to the suspect's threat of force, each of these situations in the proposed consolidated

EXHIBIT A

cases is likely to be very different. Consolidation would likely require that one jury hear and determine multiple "trials within a trial."

While the Court places great faith in citizen juries to sift through conflicting evidence and make rational and reasonable determinations based on the facts, a consolidation of the four cases complicates rather than facilitates the expeditious, efficient and economical trials of these cases.

In addition to the foregoing, consolidation can unfairly prejudice the rights of a party to a fair trial. For example, a discussion of Fed.R.Evid. 404(a) is helpful to express the Court's concerns about consolidation. That Rule provides:

> Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . (b) other crimes, wrongs or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

The primary purpose of Rule 404 is to protect a defendant from unnecessary or unfair prejudice. It is to prevent the defendant from being convicted because he may be considered bad or evil. Stated differently, the purpose of the Rule is to prevent the use of evidence of prior crimes or bad acts to show the propensity of the person to commit the crimes or to prove particular conduct. J. Wentworth, Treatises on New Mexico Rules of Evidence, § 404-2 (1983).

The danger relating to the introduction of other bad-acts evidence is apparent. A fact finder may inappropriately conclude that a person is culpable in this case, not because he committed the act in question at the time, but, rather, because he is a bad or evil person, or because at some other time, he committed some other bad act. Clearly, the Supreme Court and the Tenth Circuit's focus on objective reasonableness requires the fact finder to look at the conduct in question on a particular case and, based on that, determine whether there is a violation of a plaintiff's constitutional rights.

Given the Court's concerns that the determinations to be made in this case are very fact specific, and because the introduction of evidence relating to other alleged bad acts may unfairly deprive a person of a fair trial, the Court concludes that the motion for consolidation is not well-taken and is denied.[fn2]

MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR BIFURCATION

THIS MATTER is before the Court on Defendants' April 12, 2002 Motion for Separate Trials [Doc. 53]. Plaintiff, Jimmy Castillo ("Castillo"), opposes the motion. The Court considered the motion, response and reply, and determines that oral argument is not necessary. This matter may be resolved on the parties' submissions.

Castillo filed a 42 U.S.C. § 1983 excessive force claim against Officers Andrew Lehocky and Michael Schaller arising out of an incident

occurring on April 10, 2000. Castillo alleged that Officer Lehocky's use of a police service dog and Officer Schaller's use of a non-lethal, air tazer in Castillo's arrest constituted excessive use of force. Castillo's second claim against the City of Albuquerque is based on a supervisory liability theory, including the City's failure to train and supervise its officers.

Defendants seek to bifurcate Castillo's claims against the individual officers from his claims against the City, arguing that the claims are different, they require different legal standards and, more importantly, there is a danger of unfair prejudice because evidence that may be relevant to the supervisory liability claims would be inadmissible on the excessive force claims.

Requests to bifurcate claims of this nature are common. See, for example, Chief Judge James Parker's analysis in Smith v. Stover, CIV 95-1471 (D.N.M. Nov. 6, 1997)[Doc. 126]. So, too, in Baum v. Orosco, 106 N.M. 265, 742 P.2d 1 (Ct.App. 1987), the trial court was faced with the identical situation. Claims were brought against a police officer for excessive use of force and against the City of Hobbs and its police chief for inadequate training and supervision. The trial court reasoned the inadequate training and supervision claims were secondary to and dependent upon plaintiff's successful prosecution of the claims against the individual officer. Indeed, a successful defense to the individual claims would obviate altogether the need for a separate trial on the derivative claims.

The court ordered bifurcation. The excessive force claims against the officer proceeded to trial. The jury returned a verdict in favor of the police officer. As a result, the trial court declined to allow the supervisory liability claim to proceed to trial. An appeal followed, and plaintiff/appellant argued it was error to bifurcate the claims. The New Mexico Court of Appeals disagreed and affirmed the trial court. The appellate court stated:

> A trial judge may order bifurcation of trial, or separate trials of any claim or separate issue, when separate trials would be conducive to expediting the cause and is in furtherance of fairness and judicial economy.

Id. at 268, 742 P.2d at 4.

The standards enunciated in Baum v. Orosco are consistent with federal law. Angelo v. Armstrong World Industries, Inc., 11 F.3d 957 (10th Cir. 1993). Fed.R.Civ.P. 42(b) states, in part:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or issue. . . .
>
> Thus, if a court finds that any of these purposes are served, it may order a separate trial.

In reference to the trial court's decision to bifurcate claims, the appellate court in Baum v. Orosco stated:

> In general, we look with favor on bifurcation in

Case 3:00-cv-01367-AHN Document 107-2    Page 4 of 5

> situations such as this. The procedure simplifies the trial of the primary claim in that the evidence relevant only to the derivative claim is properly excluded in the first trial. Moreover, as here, the jury's determination on the primary claim may eliminate the need for a trial on the secondary claims. Thus, the procedure is less confusing to the jury and promotes judicial economy.

Id. at 268-69, 742 P.2d at 4-5.

The same is true here. Bifurcation will promote convenience by simplifying the issues. Evidence that may be relevant and admissible on the supervisory liability claim has no bearing on whether Officers Lehocky and Schaller's use of force against Castillo was unreasonable in light of the surrounding facts and circumstances. Graham v. Connor, 490 U.S. 397, [490 U.S. 386], 109 S.Ct. 1865 (1989); Allen v. Muskogee, Okla., 119 F.3d 840 (10th Cir. 1997), cert. denied, 522 U.S. 1148, 118 S.Ct. 1165 (1998). Bifurcating Castillo's principal claims from the derivative supervisory claims would allow the Court to limit evidence in the first proceeding only to the facts relevant to the prosecution and defense of Castillo's claims of constitutional violation, negligence and damages arising from those acts. Those issues and the evidence relevant to the Fourth Amendment claim and negligence are relatively straight-forward and the proofs simplified. Fewer witnesses are necessary. This process significantly reduces the costs of the proceeding, and, thus, is in keeping with the cost-savings provisions of the Civil Justice Reform Act, 28 U.S.C. § 471 et seq.

The municipal liability claims are significantly more difficult, time consuming and expensive to present and defend. In reference to the charges relating to municipal liability, Castillo will seek to introduce evidence of multiple other incidents of alleged police misconduct involving Officer Lehocky and his police service dog "Bart." Those other incidents are unrelated to Castillo's underlying claim against the officers, and each has its own set of applicable facts and circumstances. Each may be a trial within a trial. Thus, it is easy to see that the prosecution and defense of these claims will be more complex. For example, evidence of a "number of prior incidents of police [misconduct], the nature of such incidents, and the municipal policy maker's reaction to them," Marryshow v. Town of Bladensburg, 139 F.R.D. 318, 320 (D.Md. 1991), are generally presented. None of that information is relevant to Castillo's underlying primary complaint of excessive force, constitutional violation and negligence allegedly committed by Officers Lehocky and Schaller. Indeed, if evidence of other bad acts, crimes or wrongs were admitted during a joint trial, it could result in unfair prejudice. If a fact finder hears evidence that, at other times, other officers violated rights of citizens, the fact finder may impermissibly conclude that such evidence supports a finding that Officers Lehocky and Schaller, on this occasion, violated Castillo's civil rights. This is an impermissible inference and has been soundly rejected by legal scholars. See, e.g., J. Wentworth, Treatises on New Mexico Rules of Evidence, § 44-1 (1987) (commenting on identical provisions in New Mexico's Rules of Evidence dealing with other bad acts, crimes or wrongs).

In addition, bifurcation of Castillo's claims would reduce the chance of jury confusion. If all the evidence relevant to both claims is presented in one trial, the Court would have to instruct the jury not to consider certain evidence for certain purposes. While instructions to

disregard evidence are frequently given, it is unknown whether jurors actually disregard evidence when so instructed. Thus, it is far better to avoid the problem if possible.

As previously noted, bifurcation in this case is in accord with the cost-savings provisions of the Civil Justice Reform Act. This is especially true if the fact finder determines there was no underlying liability on the principal claims. In that event, a second trial on the derivative claims may be eliminated altogether.

In Smith v. Stover, CIV 95-1471 (D.N.M. Nov. 6, 1997)[Doc. 126], Chief Judge James A. Parker relied on this rationale in ordering bifurcation of supervisory liability claims from the plaintiff's primary excessive force claim. Judge Parker noted that bifurcation was consistent with the standards enunciated in Rule 42(b). I agree.

The Court finds good cause for granting Defendants' motion and orders that Castillo's claims against Officers Lehocky and Schaller be bifurcated from the municipal liability claims. The Court has not restricted discovery, so at the time of Castillo's initial trial on the principal claims, all discovery will have been completed, including discovery on supervisory liability. Thus, if Castillo is successful in his claims against the individual officers, the supervisory liability claims will be tried to the same jury shortly after the first trial. Alternatively, if Castillo is unsuccessful in his prosecution of claims against the individual officers, there is no need for a second trial.

[fn1] The same motion was proposed but denied in Chavez v. City of Albuquerque, CIV 00-307 WJ/KBM.

[fn2] This ruling affects only Castillo v. City of Albuquerque, CIV 01-626 LFG/WWD.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved