UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PABLO ROSA | : | NO.: 3:00CV1367 (RNC) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF EAST HARTFORD, ET AL | : | SEPTEMBER 7, 2004 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S MOTION IN LIMINE RE PLEA OF GUILTY

The defendants in the above-captioned matter hereby submit this Opposition

Memorandum to the plaintiff's Motion in Limine, dated August 17, 2004, which requests

a ruling whether certain evidence is inadmissible against him, to wit: his plea of guilty to

a misdemeanor charge of Breach of Peace stemming from his arrest.

### I.     RELEVANT BACKGROUND

In the instant case, the plaintiff claims that he was "lawfully" visiting his friends at

140 Silver Lane, East Hartford, Connecticut, on November 26, 1998.  (P. Complaint,

Count One, Par. 12).  The plaintiff alleges that the defendant police officers arrived on

the third floor of 140 Silver Lane that night and released a police service dog, suddenly

and without warning, which viciously attacked him. (P. Complaint, Count One, Par. 6).

According to the plaintiff, he "had been standing in the hallway of the complex just

outside a friend's apartment, just prior to being mauled by said K-9…." (P. Complaint, Count One, Par. 6).

At his deposition, the plaintiff testified that he was six or eight feet from a group of persons that were arguing in the third floor hallway of the apartment building.  (P. Depo., pp. 47-48, **Exhibit A**).  The plaintiff contends that he was not involved in the argument, and that he was just standing there doing nothing.  The plaintiff also contends that he was not fleeing from the police when the police service dog bit him.

The defendants' version of the events is much different than the testimony offered by the plaintiff.  The defense contends that two of the defendant officers entered the third-floor hallway and ordered everyone in the hallway not to move.  The defendant Officer Proulx recalled seeing two individuals run to the opposite end of the hallway.  A witness yelled, "they have a gun." The suspects were ordered to stop or the K-9 would be released.  Since the two did not comply, Officer Proulx commanded the Canine Bruno to engage the fleeing suspects.  The suspects exited the fire door at the end of the hall before the Canine Bruno could apprehend them.

Both Officer Proulx and Officer McGeough followed the canine Bruno to the fire door.  At this point, Officer Proulx was fearful that one of the fleeing suspects, either Pablo Rosa or Jamie Rivera, was armed with a gun.  Officer Proulx attempted to push

open the fire door, but felt someone on the other side holding the door shut.   With help

from Officer McGeough and/or Sergeant Mormino, Officer Proulx slowly pushed the

door open a few inches.

       Officer Proulx took a quick peek behind the door, and saw Pablo Rosa

pushing the door with his hands and chest on the door.  Officer Proulx repeatedly yelled

through the door at Pablo Rosa to get his hands up and back away from the door, or he

was going to get bit by the police dog.  Pablo Rosa refused to comply with Officer

Proulx' orders.  Officer Proulx commanded the canine Bruno to go through the partially

opened door and engage the suspect.  Canine Bruno did engage the suspect.  Pablo

Rosa was then arrested and handcuffed by the defendants.

    The State of Connecticut pursued its claims against Pablo Rosa for the charges

of Breach of Peace and Interference with a Police Officer in the matter <u>State of</u>

<u>Connecticut v. Pablo Rosa</u>, CR 98-165019.  Before the trial, Pablo Rosa's counsel

requested that the State specify on the record what the different charges relate to in the

terms of the criminal Defendant's alleged behavior or conduct. (Transcript, April 14,

2000, p. 2, **Exhibit B**).  The Prosecutor complied with this request, stating, in relevant

part:

    "…I would indicate that in support of the breach of peace, it's alleged that the
    Defendant was part of a commotion that was – that took place in the hallway of 140

3

Silver Lane …. and as to the interfering with the peace officer and the breach of peace, the police officers responded to the civilian complaints … and interfered with the officer's investigations and efforts during that response, Your Honor."

(Transcript, April 14, 2000, p. 5, **Exhibit B**).

Defendant's counsel sought clarification of the charges, requesting:

"Just so that I'm clear, with respect to the breach of peace, the alleged breach of peace occurred before the police arrived at the scene, and the interfering occurred after the police had arrived at the scene."

(Transcript, April 14, 2000, p. 5, **Exhibit B**).

The Prosecutor responded that defense counsel's belief was inaccurate.

Specifically, the Prosecutor stated as follows:

"That's actually inaccurate, Your Honor.  I would just indicate that the State claims as there were civilian witnesses present during the Defendant's flight from the police, that that component is also part of the breach of peace.  It's the State's belief that it's an ongoing act."

(Transcript, April 14, 2000, p. 6, **Exhibit B**).

After the State of Connecticut rested its case, the Defendant pled guilty under the

Alford Doctrine to the breach of peace charge, C.G.S. § 53-181.

I.    **LAW AND ARGUMENT**

Connecticut General Statutes § 53-181 Breach of Peace, reads, in relevant part:

(a) A person is guilty of breach of peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or in violent, tumultuous or threatening behavior in a public

4

place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property … (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

The defendants contend that the plaintiff's plea of guilty for breach of peace is an admission of his conduct at the time of the incident, which directly contradicts his claim of "lawful conduct" on the night of November 26, 1998. Specifically, it is admissible as an admission that the plaintiff was engaged in the conduct as alleged by the State Prosecutor: to wit, he engaged in violent, tumultuous or threatening behavior in the third-floor hallway of 140 Silver Lane and created a public and hazardous condition after the police officer's arrival on the scene, by way of his attempted flight from the police. (Transcript, April 14, 2000, p. 6, **Exhibit B**).

### A.    THE GUILTY PLEA UNDER <u>ALFORD</u> IS AN ADMISSION, WHEREBY THE PLAINTIFF IS ESTOPPED FROM OFFERING CONTRARY EVIDENCE AT TRIAL.

There does not appear to be a Second Circuit case on-point with the issue now before this Court. Courts in other jurisdictions, however, have held that a guilty plea under the <u>Alford</u> Doctrine has preclusive effect preventing a plaintiff from relitigating his claimed innocence in a subsequent civil action. <u>See</u>, <u>Calhoun v. Sanderson</u>, No. 01-3765 (E.D.La. 2003) (attached as **Exhibit C**); <u>Blohm v. C.I.R.</u>, 994 F.2d 1542, 1553-1554 (11th Cir. 1993) (attached as **Exhibit D**); <u>Graybill v. United States Postal Service</u>,

782 F.2d 1567, 1573 and n. 1 (Fed. Cir. 1986) (attached as **Exhibit E**) (rejecting

plaintiff's argument that his guilty plea should not have preclusive effect because of "the

great incentive to accept the favorable plea agreement"); Merchants Insurance Co. v.

Arzillo, 472 N.Y.S.2d 97, 98 A.D.2d 495 (2d Dept. 1984) (attached as **Exhibit F**)

(Plaintiff's guilty plea under a Serrano or Alford type plea collaterally estopped him from

re-litigating the issue necessarily determined by his conviction in a civil trial); Matter of

Cumberland Pharmacy, Inc. v. Blum, 69 A.D.2d 903 (2d Dept. 1979) (attached as

**Exhibit G**) (The plaintiff's guilty plea under Alford "binds [him] as strongly as any

admission of facts constituting the crime charged and [his] guilty plea constitutes

sufficient evidence for the finding that [he] engaged in an unacceptable practice"), see

also, Simpson v. Burrows, 90 F.Supp.2d 1108, 1122-1123 (Or. 2000) (attached as

**Exhibit H**) (Alford plea does not make a criminal conviction immune from the

application of issue preclusion); Cortese v. Black, 838 F.Supp. 485, 492 (D. Colo. 1993)

(attached as **Exhibit I**) ("[C]ourts treat Alford pleas as having the same preclusive effect

as a guilty plea."), aff'd, No. 95-1429, 1996 WL 346618 (10th Cir. 1996).

      The legal analysis of the Blohm decision offers guidance to this issue.  In Blohm,

the petitioners appealed from an unfavorable judgment of a tax court arguing, inter alia,

that the tax court's finding that he was estopped from denying liability due to a previous

guilty plea for the same conduct was in error as the prior <u>Alford</u> plea has no collateral

estoppel effect.  The Eleventh Circuit Court of Appeals dismissed the appeal reasoning

that:

> The collateral consequences of a guilty plea may not be avoided by the simultaneous assertion of innocence.  A guilty plea is "more than a confession which admits that the accused did various acts."  <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 418 (1969).  It is an "admission that he committed the crime charged against him."  <u>Alford</u>, 400 U.S. at 32, 91 S.Ct. at 164; <u>McCarthy v. United States</u>, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969).  A guilty plea is distinct from a plea of nolo contendere.  A guilty plea is an "admission of all the elements of a formal criminal charge."  <u>McCarthy</u>, 394 U.S. at 466, 89 S.Ct. at 1170.  A nolo contendere plea is instead a "consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." <u>Alford</u>, 400 U.S. at 35 n. 8, 91 S.Ct. at 166 n 8.

> Once accepted by a court, it is the voluntary plea of guilt itself, with the intrinsic admission of each element of the crime, that triggers the collateral consequences attending that plea.  Those consequences may not be avoided by an assertion of innocence.  As long as the guilty plea represents a voluntary and intelligent choice among alternative courses of action open the defendant, <u>see</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), *and a sufficient factual basis exists to support the plea of guilt … **the collateral consequences flowing from an <u>Alford</u> plea are the same as those flowing from an ordinary plea of guilt.***

(Emphasis Added) <u>Blohm v. C.I.R.</u>, 994 F.2d 1542, 1553-1554 (11th Cir. 1993).

In <u>Turco v. Monroe County Bar Ass'n</u>, 554 F.2d 525 (2nd Cir. 1977), the Second

Circuit discussed the possible collateral consequences of a guilty plea made under the

<u>Alford</u> Doctrine.  The <u>Turco</u> case involved a plaintiff-attorney who was disbarred by the

Appellate Division of New York, Fourth Department. Id.  During the disbarment hearing,

the Appellate Division relied on plaintiff's prior plea of guilty under Alford in support of its

finding of professional misconduct. Id.  The plaintiff, however, argued that he was

entitled to an evidentiary hearing to prove his innocence of the criminal charges. Id. at

519.  Disagreeing with the plaintiff, the Appellate Division held that "North Carolina v.

Alford, supra, did not support appellant's contention 'that he had the right now to prove

that he was not guilty of the charges' to which he had pleaded." Id.

        The plaintiff in Turco filed a notice of appeal upon constitutional grounds and,

alternatively, moved the Court for an order granting leave to appeal. Turco, 554 F.2d at

519.  The appeal was dismissed for want of a substantial constitutional question. Id.

The plaintiff also filed an action in the District Court that was likewise dismissed. Id.  The

plaintiff appealed, again arguing that he was denied due process of law because he was

not afforded an evidentiary hearing to prove his innocence despite his guilty plea. Id.

The Second Circuit ultimately held that the plaintiff's appeal had already been decided

adversely on the merits in State Court, and thus, he was barred from a second appeal

to the Second Circuit.  Id at 520.  Nevertheless, before rendering its decision, the

Second Circuit noted that:

> In the case of a plea of guilty, as distinguished from a plea of nolo contendere, or
> a conviction after trial, it is known that the voluntary plea [under Alford] is likely to

result in collateral consequences. Here the appellant has never asserted that his pleas of guilty were other than voluntary.

Turco, 554 F.2d at 519.

In the instant case, the plaintiff, Pablo Rosa, proceeded to trial on the charges of criminal breach of peace and interference with an officer. Officer Proulx and Officer McGeough were called to the stand to testify concerning their observations of the plaintiff's criminal conduct on the night of November 26, 1998. Two independent witnesses were also called to testify concerning their observations of the plaintiff's criminal conduct on the night in question. It was not until the Prosecutor rested its case that Pablo Rosa voluntarily and with the assistance of counsel entered his plea of guilty under the Alford doctrine. The plaintiff does not challenge the voluntariness of his plea. Therefore, he cannot now proceed forward with a civil action against the arresting officers claiming that his conduct on the third-floor hallway at 140 Silver Lane was "lawful," and that he was just standing there doing nothing when the police arrived on the scene. As in Graybill, supra, the plaintiff should not be able to avoid the preclusive effect of his plea simply because he may have had an incentive to accept a favorable plea agreement. On the contrary, this Court should acknowledge the distinction between a nolo contendre plea and an Alford plea and give preclusive effect to Pablo

9

Rosa's <u>Alford</u> plea in this case, estopping him from claiming that he was not engaged in criminal conduct on the night of November 26, 1998.  <u>See</u>, <u>Turco</u>, 554 F.2d at 519.

### B.    IN THE ALTERNATIVE, THE GUILTY PLEA IS ADMISSIBLE AS AN ADMISSION, BUT WITH NO PRECLUSIVE EFFECT.

Should this Court find that the plea has no preclusive effect, then the defendants submit that the plaintiff's guilty plea under the <u>Alford</u> Doctrine nonetheless constitutes an admission of the conduct charged.

In <u>Ryan v. Westgard</u>, 12 Wn. App. 500, 530 P.2d 687 (1975) (attached as **Exhibit J**), the Appellate Court upheld a trial court's ruling that the plaintiff in a civil matter was entitled to present the jury with facts surrounding the defendant's guilty plea. The Appellate Court reasoned:

> The plea of guilty to the negligent driving charge could be brought in to show the defendant's admission of negligence on his part at the time in question.  It is true that the defendant faces a hard choice in whether to plead guilty to a charge that may be presented later in a civil case as an admission against himself or face the possibility of conviction of a charge that may expose him to greater penalties. The choice is his, however, to be made in the face of the risks involved; and he must face the consequences of his choice.  The defendant explained his reasons for pleading guilty to the reduced charges to the jury.  The jury was free to accept or reject his explanation.

<u>Id</u>. at 511; <u>see</u> <u>also</u>, <u>New York Underwriter Ins. v. Doty</u>, 58 Wn. App. 546, 550-51, 794 P.2d 521 (1990) (attached as **Exhibit K**) (A criminal defendant's entry of an Alford-type guilty plea constitutes an admission of intent to commit the acts underlying the charge.);

Konshuk v. Hayes, 150 Wn. 565, 567, 273 P. 957 (1929) (attached as **Exhibit L**) (A plea of guilty is an admission.  A jury in a civil case must view it in connection with the surrounding circumstances, and give it such weight as in their judgment the circumstances warrant.).

   While the defendants maintain their argument that the plaintiff's guilty plea under the Alford Doctrine **does** have preclusive effect, the defendants alternatively submit that, at a minimum, the guilty plea is an admission; thus, it is admissible in this case.

   **C.    THE GUILTY PLEA IS ADMISSIBLE, RELEVANT, HIGHLY
          PROBATIVE, AND NOT HEARSAY.**

   The plaintiff argues that his plea of guilty is irrelevant under Rule 402, constitutes inadmissible unfair prejudice under Rule 403, and is inadmissible hearsay under Rule 801.  The plaintiff's arguments are contrary to the rules of evidence.

   **1.    The guilty plea is relevant.**

   First, the plaintiff is mistaken as to what the defendants rely upon in this case to show the reasonable use of the police canine.  While the defendants will offer all factual events that occurred on November 26, 1998 into evidence, the law is clear that the plaintiff's attempt to escape and resist arrest contrary to lawful orders, especially by attempting to hold the fire door closed on the defendant officers, was sufficient to warrant the use of a police canine to apprehend him.

11

The plaintiff is under the further mistaken impression that the defendants intend to offer only his guilty plea to justify the use of the police canine.  Instead, the defendants intend to offer the plaintiff's guilty plea as an admission of conduct both before and after the police arrived on the scene, which is in direct contrast to the plaintiff's claim of "lawful conduct."  The guilty plea, combined with the totality of the circumstances, should be considered by a jury to understand the true sequence of events of November 26, 1998, and to determine whether the use of the police canine was objectively reasonable.

**2.      The probative value is high, without any unfair prejudice.**

The probative evidence is self-evident in this case.  The plaintiff's guilty plea is relevant towards the plaintiff's conduct both before and after the police officers' arrival on the scene that evening.  The plaintiff claims unfair prejudice because he intends to testify that he was lawfully standing in the hallway at all times and his guilty plea would operate to discredit his testimony.  In other words, it is the probative value of this evidence that the plaintiff claims he is prejudiced by.  The plaintiff's argument is contrary to the purpose and meaning of Rules 402 and 403, and should be disregarded.

3.    **The judgment of conviction is not hearsay.**

The plaintiff next argues that the evidence of misdemeanor convictions is

impermissible hearsay.  In support of his argument he cites to McEachron v. Glans, No.

98-CV-17 (LEK/DRH) (N.D.N.Y., Aug. 23, 1999) (attached as **Exhibit M**) and contrasts

United States v. Gotti, 641 F. Supp. 283, 289 (E.D.N.Y. 1986) (attached as **Exhibit N**).

The plaintiff's reliance upon McEachron, supra, is misplaced, as the defendant in

McEachron sought to introduce evidence that he was acquitted of a motor vehicle

infraction in support of his claim of having no liability in the underlying civil case.  The

McEachron Court precluded the evidence, stating as follows: "[b]ecause the burden of

proof for a finding of liability in a civil trial is a preponderance of the evidence, and the

burden of proof for a verdict of guilty in a criminal trial is reasonable doubt, an acquittal

in a criminal trial itself makes a finding of no liability in a civil trial only slightly more

probable." Id.  In contrast, a guilty plea following a criminal hearing has significant

weight toward proof of conduct in a subsequent civil proceeding.  The McEachron

decision had no relation to the issue now before this Court.

In Hancock v. Dodson, 958 F.2d 1367 (6th Cir. 1992) (attached as **Exhibit O**), the

District court addressed the identical issue raised by the plaintiff in the instant case.  In

Hancock, the plaintiff appealed a jury verdict in favor of the defendant police officers in a

Section 1983 excessive force case.  The plaintiff argued, inter alia, that the plaintiff's

pleas of guilty and payment of a $60.00 fine for assault and battery and disorderly

conduct were inadmissible hearsay under Rule 803(22); thus, the pleas were improperly

admitted as admissions during the trial.  The Sixth Circuit Court of Appeals disagreed,

finding that the trial court properly admitted the pleas to the misdemeanor charges.  The

Court found as follows:

> We need not address appellant's challenges to the reliability of guilty pleas to
> misdemeanor charges made by a party because such evidence is not hearsay,
> but is admissible non-hearsay under FRE 801 (d)(2)(A).  Where other courts
> have confronted this question, they have concluded that such guilty pleas, not
> made an exception under FRE 803(22), are admissible as non-hearsay under
> FRE 801 (d)(2)(A).

Hancock, 958 F.2d at 1372.

The Hancock Court cited to the Gotti decision relied upon by the plaintiff in this

case.  Id.  The Hancock Court also cited to two other Circuit Court cases that upheld a

lower court's admission of guilty pleas to traffic offenses as admissions of conduct in the

subsequent civil lawsuits. Id. at 1372, citing, Romine v. Parman, 831 F.2d 944 (10th Cir.

1987) and Rain v. Pavkov, 357 F.2d 506 (3rd Cir. 1966).

The Hancock Court held that the plaintiff's guilty pleas were sufficiently reliable to

be admitted under FRE 403. Id. at 1371-1372.  The Court further held, in the alternative,

that such guilty pleas were admissible under the catch-all exception FRE 803 (24).  The

14

Court justified the trustworthiness of the pleas on the following: (1) the plaintiff in the underlying criminal case was represented by counsel, and (2) the plaintiff had a sufficient opportunity to challenge the guilty plea after it had entered. Id. at 1372.  See also, Hinshaw v. Keith, 645 F.Supp. 180, 184 (Me. 1986) (attached as **Exhibit P**) (Misdemeanor plea admissible against party as an admission pursuant to FRE 801(d)(2) subject to the balancing of FRE 403.); United States v. Loera, 923 F.2d 725, 730 (9th Cir. 1991) (attached as **Exhibit Q**) (Judgments of misdemeanor convictions are admissible under the public records exception to the hearsay rule.).

In the instant case, the reasons for trustworthiness of the plaintiff Pablo Rosa's guilty plea for breach of peace is even higher than the reasons relied upon in the Hancock decision.   Pablo Rosa was represented by counsel in the underlying criminal matter and did in fact challenge the charges by way of a trial.  The State of Connecticut proceeded with the prosecution of the case, and offered four witnesses, including two of the defendant officers, who testified as to Pablo Rosa's criminal conduct.  It wasn't until the Prosecutor rested his case that Pablo Rosa, voluntarily and with advice from counsel, pled guilty to the crime of breach of peace.  The defendants submit that Pablo Rosa saw the overwhelming evidence against him at trial, and found it in his best interests to plead guilty.  Indeed, a judge cannot accept a plea under the Alford doctrine

unless "the record before the judge contains strong evidence of actual guilt." <u>Alford</u>, 400 U.S. at 37.

Accordingly, the defendants contend that the plaintiff's guilty plea is admissible pursuant to Rule 403, Rule 801 (d)(2)(A) or, in the alternative, Rule 803 (24).

**IV.    CONCLUSION**:

Based on the foregoing, the defendants respectfully request that the plaintiff's request for relief by way of his Motion in Limine be denied and an order enter concerning the admissibility and collateral effect of the plaintiff's guilty plea for the charge of breach of peace.

DEFENDANTS,
TOWN OF EAST HARTFORD, OFFICER
WILLIAM PROULX, OFFICER FRANCIS
J. MCGEOUGH, SERGEANT JAMES E.
LEONARD, OFFICER THOMAS
CASTAGNA,
OFFICER JOHN DOE #1, OFFICER JOHN
DOE #2, AND CHIEF JAMES W. SHAY


By/s/Daniel C. DeMerchant
  Daniel C. DeMerchant
  ct19342
  Howd & Ludorf
  65 Wethersfield Avenue
  Hartford, CT  06114
  (860) 249-1361
  (860) 249-7665 (Fax)
  E-mail:  ddemerchant@hl-law.com

17

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via First Class Mail and Facsimile to the following counsel of record this 7th day of September, 2004.


David K. Jaffe, Esquire
Eisenberg, Anderson, Michalik
  & Lynch, LLP
136 West Main Street
P.O. Box 2950
New Britain, CT  06050-2950
(860) 223-4026 (fax)


/s/Daniel C. DeMerchant
Daniel C. DeMerchant