U.S. Federal Circuit Court of Appeals Reports

---

GRAYBILL v. UNITED STATES POSTAL SERVICE, *782 F.2d 1567* (Fed. Cir. 1986)

LARRY E. GRAYBILL, PETITIONER, v. UNITED STATES POSTAL SERVICE, RESPONDENT.

Appeal Nos. 85-766, 85-910.

United States Court of Appeals, Federal Circuit.

February 3, 1986.

**Page 1568**

[EDITORS' NOTE: THIS PAGE CONTAINED HEADNOTES AND HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.]

**Page 1569**

Wesley D. Blakeslee, Westminster, Md., argued for petitioner. With him on brief was William R. MacDonald.

Thomas J. Rappaport, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan and Stephen E. Alpern, Associate Gen. Counsel. Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Washington, D.C., of counsel.

Petition for review from the Merit Systems Protection Board.

Before MARKEY, Chief Judge, DAVIS, Circuit Judge, and HARVEY,[fn*] Senior District Judge.

[fn*] The Honorable James Harvey, Senior District Judge, United States District Court. Eastern District of Michigan, sitting by designation.

JAMES HARVEY, Senior District Judge.

[1] Larry E. Graybill petitions for review of Merit Systems Protection Board (hereinafter MSPB or Board) decisions, 22 M.S.P.R. 554 and 22 M.S.P.R. 652. These MSPB decisions upheld Graybill's suspension and removal from the United States Postal Service following his arrest on charges of sexual misconduct with a minor and his subsequent guilty plea. We affirm.

[2] <center>**BACKGROUND**</center>

[3] Larry Graybill was a twenty-three year veteran of the postal service when he was arrested by Westminster, Maryland police on June 9, 1982 and charged with child abuse and engaging in sexual intercourse with a minor. These charges were based on statements made to police by Graybill's step-daughter that Graybill had engaged in sexual intercourse and had other sexual contact with her in their home on five separate occasions from December 25, 1981 to May 31, 1982. Following his arrest, Graybill appeared before a Maryland commissioner who found that reasonable cause existed to hold him for further proceedings and who ordered bail

set at $10,000.00. A preliminary hearing was held on August 17, 1982 before Maryland District Judge Arnold who found that probable cause existed to believe that Graybill had committed the offenses in question. Judge Arnold accordingly ordered that Graybill be bound over for trial.

[4] On August 20, 1982, Westminster Post-master Norman Despres was presented with an investigative memorandum detailing the events of Graybill's arrest. After reviewing that memorandum, Postmaster Despres notified Graybill that he was recommending that Graybill be suspended indefinitely pending an investigation. Post-master Despres noted that because reasonable cause existed to believe that Graybill was guilty of a crime for which a sentence of imprisonment could be imposed, Graybill's continued retention was not in the best interest of the service. The regional director of the post office reviewed the evidence, accepted Postmaster Despres' recommendation, and placed Graybill on indefinite suspension effective September 9, 1982.

[5] Following his suspension, Graybill appealed to the Merit Systems Protection Board. Graybill argued that his suspension was improper for the reason that no substantial evidence existed to support the
**Page 1570**
conclusion that his suspension would promote the efficiency of the service. The presiding officer who heard the appeal agreed with Graybill and reversed the imposition of the suspension. Nevertheless, on appeal to the full Board, the MSPB reversed the decision of the presiding officer and reinstated the suspension. Graybill then appealed to this Court and the validity of his suspension is one of two questions now before us.

[6] On October 6, 1983, the state's attorney for Carroll County, Maryland issued a fifteen count criminal information against Graybill which charged him with criminal child abuse and with engaging in sexual intercourse with a minor. Graybill appeared before Maryland Circuit Judge Burns on April 6, 1983 and entered a plea of guilty to counts eleven through fifteen of the information. Graybill entered his plea after reaching a favorable plea bargaining agreement by which the state agreed to *nolle prosequi* counts one through ten of the information which included the more serious charges of criminal child abuse. After satisfying himself that Graybill understood the charges against him, understood his absolute right to a jury trial, and understood the consequences of a guilty plea, Judge Burns accepted Graybill's guilty plea and found him guilty beyond a reasonable doubt of the charges in counts eleven through fifteen of the information. Judge Burns then imposed a five year suspended sentence and placed Graybill on supervised probation with the understanding that he would participate in the sex offender program at Johns Hopkins Hospital.

[7] By letter dated April 19, 1983, Postmaster Despres notified Graybill that he was recommending that Graybill be removed from the postal service. Postmaster Despres' recommendation was adopted by the post office and Graybill's employment terminated effective May 18, 1983. Graybill appealed his removal to the MSPB which affirmed the service's decision finding that his removal would promote the efficiency of the postal service. The validity of Graybill's removal is the second question before this Court.

[8]                      **OPINION**

[9] In challenging his suspension and termination, Graybill makes three basic arguments before this Court. First, in connection to his termination, Graybill argues that the MSPB erred in ruling that he was collaterally estopped from introducing evidence of his innocence of the charges to which he pled guilty. Second, Graybill argues that the post office failed to introduce sufficient evidence to support a finding that discharge was the appropriate penalty and that his discharge would promote the efficiency of the service. Finally, Graybill argues that the MSPB erred in finding that substantial evidence supported the conclusion that his suspension would promote the efficiency of the service.

[10] The ability of this Court to review a decision of the MSPB is limited and defined by Act of Congress. *See,* 5 U.S.C. § 7703(c) (1982). This Court cannot merely substitute its judgment for that of the MSPB. Rather, an agency's action must be affirmed unless it is found to be:

  1. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

  2. obtained without procedures required by law, rule, or regulation having been followed; or

  3. unsupported by substantial evidence. *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir. 1984).

[11]                  **1. Collateral Estoppel**

[12] Graybill's first assignment of error is his claim that the MSPB erred in applying the doctrine of collateral estoppel. In presenting his case to the MSPB, Graybill sought to introduce into evidence testimony to prove that he was innocent of the charges of sexual misconduct. The presiding officer refused to hear that evidence, holding that Graybill was "collaterally estopped from denying that he is guilty of the crime for which he was convicted."
**Page 1571**

[13] Graybill now argues that the MSPB erred in denying him an opportunity to prove his innocence. He first argues that the doctrine of collateral estoppel should not be applied in quasi-judicial proceedings before administrative agencies. Nevertheless, Graybill has failed to demonstrate how agency proceedings differ from other judicial proceedings such that the MSPB should be precluded from applying the doctrine of collateral estoppel.

[14] We agree with the Court's observation in *Chisholm v. Defense Logistics Agency,* 656 F.2d 42 (3rd Cir. 1981), that the same principles of judicial efficiency which justify application of the doctrine of collateral estoppel in judicial proceedings also justify its application in quasi-judicial proceedings.

  It is well established that the doctrine of

collateral estoppel contributes to efficient judicial administration, serving the public interest in judicial economy as well as the parties' interests in finality, certainty of affairs and avoidance of unnecessary relitigation. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328-30, 91 S.Ct. 1434, 1442-43, 28 L.Ed.2d 788 (1971); F. James & G. Hazard, *Civil Procedure,* § 11.2 (2d ed. 1977); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties,* 68 Colum.L.Rev. 1457, 1458 n. 2 (1968). We see no obstacle to the Board's use of the judicially developed doctrine of collateral estoppel in an appropriate case unless the legislative scheme indicates otherwise.

[15] *Id.* at 46. *See also, Otherson v. Department of Justice, I.N.S.,* 711 F.2d 267, 271-72 (D.C.Cir. 1983).

[16] Similarly, we conclude that in providing for MSPB review of agency decisions, Congress erected no obstacle to the application of the doctrine of collateral estoppel in those proceedings. Indeed, it appears that in enacting the Civil Service Reform Act of 1978, Congress anticipated that the MSPB would take into account other applicable provisions of law. Congress specifically provided that "[t]he Merit Systems Protection Board shall hear, adjudicate, or provide for the hearing or adjudication, of all matters within the jurisdiction of the Board under this title, Section 2023, or any other law, rule, or regulation *and subject to otherwise applicable provisions of law,* take final action on any such matter." 5 U.S.C. § 1205(a)(1) (1982) (emphasis added). *See also,* S.Rep. No. 969, 95th Cong., 2d Sess. 29 (1978), reprinted in U.S. Code Cong. & Admin.News 1978 pp. 2723, 2751; *Chisholm v. Defense Logistics Agency,* 656 F.2d at 46; and *Otherson v. Department of Justice, I.N.S.,* 711 F.2d at 271. We read this language to indicate that Congress did not intend the MSPB to operate in a vacuum. Rather, Congress intended the MSPB to utilize other law to the extent that that law does not conflict with the Civil Service Reform Act.

[17] Having concluded that the MSPB may avail itself of the doctrine of collateral estoppel in appropriate cases, we turn to Graybill's contention that the MSPB erred in applying the doctrine in the present case.

[18] The Full Faith and Credit Clause of the Federal Constitution, as implemented by 28 U.S.C. § 1738, requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered. *See, Marrese v. American Academy of Orthopaedic Surgeons,* ___ U.S. ___, 105 S.Ct. 1327, 84 L.Ed.2d 274, 283 (1985); *Migra v. Warren City Dist. Bd. of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); and *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

[19] Graybill contends that the applicable law of collateral estoppel is that of the state of Maryland and that the MSPB erred in holding that Maryland would estop him from introducing testimony of his innocence into evidence. The Post Office

concedes that it is necessary, at least initially, to look to state law to determine what preclusive effect Graybill's guilty plea should be given. Nevertheless, the Post Office argues that it may be appropriate to consider federal preclusion principals in the event that state
**Page 1572**
law is found to differ from federal law. *Marrese v. American Academy of Orthopaedic Surgeons,* 105 S.Ct. at 1333 n. 2, *supra.*

[20] In looking to state law, Graybill argues that Maryland would not give his guilty plea such broad preclusive effect so as to foreclose him from introducing into evidence testimony of his now-claimed innocence. In support of his claim that Maryland refuses to admit evidence of a criminal conviction in a subsequent civil suit, Graybill cites *Brooks v. Daley,* 242 Md. 185, 218 A.2d 184 (1966); *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 59 A.2d 313 (1948); and *Galusca v. Dodd,* 189 Md. 666, 57 A.2d 313 (1948).

[21] The Post Office responds that Graybill misinterprets the Maryland law of collateral estoppel as it applies to this case. Succinctly, the service argues that the cases cited by Graybill hold only that in a subsequent civil suit, a prior criminal conviction is inadmissible for certain purposes as an evidentiary matter. *Kuhl v. Aetna Casualty and Surety Co.,* 51 Md. App. 476, 443 A.2d 996 (1982), *aff'd* 296 Md. 446, 463 A.2d 822 (1983).

[22] After reviewing the Maryland law of collateral estoppel, we are persuaded that Maryland would preclude Graybill from introducing testimony of his claimed innocence of the charges of sexual misconduct into evidence. We reach this conclusion because we find that the cases cited by Graybill are distinguishable from the one now before us and because we find that all of the elements which must be established in order to invoke the doctrine of collateral estoppel are present in this case.

[23] Graybill cites *Brooks v. Daley, supra, Eisenhower v. Baltimore Transit Co., supra,* and *Galusca v. Dodd, supra,* in support of his argument that the MSPB improperly applied the Maryland law of collateral estoppel. Nevertheless, we believe that these cases are distinguishable from the case at bar. The precise holding of each of the cases cited by Graybill is that a criminal judgment is not competent evidence to establish civil liability in a subsequent action for damages arising out of the offense for which the party was convicted. *Brooks v. Daley,* 242 Md. at 196, 218 A.2d at 190; *Eisenhower v. Baltimore Transit Co.,* 190 Md. at 538, 59 A.2d at 319; and *Galusca v. Dodd,* 189 Md. at 669, 57 A.2d at 314. Importantly, the basis for these holdings was a recognition of the fact that the elements in criminal and civil causes of action differ as do the procedures which govern the admission of the evidence that determines whether the elements have been proven. *Aetna Casualty & Surety Co. v. Kuhl,* 296 Md. 446, 450, 463 A.2d 822, 825 citing *General Exchange Insurance Corporation v. Sherby,* 165 Md. 1, 7, 165 A. 809, 811 (1933). Moreover, implicit in the Court's opinion in *Kuhl* is a recognition of the fact that the admission into evidence of a criminal conviction is highly prejudicial and improper given the disimilarities of the requisite elements and available defenses.

[24] The elements in a criminal action for assault, for example, differ from the elements which must be established in a civil suit for assault (e.g., *mens rea* is a required element in a criminal suit but not in a civil suit). Thus, a defendant may be found innocent of criminal assault but, nevertheless, be found liable in a civil suit for damages. Criminal and civil suits in Maryland are governed by separate rules respecting the competency of witnesses and the relevancy, materiality and weight of evidence. Finally, the availability of defenses under Maryland law differ depending on the nature of the suit. *Id.*

[25] Although we could find no case directly on point, we do not believe that Maryland would apply the reasoning in *Brooks, Eisenhower,* and *Galusca* to the case before us. Unlike the cases cited by Graybill in which one party sought to use the doctrine of collateral estoppel to establish liability under a second legal theory, the MSPB sought only to establish through the use of collateral estoppel exactly what had been previously determined. The MSPB sought only to establish the fact of Graybill's guilt as determined in the criminal action. The

**Page 1573**

MSPB was not attempting to establish civil liability under a separate legal theory based upon the same predicate acts. Accordingly, we conclude that Maryland would hold that the doctrine of collateral estoppel is applicable in the case before us.

[26] Having determined that the doctrine of collateral estoppel may be properly applied in this case under Maryland law, there remains the question of whether the MSPB was correct in finding that all of the requisite elements are present. We conclude that it was. Under Maryland law, a four point test must be satisfied in order for the doctrine of collateral estoppel to be applicable: 1) the issue in the prior adjudication must be identical to the issue in the present case; 2) there must have been a final judgment on the merits in the prior case; 3) the party against whom the doctrine is presently being asserted must have been a party to the earlier action; and 4) the party against whom the doctrine is being asserted must have been given fair opportunity to litigate the issue and be heard in the earlier action. See, *Washington Suburban, Etc. v. TKU Assoc.,* 281 Md. 1, 18, 376 A.2d 505, 514 (1977), and *Pat Perusse Realty Company v. Lingo,* 249 Md. 33, 45, 238 A.2d 100, 107 (1968). See also, *Otherson v. Department of Justice, I.N.S.,* 711 F.2d at 273.

[27] Applying these four criteria to Graybill's case, we conclude that the Board was correct in finding that each of the required elements is present. Clearly, the issues in the two proceedings were the same. The MSPB sought to preclude Graybill from relitigating the issue of his guilt of the charges of sexual misconduct because it correctly found that this precise issue had already been litigated in the Maryland courts. Turning to the second and third criteria, it is beyond all question that the Maryland courts issued a final judgment on the merits, finding Graybill guilty of the charges in question, and that Graybill was a party to that prior adjudication. Finally, we are convinced that Graybill had a full and fair opportunity to litigate the issue of his innocence of the charges of sexual misconduct. That Graybill instead voluntarily chose to plead guilty and thereby avoid possible conviction on the more serious charges of criminal

child abuse does not change this result.[fn1]

[28]                        **2. Nexus**

[29] As a federal agency, the Post Office is vested with the authority to discharge employees for such cause as will promote the efficiency of the service. 5 U.S.C. § 7513(a) (1982). As a general rule, the Post Office bears the burden of demonstrating the existence of a nexus between the challenged conduct and the efficiency of the service. *Crofoot v. United States Government Printing Off.*, 761 F.2d 661, 664 (Fed.Cir. 1985); *Phillips v. Bergland,* 586 F.2d 1007, 1011 (4th Cir. 1978). In certain circumstances, however, an employee's conduct may be so egregious that a nexus between the conduct and the efficiency of the service is presumed. *Crofoot v. United States Government Printing Off.*, 761 F.2d at 664; *Hayes v. Department of the Navy,* 727 F.2d at 1539. Once raised, the employee bears the burden of rebutting such a presumption.

[30] In the present case, the MSPB presumed such a nexus but also found that absent a presumed nexus, the Post Office had introduced sufficient evidence to demonstrate

**Page 1574**

the nexus. In arguing that the MSPB erred in finding that the nexus had been established, Graybill alternatively suggests that off-duty misconduct cannot give rise to the presumption of a nexus and that only excessively violent off-duty conduct, such as murder, is sufficient to demonstrate a presumed nexus. Nevertheless, a number of decisions, including those in *Hayes, supra, Stalans v. National Security Agency,* 678 F.2d 482 (4th Cir. 1982); and *Gueory v. Hampton,* 510 F.2d 1222 (D.C. Cir. 1974), make clear that the courts have not read such a limitation into the law. Rather, the question which the courts have concerned themselves with is the question of whether a particular instance of conduct is so egregious that it is reasonable to conclude that it "would directly relate either to the employee's ability to perform approved tasks or to the agency's ability to fulfill its assigned mission." *Phillips,* 586 F.2d at 1011, *quoting Doe v. Hampton,* 566 F.2d 265, 272 n. 20 (1977). Indeed, this is the question which we must be concerned with.

[31] We conclude that sufficient evidence existed for the agency to find that a connection existed between Graybill's job responsibilities and the charges to which he plead guilty. Moreover, we find the MSPB violated none of the statutory criteria set forth in 5 U.S.C. § 7703 which would require reversal by this Court. The facts before both the agency and the MSPB clearly indicated that Graybill's fellow employees found it difficult to work with him following his conviction. More importantly, the facts before the agency and the Board revealed that Graybill's job responsibilities brought him into regular contact with members of the public, including children, and that Graybill's postal route brought him by local schools. We find no error in the Board's conclusion that a nexus could be presumed to exist between Graybill's misconduct and the efficiency of the service. In any event, the evidence was clearly sufficient to demonstrate the required nexus and we decline to conduct a *de novo* review of the proceedings in this case as Graybill might prefer.

[32]                    3. **The Penalty**

[33] Graybill's final assignment of error is his claim that the penalties imposed, suspension and removal, were unduly harsh. In reviewing the appropriateness of an agency-imposed penalty, this Court does not sit as a final arbiter of disputes between the government and its employees. *Weston v. U.S. Dept. of Housing & Urban Dev.*, 724 F.2d 943, 949 (Fed.Cir. 1983). Our function is not to conduct a *de novo* review of agency disciplinary proceedings in order to determine what penalty we might have imposed. Rather, in reviewing such decisions, we may act to set aside a sanction only if it is found to be so harsh or disproportionate so as to constitute an abuse of discretion. *Weston v. U.S. Dept. of Housing & Urban Dev.*, 724 F.2d at 949; *Hayes v. Dept. of the Navy*, 727 F.2d at 1540. Finally, the agency need not demonstrate that the particular penalty which it has imposed is the least severe penalty which can be imposed to effect the desired result. *Weiss v. United States Postal Service*, 700 F.2d 754, 757 n. 7 (1st Cir. 1983). Rather, the agency need only be able to show that the penalty imposed will increase the efficiency of the service and that it is not arbitrary or capricious.

[34] Applying these standards to the case before us, we conclude that the penalty is not so harsh or disproportionate so as to constitute an abuse of discretion. The Post Office occupies a position of trust within the community and it acted reasonably to increase the efficiency of its other employees and to protect the citizens whom it serves.

[35] Accordingly, Graybill's petition for review is DENIED and the decision of the MSPB is AFFIRMED.

[36] AFFIRMED.

[fn1] Graybill makes a vague argument that he did not have a full opportunity to litigate his guilt because of the great incentive to accept the favorable plea bargaining agreement and because he entered his plea in accordance with *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). While the record is unclear as to whether Graybill actually entered an *Alford* plea, we have treated his plea as such. Nevertheless, we do not believe that this changes the result. An *Alford*≥ plea is a ≤guilty plea. *Id.* at 37-38. More importantly, such a plea cannot be accepted until the court has made a finding that a factual basis exists for the guilty plea. *Id.* See also, Maryland Rule 4-242(c); *Offutt v. State*, 54 Md. App. 472, 458 A.2d 499 (Md. Ct. Spec. App. 1983); and *Crofoot v. United States Government Printing Off.*, 761 F.2d 661 (Fed.Cir. 1985). Finally, we believe that Graybill's arguments that it would be fundamentally unfair to allow for use of the doctrine of collateral estoppel in this case are without merit in light of *Alford*, supra and *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

**Page 1575**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved