Case 2:03-cv-01387-AHM  Document 108-7   Filed 09/07/2004   Page 1 of 7

Washington Court of Appeals Reports

NEW YORK UNDERWRITERS INS. v. DOTY, 58 Wn. App. 546 (1990)

794 P.2d 521

NEW YORK UNDERWRITERS INSURANCE COMPANY, *Respondent*, v. HENRY A. DOTY, *Defendant*, JUDITH A. ENGEBRETSON, *Appellant*.

No. 23887-6-I.

The Court of Appeals of Washington, Division One.

July 23, 1990.

[1] **Action — Nature — Substance Over Form.** The identity of the tort for which a plaintiff seeks recovery depends on the underlying nature of the claim rather than on the language of the complaint.

[2] **Insurance — Exclusions — Intentional Injury — Scope of Intent.** An exclusion from liability insurance coverage for a bodily injury expected or intended by the insured applies if the insured intended both to commit the act that caused the injury and to cause some kind of bodily injury.

[3] **Criminal Law — Plea of Guilty — Plea Bargaining — Effect — Admission — Collateral Estoppel.** A criminal defendant's entry of an Alford-type guilty plea constitutes an admission of an intent to commit the acts underlying the charge but does not collaterally estop the defendant from later claiming an absence of intent to commit such acts.

[4] **Criminal Law — Crimes — Elements — Intent — Capacity To Form Criminal Intent.** A criminal defendant who is found to be not insane at the time of committing the criminal act charged is presumed to be sane and to be able to form the general intent to commit the crime.

[5] **Insurance — Exclusions — Intentional Injury — Assault.** For purposes of an exclusion from liability insurance coverage for a bodily injury expected or intended by the insured, a person who physically assaults a victim, whether or not the assault is sexual in nature, intends to cause some kind of bodily injury.

**Nature of Action:** An insurer sought a declaration of noncoverage for damages sought by the insured's former spouse in a civil suit based on the insured's physical and sexual assault of her. The insurance policy excluded coverage for bodily injury expected or intended by the insured. The insured had entered an Alford-type guilty plea in a prosecution for second degree rape.
Page 547

**Superior Court:** The Superior Court for King County, No. 88-2-11652-1, Arthur E. Piehler, J., on March 3, 1989, granted a summary judgment in favor of the insurer.

**Court of Appeals:** Holding that the insured's intent was not

EXHIBIT K

established by his guilty plea but that the record demonstrated that the insured intended both the assaultive acts and the ensuing injuries, the court *affirms* the judgment.

*Monte Bersante* and *Davies Pearson, P.C.,* for appellant.

*John P. Erlick* and *Cozen & O'Connor,* for respondent.

GROSSE, A.C.J.

In this declaratory judgment action, the trial court granted summary judgment in favor of New York Underwriters Insurance Company (NYU). The trial court ruled that NYU had no duty to defend and indemnify Henry Doty (Doty) in a personal injury action brought by his ex-wife, Judith A. Engebretson (Engebretson). She appeals. We affirm.

Doty was a named insured under an NYU homeowners policy that provided both property and liability coverage. An exclusion in the policy provided, in pertinent part:

> **1. Coverage E — Personal Liability and Coverage F —.**
> . . . do not apply to **bodily injury** or **property damage**:
>
> a. which is expected or intended by the **insured[.]**

On March 22, 1988, Engebretson, formerly Judy Doty, filed a complaint for personal injuries against Doty. The complaint alleged:

> On or about July 17 and July 18, 1987, the defendant Henry A. Doty abducted the plaintiff [Engebretson] at gunpoint and over the course of two days subjected her to an unremitting series of physical traumas, attacks, and unlawful restraints. These included repeating [*sic*] pointing and brandishing of a loaded pistol, threats of death and physical injury, sexual attacks, physical attacks and beatings, and other acts and attacks, all of which terrorized the plaintiff physically and mentally.

**Page 548**

The complaint also alleged that Doty was suffering from traumatic organic brain injury and that, because of his diminished capacity, he neither intended nor expected Engebretson's injuries.

After the alleged assault and rape, Doty was committed to Western State Hospital for observation and evaluation. Dr. Gagliardi, the clinical psychologist who treated Doty at Western State Hospital, determined that at the time Doty attacked Engebretson he did not meet "the standard for the *criminal* defense of insanity as set forth under the M'Naghten Test, and as currently followed by the Washington State Supreme Court." The Superior Court found Doty incompetent to stand trial and readmitted him to Western State Hospital. After psychotropic drug treatment, he was determined competent to stand trial.

On April 1, 1988, Doty entered an Alford plea on one count of

second degree rape. In his plea statement he wrote:

> I have reviewed the police reports and probable testimony at trial with my attorney. I understand that if I were to go to trial, there is a strong likelihood that I would be found guilty of the charge. Therefore, although I do not believe I am guilty, I am pleading guilty to take advantage of the State's plea agreement.
>
> I agree to allow the Court to review the Certification of Probable Cause in this case to determine if there are facts sufficient to allow this plea and for that purpose only.

NYU accepted tender of defense, subject to a reservation of rights. It filed this declaratory judgment action and moved for summary judgment regarding its duty to defend and indemnify. After the trial court granted summary judgment in favor of NYU Engebretson appealed.

The issue on appeal is whether Doty's actions alleged in Engebretson's complaint were expected or intended, thus precluding liability under Doty's homeowners policy. Engebretson argues summary judgment was inappropriate because NYU has failed to prove that Doty intended the acts in the underlying personal injury action, and thus, the intentional injury exclusion in the policy does not apply. She further argues summary judgment is precluded because a question of material fact exists on this issue.

**Page 549**

NYU counters (1) that the policy language precludes coverage, since the complaint in the underlying action asserts noncovered claims — intentional torts — and (2) that there is no issue of fact whether Doty acted intentionally. NYU claims that Doty's guilty plea precludes relitigation of the same issue and, that as a matter of law, his intent to harm can be inferred from the nature of the acts.

[1] We are not persuaded by Engebretson's claim that her complaint does not allege any intentional torts and therefore is outside of the exclusionary clause. Engebretson's carefully crafted complaint for personal injury never uses the legal terms (assault, battery, false imprisonment) but nevertheless asserts only intentional torts.[fn1]

[2] NYU argues that the policy language in the exclusion requires that it prove only that Doty intended to cause Engebretson's injuries, not necessarily the acts. However, we believe the rule articulated in *Western Nat'l Assur. Co. v. Hecker,* 43 Wn. App. 816, 719 P.2d 954 (1986) states the correct law in this case. When faced with a similar intentional exclusionary clause the court adopted the majority view that the insured must have intended the act and intended to cause some kind of bodily injury. The court summarized the rule:

> (1) the insured must intend both the act and the injury; (2) intent may be actual or may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm; (3) once intent to cause injury is found, it is immaterial that the

actual injury caused is of a different character or magnitude than that intended. Under this majority view, whether an act is intentional is a separate consideration that must be distinguished from whether the actor intended to cause injury.

**Page 550**

(Citations omitted.) *Hecker,* 43 Wn. App. at 825; *see* Annot., *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957 (1984). Applying this rule here, NYU must prove that Doty intended both the act *and* the injury to prevail at summary judgment.

[3] NYU first claims that the Alford-type[fn2] plea Doty entered for second degree rape establishes his intent to commit the acts alleged in the complaint. We do not agree. *Safeco Ins. Co. of Am. v. McGrath,* 42 Wn. App. 58, 708 P.2d 657 (1985), *review denied,* 105 Wn.2d 1004 (1986), cited by Engebretson, stands for the proposition that such a plea does not preclude relitigation of the issue of intent. Because an Alford-type plea does not allow a "full and fair opportunity" to litigate the issue, the *McGrath* court held the doctrine of collateral estoppel should not apply to these kinds of pleas. The court adopted the sound reasoning of the California Supreme Court:

> A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive. "The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." "This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case." When a plea of guilty has been entered in the prior action, no issues have been "drawn into controversy" by a "full presentation" of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action.

(Citations omitted.)
**Page 551**

*McGrath,* at 64 (quoting *Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 605-06, 375 P.2d 439, 25 Cal.Rptr. 559 (1962), *cert. denied,* 372 U.S. 966 (1963)). While *McGrath* prevents this court from finding that Doty's Alford-type plea proves that he intended his acts, the plea does constitute an admission by Doty.

[4] In addition to this admission, further uncontroverted

evidence in the record demonstrates that Doty intended the acts alleged in Engebretson's complaint. Engebretson submitted the affidavit of Dr. Gagliardi in an attempt to show a dispute of material fact regarding Doty's intent to commit the acts. The uncontroverted affidavit does the opposite. Dr. Gagliardi stated in his affidavit:

> [A]t the time Mr. Doty perpetrated his physical and mental assault upon Judy A. Doty, that Mr. Doty did not meet the standard for the criminal defense of insanity as set forth under the M'Naghten Test, and as currently followed by the Washington State Supreme Court.

RCW 9A.12.010(1) codifies the requirements for an insanity defense:

> To establish the defense of insanity, it must be shown that:
>
> (1) At the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:
>
> (a) He was unable to perceive the nature and quality of the act with which he is charged; or
>
> (b) He was unable to tell right from wrong with reference to the particular act charged.

In finding that Doty was not insane at the time he committed the offenses, Doty is presumed to be sane and able to form the general intent to commit the acts in question.[fn3]
**Page 552**
*See State v. McDonald,* 89 Wn.2d 256, 270-71, 571 P.2d 930 (1977), *overruled on other grounds in State v. Sommerville,* 111 Wn.2d 524, 760 P.2d 932 (1988). This undisputed evidence is sufficient to prove that Doty intended his acts when he attacked Engebretson.

[5] The question remains whether Doty intended the injuries. NYU argues that the trial court should apply *Rodriguez* and its progeny to all of Engebretson's claims. *Rodriguez v. Williams,* 107 Wn.2d 381, 729 P.2d 627 (1986) (incest); *Western Assur. Co. v. Hecker, supra* (forcible anal intercourse); *Grange Ins. Ass'n v. Authier,* 45 Wn. App. 383, 725 P.2d 642 (1986) (indecent liberties), *review denied,* 107 Wn.2d 1024 (1987); *Public Employees Mut. Ins. Co. v. Rash,* 48 Wn. App. 701, 740 P.2d 370 (1987). Washington law is settled on whether the intentional exclusion in Doty's homeowners policy precludes coverage for the sexual abuse allegations in Engebretson's complaint. It does. *Public Employees Mut. Ins. Co. v. Rash, supra,* and *Western Assur. Co. v. Hecker, supra,* are directly on point.

In *Rash,* the insured attempted a similar argument that due to his mental illness he was unable to form a specific intent to harm the victim. The court held the insured's subjective intent was irrelevant in a child sexual assault case, and that once the intent to commit the abuse was proved the intent to harm would be inferred. *Rash,* 48 Wn. App. at 705. In *Hecker,* the Court of Appeals inferred, from the nature of forcible anal intercourse, the intent to harm an adult victim. Thus we can as a matter of

law infer that Doty intended Engebretson's injuries when he sexually assaulted her. *Hecker,* 43 Wn. App. at 827.

Although the complaint here alleges more than a sexual assault, we believe the reasoning of *Rodriguez* and the

**Page 553**
majority rule adopted in *Hecker* allows this court to also infer Doty's intent to harm Engebretson from the nature of his physical assaults.[fn4] In *Rodriguez,* an insured claimed he intended the act of incest but did not intend to harm the victim. Not persuaded by the argument, the Supreme Court held that as a matter of law the intent to harm a victim of sexual abuse may be inferred from the nature of the act itself. The court reasoned that since the Legislature made incest a class B felony, it recognized that incest would harm the victim of such an act. *Rodriguez,* 107 Wn.2d at 387. The same reasoning applies to the intentional assaults committed in this case. All of Doty's acts alleged in the complaint constitute criminal felonies: burglary in the first degree (RCW 9A.52.020, class A felony); unlawful imprisonment (RCW 9A.40.040, class C felony); rape in the second degree (former RCW 9A.44.050, class B felony). We see no basis to distinguish between the sexual assault and the physical assaults in this case. Based on *Rodriguez* we will infer Doty's intent to harm from the nature of his acts.

Further, our decision here is consistent with the majority rule cited in *Hecker* that the language of the policy permits a court to infer an intent to harm from the nature of the act and the reasonable foreseeability of harm. *Hecker,* 43 Wn. App. at 825. *See* Annot., 31 A.L.R.4th 957 (1984). We believe that it was reasonably foreseeable that Engebretson would be harmed by Doty's acts. We have no difficulty believing that Engebretson was terrorized physically and mentally. Such a belief, however, only bolsters the conclusion that Doty's intent to act and intent to harm placed Engebretson's personal injury claim outside the scope of

**Page 554**
Doty's homeowners policy. Accordingly, we affirm the summary judgment.

FORREST and BAKER, JJ., concur.

[fn1] Keeton defines the term intent as it relates to intentional torts.

"The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." (Footnotes omitted.) W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 8, at 36-37 (5th ed. 1984).

[fn2] *North Carolina v. Alford,* 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970).

[fn3] Dr. Gagliardi stated in his affidavit: "Mr. Doty must undergo a complete neuropsychological assessment before his mental capacity to form specific intent as it existed at the time

he confined, assaulted and raped Judy A. Doty, can be accurately assessed." At best, Dr. Gagliardi has asserted that more information is necessary to decide this issue. Dr. Gagliardi has not, however, created a dispute of fact on Doty's ability to form a general intent.

Dr. Gagliardi continued in his affidavit: "It is my further opinion that on a more likely than not basis, that Mr. Doty's organic brain damage causes him to have some level of diminished mental capacity." The criminal defense of diminished capacity applies, however, only when there is an issue of whether the person was able to form the specific intent required for a criminal act. In this complaint, the intentional torts alleged do not require a specific intent. See footnote 1.

[fn4] *Safeco Ins. Co. of Am. v. Dotts,* 38 Wn. App. 382, 685 P.2d 632 (1984), cited by NYU for the proposition that an intent to harm can be inferred from an assault, applies to insurance exclusion based on an occurrence and accident, not on the language "expected or intended by the insured".

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved