LOIS Federal District Court Opinions

McEACHRON v. GLANS, (N.D.N.Y. 1999)

HOWARD J. McEACHRON, as Guardian of DOUGLAS H. McEACHRON, his ward, Plaintiff, v. SHAWN R. GLANS; JAMES D. BOWEN, as Sheriff of the County of Saratoga; SARATOGA COUNTY SHERIFF'S DEPARTMENT; COUNTY OF SARATOGA; and TOWN OF WILTON, Defendants.

98-CV-17 (LEK/DRH)

United States District Court, N.D. New York

August 23, 1999

## MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

(*This decision and order was delivered orally in pretrial conference on 23 August 1999, and placed under seal at that time. The Court now releases the written text of the decision. It is no longer necessary to keep the decision under seal, and the Northern District of New York's policy favoring publication of decisions, together with the possibility that the rulings herein may be of some use to parties or courts in other cases, lead the Court to lift the restrictions previously placed on this text.*)

Pending are Defendants' and Plaintiff's Motions in Limine:

BY DEFENDANT MR. GLANS (A) to preclude video tape depicting Plaintiff Mr. Douglas McEachron; (B) to preclude the presentation of Douglas McEachron to the jury unless he is presented for demonstrative purposes to demonstrate his level of awareness and responsiveness, if any; and (C) to preclude Plaintiff's counsel from using the words "wreck" when referring to the motor vehicle accident and "victim" when referring to Douglas McEachron; and

BY DEFENDANT TOWN OF WILTON (A) to preclude all testimony by lay or expert witnesses and exclude all documentary exhibits in the nature of accident reports of prior incidents on Smith Bridge Road unless the proponent first presents an evidentiary foundation establishing that such prior accidents were caused by the same or similar contributing factors that caused the accident of 28 March 1996; (B) to preclude proposed video exhibits and modified photographs prepared by the expert witness (Mr. Poydar) of the Saratoga County Defendants; and (C) to preclude video tapes of Plaintiff Mr. Douglas McEachron; and

BY PLAINTIFF MR. DOUGLAS McEACHRON (A) to preclude evidence that Douglas McEachron was issued traffic citations for unlicensed operation and for failing to wear a seat belt, and to preclude reference to whether he was licensed to operate a motor vehicle; (B) to preclude proof or reference to the effect that he may not presently "know the value of money"; (C) to preclude evidence of or reference to Melinda McEachron's marital status; (D) to

preclude reference to or evidence of Douglas McEachron's present residence; to preclude Defendant Mr. Glans, Defendant Sheriff Bowen, and other Saratoga Sheriff's Deputies from wearing their uniforms to Court; and (E) to preclude evidence of acquittal of Mr. Glans of vehicle and traffic charges.

FOR THE REASONS STATED BELOW,

The Motions in Limine by Defendant Mr. Glans are hereby **DENIED**;

The Motions in Limine by Defendant Town of Wilton are hereby **provisionally GRANTED IN PART, and DENIED IN PART**; and

The Motions in Limine by Plaintiff Mr. Douglas McEachron are hereby **GRANTED IN PART, and DENIED IN PART**.

The Court wishes to emphasize the well-known precept that state rules of evidence generally do not apply in federal courts. 17 James Wm. Moore et al., Moore's Federal Practice ¶ 124.09[1] (3d ed. 1999). As is the case with most procedural rules in federal courts, the Federal Rules of Evidence apply. Id. One of the few exceptions to this is any claim or issue having its source in state law (typically, but not exclusively, in diversity cases). Id. ¶ 124.09[2]. Under Rule 302 a federal court will apply state law only when a presumption respecting a fact operates on a substantive element of a claim or a defense, as to which state law supplies the rule of decision. Fed.R.Evid. 302 advisory committee's note.

The Court raises the issue of the general rule — that federal courts will usually apply the Federal Rules of Evidence — because Defendant Town of Wilton's Motion in Limine, discussed below, cited New York State case law at several points (at 5 and 12) where the issue of admissibility concerned standards of relevance or prejudice, but did not implicate a presumption respecting a fact. The town appeared, in addition, to make arguments throughout the motion based on a New York evidentiary standard that is subtly but significantly different from the federal standard.[fn1] In all instances in the Town's motion, federal standards governed, and federal rules and case law were the appropriate authority to cite.

## MOTIONS IN LIMINE

I.  MOTIONS IN LIMINE BY DEFENDANT MR. GLANS

<u>Motion in Limine to preclude video tape depicting Plaintiff Mr. Douglas McEachron</u>.

This motion is **DENIED**.

Defendant contends that a video tape containing images of the Plaintiff that were apparently recorded on two dates in October and December of 1998 should be precluded from presentation as evidence to the jury, pursuant to Fed.R.Evid. 104. Defendant objects to this and other video tapes of the Plaintiff on the grounds (1) that the images are not relevant, (2) that the video tapes are prejudicial, (3) that Defense access to the recordings has been inadequate, (4) that a great deal more footage of Plaintiff exists than has already been submitted by Plaintiff for the consideration of the Court and Defendants, and (5) that

submission of the tapes as evidence would require Plaintiff's attorney to become a witness.

1. <u>Relevance</u>

Defendant contends that there is no assurance that the images are representative of Plaintiff's awareness and responsiveness. The images, he asserts, show behaviors that Defense examiners did not elicit in independent evaluations. Moreover, a few minutes' depiction of the Plaintiff, out of three years his life, is misleading.

These arguments fail to establish that the video tapes are not relevant. Should they be submitted in evidence, it would be in support of the proposition that Plaintiff at some times exhibits the behaviors displayed in the images; it is reasonable to assert that the video tapes would tend to make that proposition more probable than it would be without the video tapes. See Fed.R.Evid. 401. Defendant may argue that the images are unrepresentative, or otherwise unpersuasive. One advances such arguments, however, by cross-examining witnesses, and submitting countervailing evidence and witnesses.

2. <u>Prejudice</u>

Defendant contends that while medical records indicate Plaintiff is comatose or minimally conscious most or all of the time, watching the video tapes will render the jury incapable of making a valid assessment of medical evidence. In addition, the video tapes "unduly emphasize[] only one side of the case." (Letter from Mr. Pennock to the Court of 8/09/99, at 2.)

"`Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis. . . ." Fed.R.Evid. 403 advisory committee's note. Defendant has set forth no reason to believe that viewing these video tapes would unduly suggest to a jury that it reach conclusions on the state of Plaintiff's awareness, consciousness or responsiveness on any improper basis. Defendant's argument that the images are unrepresentative may find its proper place in cross-examination or in the presentation of countervailing evidence.

The objection that the video tapes "unduly emphasize[] only one side of the case" is without merit. In our adversary system of justice the attorney for a party is an advocate; while he may <u>not</u> make misrepresentations to the court, his job is to present evidence that tends to support his client's side of the case. His job is not to ensure that the evidence he presents on behalf of his client gives "equal time" to the other side of the case. Defendant's argument implies the untenable conclusion that the greater the probative value of the evidence, the more it is subject to exclusion.

3. <u>Defense access to evidence</u>

The Defense motion notes that Defendants did not observe and verify the recording of the images, and that Defense medical experts have not examined the submitted tapes and other tapes of Mr. McEachron. The Federal Rules of Evidence provide no support for the proposition that a defendant or his representatives must be present at the recording of a video tape in order for it later to be submitted as evidence. It is the responsibility of counsel

to arrange for their clients' experts to view evidence in advance of their testimony. If counsel presently does not have access to potential evidence, that is properly the subject of a motion to produce.

4. Additional evidence

Defendant notes that Plaintiff's guardian, in his 4 November 1998 deposition, indicated that ten or more video tapes of the Plaintiff exist, and in addition one or more video tape of the Plaintiff has been lost. If Defendant believes that access to these video tapes is essential to his defense, that is properly the subject of a motion to produce.

5. Need for attorney to be witness

Defendant notes that Plaintiff's guardian, in his 4 November 1998 deposition, testified that various video tapes of the Plaintiff since the 28 March 1996 accident had been shot by the guardian, by the guardian's mother Melinda McEachron, and by Plaintiff's attorney Mr. Cade. Defendant argues that this means Plaintiff's attorney will have to become a witness in order to authenticate the videos, and in order to explain the loss of some of the tapes.

Defendant cites no authority in support of his position that the photographer must testify in order to authenticate a video tape, and case law, including the precedents of the Second Circuit, is directly to the contrary. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Satisfactory evidence may include: "*Testimony of witness with knowledge*. Testimony that a matter is what it is claimed to be." Id. 901(b)(1). In this Circuit, a witness authenticating a photograph (including video tapes, see id. 1001(2)) "does not need to be the photographer or see the picture taken. It is . . . necessary [only] that he recognize and identify the object depicted and testify that the photograph fairly and correctly represents it." Kleveland v. United States, 345 F.2d 134, 137 (2d Cir. 1965); see also Kortz v. Guardian Life Ins. Co. of Am., 144 F.2d 676, 679 (10th Cir. 1944) ("A photograph is admissible when it is shown that it is a correct likeness of the person[] . . . [that] it purports to represent, and that fact may be shown by the person who made it or by any other competent witness."). Plaintiff's guardian or the guardian's mother could authenticate the video tapes that they shot. Defendant has suggested no reason that they could not also authenticate the video tapes that Mr. Cade shot. Accordingly, Defendant has failed to establish that authentication of evidence will require that Plaintiff's attorney become a witness.

To establish that Mr. Cade would have to become a witness in order to explain the loss of one or more video tapes, Defendant would have to persuade the Court that the loss of the video tape is relevant evidence. At trial the Defendant will endeavor to establish that Plaintiff lacks awareness or consciousness. If the lost video tape showed that Plaintiff is responsive, that would tend to make the Defense's proposition less probable. Accordingly, Defendant would not be attempting to submit the existence or loss of such images into evidence in support of his case.

Indeed, in his motion Defendant has asserted that, in these ten or more video tapes, images of responsiveness by Plaintiff are exceptional. The Court infers from Defendant's arguments that his position is that the lost video tape would show just what he contends at least eight other video tapes show: images of Plaintiff in an unresponsive condition. It is unclear what one video tape showing essentially nothing could demonstrate that eight others showing the same thing had not already demonstrated. To say the least, the marginal probative value of the lost tape would be exceedingly small.

Nonetheless, even if the loss of a videotape were deemed relevant, Defendant has given the Court no reason to believe that testimony by Plaintiff's guardian or Melinda McEachron would not adequately address the matter, or that testimony by Mr. Cade would be uniquely relevant.

<u>Motion in Limine to preclude the presentation of Plaintiff Mr. Douglas McEachron to the jury unless he is presented for demonstrative purposes to demonstrate his level of awareness and responsiveness, if any</u>.

This motion is **DENIED**.

Defendant argues that if Plaintiff is present in the courtroom he will create an impression on the jury that has evidentiary effect, but with little or no probative value, and substantial unfairly prejudicial effect. Defendant cites no authority in support of his argument. The Court's own research found the case of <u>Monaghan v. SZS 33 Assocs.</u>, <u>827 F. Supp. 233</u> (S.D.N.Y. 1993), in which a severely brain-damaged shooting victim's representatives brought a premises liability action against a building owner and other parties. Two defendants moved to exclude the victim from the courtroom during the trial. Judge Sweet granted the motions, ruling that,

> [w]hile the Court recognizes that [the victim]'s mere presence in the courtroom may have some testimonial value, absent a showing of [his] ability to assist in the prosecution of this case, he will be excluded from the courtroom except for the purpose of a physical identification as the person on whose behalf the action is brought.

<u>Id</u>. at 246-47.

Nevertheless, Judge Sweet cited no authority as the basis for his ruling. A court has broad discretion over conduct and decorum in its courtroom. <u>See</u> <u>Young v. United States ex rel. Vuitton et Fils S.A.</u>, <u>481 U.S. 787</u>, 798 (1987) (citing <u>Anderson v. Dunn</u>, 19 U.S. (6 Wheat.) 204, 227 (1821)). This Court, mindful of the importance of the tradition of open courtrooms and public trials in our legal tradition, see <u>Gannett Co. v. DePasquale</u>, <u>443 U.S. 368</u>, 386 n. 15 (1979) (reviewing the history of the tradition), and the fundamental importance of a plaintiff's right to attend his own civil trial, see <u>Helminski v. Ayerst Lab.</u>, <u>766 F.2d 208</u>, 216 (6th Cir. 1985); <u>Mark v. Mobil Oil Corp.</u>, <u>562 F. Supp. 759</u>, 768 (E.D.Pa. 1983), is reluctant to undermine those salutary practices. Absent a showing that Plaintiff's presence in the courtroom during trial will be disruptive, the Court declines to bar his presence.

<u>Motion in Limine to preclude Plaintiff's counsel from using the words "wreck" when referring to the motor vehicle accident and "victim" when referring to Plaintiff Mr. Douglas McEachron.</u>

This motion is **DENIED**.

The essence of the adversary system of justice is the vigorous advocacy of each party's position. <u>See</u> <u>Penson v. Ohio</u>, <u>488 U.S. 75</u>, 84 (1988); <u>Virginia Academy of Clinical Psychologists v. Blue Shield of Va.</u>, <u>543 F. Supp. 126</u>, 142 (E.D.Va. 1982). The rich resources of the English language enable complex, subtle and nuanced arguments and representations of fact before judge and jury. <u>See generally</u> Helene S. Shapo et al., Writing and Analysis in the Law 311-13, 321-25 (3d ed. 1995). This Court is disinclined to restrain the discretion of counsel in their choice of words in arguing their clients' cases, absent a showing of egregiously unfair prejudice arising out of that choice of words. The essence of the word choices that Defendant is here objecting to is a legitimate difference of opinion between the parties. That is a basic feature of our adversarial system, not an improper incitement to prejudice, and Defendant has cited no authority that indicates otherwise.

II. MOTIONS IN LIMINE BY DEFENDANT TOWN OF WILTON

A. <u>Motion in Limine to preclude all testimony by lay or expert witnesses and exclude all documentary exhibits in the nature of accident reports of prior incidents on Smith Bridge Road unless the proponent first presents an evidentiary foundation establishing that such prior accidents were caused by the same or similar contributing factors that caused the accident of 28 March 1996.</u>

This motion is **provisionally GRANTED IN PART, and DENIED IN PART**.

The Defendant asserts that Plaintiff, and co-Defendants Mr. Glans, Mr. Bowen, Saratoga County Sheriff's Department and County of Saratoga, and their expert witnesses, intend to introduce as evidence at trial information regarding reported accidents, before and after the 28 March 1996 accident, on Smith Bridge Road in the Town of Wilton. Defendant contends that such evidence is irrelevant because the conditions pertaining to those accidents are sufficiently dissimilar to those pertaining to the 28 March 1996 accident to render their probative value less significant than their capacity to prejudice the jury unfairly. In addition, Defendant contends that all this potential evidence implicates inadmissable hearsay, "[i]n accordance with FRE 803."[fn2] (Motion in Limine by Defendant Town of Wilton at 1, 2.)

"In a negligence case, evidence of other accidents in the same place . . . is often admissible, . . . because it tends to prove either (1) the existence of a dangerous or defective condition . . ., or (2) that defendant knew or should have known of the dangerous or defective condition." 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 404.22[6][b] (Joseph M. McLaughlin, ed., 2d ed. 1999) (explicating Fed.R.Evid. 404(b)). The Fifth Circuit has found that a trial court should have admitted evidence of previous accidents to show that a railroad company "had notice of an arguably dangerous crossing."

Young v. Illinois Cent. Gulf R.R., 618 F.2d 332, 339 (5th Cir. 1980). The details and circumstances of the prior accidents were matters for the jury to weigh in assessing the actions of the company. Id. A different panel of the Fifth Circuit, sitting a couple months earlier, reached almost exactly the same conclusion in a case regarding "other happenings" at a railroad crossing where a motorist was killed in a collision. Bailey v. Southern Pac. Transp. Co., 613 F.2d 1385, 1388-89 (5th Cir. 1980). That panel, too, held that factual distinctions between the earlier accidents and the one sub judice went "strictly to the weight to be given the evidence" by the jury. Id. at 1389.

Yet another Fifth Circuit panel, also in 1980, noted in an industrial accident case that Fifth Circuit precedent directed that incidents of earlier product failures be "substantially similar" to the one sub judice to warrant the drawing of "a reasonable inference . . . as to . . . harmful tendency or capacity." Ramos v. Liberty Mut. Ins. Co., 615 F.2d 334, 339 (5th Cir. 1980) (quoting Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d 394, 400 (5th Cir. 1965)). Nonetheless, while acknowledging that a trial court has broad discretion over the admission of evidence, the court concluded that "that discretion does not sanction exclusion of competent evidence without a sound, practical reason," in particular without a plausible indication that unfair prejudice would accrue against a party if the evidence were admitted. 615 F.2d at 340.

Defendant Town of Wilton sets forth information indicating that some of the accidents on South Bridge Road, reports of which other parties plan to submit into evidence, occurred at different locations than did the 28 March 1996 accident. These accidents are the subjects of proposed Exhibit 57B (accident of 20 June 1993) (Motions at 6), proposed Exhibit 57D (accident of 3 December 1993 at 7:40 a.m.) (Motions at 7), proposed Exhibit 57E (accident of 3 December 1993 at 8:10 a.m.) (Motions at 7-8), proposed Exhibit 57G (accident of 26 February 1994) (Motions at 8), proposed Exhibit 57H (accident of 16 August 1994) (Motions at 9), and proposed Exhibit 57I (accident of 9 October 1994) (Motions at 9).[fn3] Some accidents may have taken place on sections of Smith Bridge Road that are far enough from the site of the accident sub judice that the curve at that location could not reasonably have contributed to those other accidents. If so, then records of those accidents are not relevant to either the existence of dangerous conditions at the location of the 28 March 1996 accident or to the Town's knowledge of any dangerous conditions at that location. Thus, absent a showing that the accidents reported in the proposed Exhibits listed above took place at locations such that the curve at the site of the 28 March 1996 accident could have contributed to their occurrence, the Court will preclude the introduction of those proposed Exhibits and of testimony about or based upon those accidents or proposed Exhibits.

The Town of Wilton has raised other objections to other proposed Exhibits. The Town contends variously that accidents the proposed Exhibits report are distinguishable from the 28 March 1996 accident: by the reported accident's occurrence after the accident sub judice, or by falling precipitation, or by the presence of wet pavement, or by snow or black ice on the road, or by obstruction or debris on the road, or by an obstruction of visibility adjacent to the road, or by pedestrians on the road, or

by the motion of vehicles relative to one another, or by driver action or driver use of alcohol, or by occurrence in daylight rather than at night.

The Court understands that some of these factors may constitute significant distinctions between the reported accidents and the 28 March 1996 accident. The Court does not, however, believe that as a matter of law these distinctions must render the proposed Exhibits or testimony based on them irrelevant or unfairly prejudicial. The jury must weigh these differences, and determine their effect on the probative value of the proffered evidence. It is, of course, the role of counsel, through examination, cross-examination, and the submission of additional evidence, to flesh out the bare bones of exhibits, to establish the <u>degree</u> to which the factors reported in exhibits affected conditions — for example, exactly <u>how</u> wet was the pavement at the time of a given accident? It would certainly not be proper for the Court to deny the jury the opportunity to consider such evidence simply because that opportunity would require the jury to exercise its role as weigher of facts.

The Court has observations to make on two of the distinctions raise by the Town of Wilton. The accident (reported in proposed Exhibit 57A) that occurred after the 28 March 1996 accident can, obviously, have no relevant probative value for the question of the Town's knowledge or lack thereof, prior to 28 March 1996, concerning any dangers associated with the location of the accident sub judice. It may, however, prove relevant to the <u>existence</u> or <u>nature</u> of dangerous conditions at that location. If necessary, that distinction may be made clear to the jury through cross examination, or even through a limiting instruction from the Bench.

The Town of Wilton's objection that some of the reported accidents occurred in daylight, while the 28 March 1996 accident occurred at night, is without merit. The other distinctions the Town has raised — including slick pavement, debris in the road, obstructed visibility — are factors that conceivably might make the road <u>more</u> dangerous than it was at the time of the accident sub judice. Thus one might plausibly argue that those distinctions could render evidence of those accidents unfairly prejudicial in the deliberations on this case. The presence of daylight, on the other hand, would almost certainly make conditions on the road <u>safer</u> than they had been at the time of the 28 March 1996 accident. The presence of daylight at the time of another accident in that location makes it more likely that evidence of dangerous conditions, arising out of the daylight accident, will be relevant to the accident sub judice, and <u>less</u> likely that such evidence will be unfairly prejudicial. In other words, <u>if</u> that curve was dangerous during the day, then it could only have been more dangerous at night.

As such, it is not clear on what basis the Town of Wilton raised the issue of daylight as an objectionable distinction. The most reasonable conclusion seems to be that the Town did so simply because the daylight was a distinguishing condition. The Federal Rules of Evidence, however, do not apply a mechanical formalism that excludes evidence of other accidents in a given location on the basis of <u>any</u> distinguishing factor. Case law makes it clear that the mere existence of a such a factor does not make the evidence irrelevant or unfairly prejudicial. <u>Young</u>, 618 F.2d at 339; <u>Bailey</u>, 613 F.2d at 1388-89; <u>Ramos</u>, 615 F.2d at 339, 340; see

also *supra* note 1. A court may not exclude the evidence without weighing the significance of the distinguishing factor.[fn4]

   B. <u>Motion in Limine to preclude proposed video exhibits and modified photographs prepared by the expert witness (Mr. Poydar) of the Saratoga County Defendants</u>.

   This motion is **DENIED**.

   Defendant Town of Wilton contends that the proposed exhibits prepared by Mr. Poydar should be precluded as irrelevant and prejudicial. Most significantly, the Town asserts that it has not had access to the technical data pertaining to the preparation of the video tape animations. Nonetheless, the proper remedy for this matter is first to issue a motion to produce. The Court notes that, in the principal authority the Town cites, Judge Sweet found that the record "demonstrate[d] conclusively that both sides sought to hold back information until the last moment" before trial. <u>Shu-Tao Lin v. McDonnell Douglas Corp</u>., 574 F. Supp. 1407, 1412 (1983). This Court at present lacks information that would warrant such a conclusion regarding the evidence Mr. Poydar intends to submit.

   Regarding the details of the video tapes and the photographs that the Town contends are inaccurate or misleading, those matters are properly addressed in cross-examination, in the presentation of countervailing witnesses and evidence, and possibly in limiting instructions from the Bench.

   C. <u>Motion in Limine to preclude video tapes of Plaintiff Mr. Douglas McEachron</u>.

   This motion is **DENIED**.

   These are the video tapes that are the subject of the Motion in Limine by Defendant Mr. Glans that is addressed in Part I.A of this Decision. The Court deems the tapes admissible for the reasons discussed *supra* pp. 4-8.

   The Town of Wilton contends that by delivering the video tapes (proposed exhibits 134A, 134C and 134D) to the Town on 16 August 1999 (seven days before the start of trial), Plaintiff prejudiced the Town by leaving it inadequate time to prepare, and violated the rules for disclosure and the pre-trial discovery provisions of the Federal Rules of Civil Procedure. Specifically, the town asserts that "[n]o prior disclosure was ever made." (Letter from Mr. Brooks to the Court Clerk of 8/17/99, at 1.)

   These assertions are inconsistent with the facts set forth in Defendant Mr. Glans's Motion in Limine. As far back as 26 May 1999 Defendants knew of the video tapes; Mr. Pennock wrote to Plaintiff's counsel on that date to reject their use in discovery or at trial. (Letter from Mr. Pennock to the Court of 8/09/99, at 1.) The video tape was also viewed or available for viewing at a pre-trial settlement conference on 8 June 1999. (<u>Id</u>.) In Plaintiff's guardian's 4 November 1998 deposition, Howard McEachron testified that such video tapes had been made, and why they had been made. (<u>Id</u>. at 1-2.) In the Court's view, all parties had ample notice of the existence of these video tapes, and of their possible use as evidence.

III. MOTIONS IN LIMINE BY PLAINTIFF MR. DOUGLAS MCEACHRON

   A.   <u>Motion in Limine to preclude evidence that Douglas McEachron was issued traffic citations for unlicensed operation and for failing to wear a seat belt, and to preclude reference to whether he was licensed to operate a motor vehicle</u>.

This motion is **GRANTED**.

Plaintiff properly establishes that, under New York law, a dismissed citation or arrest is not a basis for an inference of negligence. <u>Mena v. New York City Transit Auth</u>., 656 N.Y.S.2d 206, 207 (App. Div. 1st Dept. 1997). Accordingly, evidence of Plaintiff's dismissed sanctions would be irrelevant and unfairly prejudicial. Likewise, under New York law, possession of a driver's license is no part of a standard of care. <u>Dance v. Town of Southampton</u>, <u>467 N.Y.S.2d 203</u>, 208 (App. Div. 2d Dept. 1983). Therefore, evidence on that point would in this case be irrelevant to the finding of fact the jury must make.

   B.   <u>Motion in Limine to preclude proof or reference to the effect that Douglas McEachron may not presently "know the value of money."</u>

This motion is **GRANTED**.

Plaintiff properly identifies the conclusion of the Court of Appeals of New York "that cognitive awareness is a prerequisite to recovery for loss of enjoyment of life," and that the right to recovery under that standard will not vary according to different levels of awareness. <u>McDougald v. Garber</u>, <u>538 N.Y.S.2d 937</u>, 940 (N.Y. 1989). Accordingly, further exploration of Plaintiff's capacity to appreciate money would have no value in making the proposition at issue more or less likely, and might well be unfairly prejudicial.

   C.   <u>Motion in Limine to preclude evidence of or reference to Melinda McEachron's marital status</u>.

This motion is **GRANTED**.

There is no suggestion that Melinda McEachron's marital status might be probative of any fact to be determined in this case. The Court knows of no reason for eliciting such evidence other than to engender unfair prejudice.

   D.   <u>Motion in Limine to preclude reference to or evidence of Douglas McEachron's present residence</u>.

This motion is **GRANTED**.

Plaintiff Douglas McEachron's present residence is not probative of any fact to be proved at trial. The issue of residence as a basis for diversity jurisdiction is purely a question of law for the Court, and is irrelevant to facts of consequence to the determination of this action.

   E.   <u>Motion in Limine to preclude Defendant Mr. Glans, Defendant Sheriff Bowen, and other Saratoga Sheriff's Deputies from wearing their uniforms to Court</u>.

This motion is **DENIED**.

Plaintiff contends that the jury will reflexively attribute unwarranted credibility to witnesses wearing the uniforms of law enforcement officers, and that this will unfairly prejudice the Plaintiff. The Court does not find sufficient merit in this contention to warrant the severe measure of barring parties or witnesses from wearing clothes that are their everyday work attire and that are in conformity with the standards of decorum and dignity befitting a United States Courtroom.

The cases Plaintiff cites are not on point. Estelle v. Williams, 425 U.S. 501 (1976), as Plaintiff notes, concerned the issue of a court telling a prisoner he must wear prison garb as a criminal defendant during trial. That case implicated crucial concerns about guarding against a dilution of the fundamental principle "that guilt is to be established by probative evidence and beyond a reasonable doubt." Id. at 503. In addition, the requirement to wear prison garb would usually apply only to those too poor to post bail, and accordingly would tend to impose unfair prejudice on the basis of class. Id. at 505-06. These concerns are not operative in the present case. It is inapposite to attempt to extend the principle of Estelle to the converse issue: whether a court may tell a law enforcement official that he must not wear his uniform to court when he is a party or witness in a civil case. Plaintiff refers to Thomas R. Trenkner, Annotation, Power of Court to Impose Standard of Personal Appearance or Attire, 73 A.L.R.3d 353 (1977 through Aug. 1998 supp.), but that article

> expressly exclude[s] . . . the question whether a court must prohibit the wearing of uniforms by prisoners, policemen, clergymen, soldiers, or others, not on the ground that they are untidy or otherwise detract from the dignity of the proceedings, but rather on the ground that such uniforms may have a prejudicial effect upon the jury.

Id. at 355 n. 2. People v. Pennisi, 563 N.Y.S.2d 612 (Sup. Ct. Crim. Term 1990), which Plaintiff cites, concerned spectators wearing obtrusive symbols intended to convey a message specific to the case, and to signal antagonism against one of the parties. Id. at 614. The decision did not address the issue of the credibility of witnesses. Instead, it found that a variety of attires, ornamentations or demonstrative objects might be found to be a form of communication designed to disrupt the environment of impartiality essential to a courtroom. Id. at 616.

Elsewhere in this decision, this Court has indicated its confidence in the ability of juries to weigh subtle relationships among facts, and to discern nuances in testimony and exhibits. See, e.g., supra note 1, and §§ I(A)(1), I(A)(2), and II(A). In denying this motion the Court affirms its confidence in the jury that will hear this trial, to listen intelligently, and not to accord unreflecting deference to parties and witness who may happen to be attired in the trappings of authority.

F. Motion in Limine to preclude evidence of acquittal of Defendant Mr. Glans of vehicle and traffic charges.

This motion is **GRANTED**.

Evidence that Defendant Mr. Glans was acquitted after trial on charges of failure to keep right is properly excluded. Indeed,

not only is evidence of acquittal impermissible hearsay; evidence of any judgment, or charge, on minor offenses is impermissible hearsay. Fed.R.Evid. 803(22) advisory committee's note. The only hearsay exception for a previous trial judgment is for conviction of felony-grade offenses. Fed.R.Evid. 803(22); see also United States v. Irvin, 787 F.2d 1506, 1516-17 (11th Cir. 1986) ("Unlike judgments of conviction, . . . judgments of acquittal are not covered by an exception to the rule against admission of hearsay."). Because the burden of proof for a finding of liability in a civil trial is a preponderance of the evidence, and the burden of proof for a verdict of guilty in a criminal trial is reasonable doubt, an acquittal in a criminal trial in itself makes a finding of no liability in a civil trial only slightly more probable. Therefore, a disclosure of a criminal acquittal is much more likely to prejudice a plaintiff unfairly than to prove of substantial probative value in a civil case.

## CONCLUSION

For the reasons stated above, it is hereby:

ORDERED that the Motions in Limine by Defendant Mr. Glans to preclude video tape depicting Plaintiff Mr. Douglas McEachron is **DENIED;** to preclude the presentation of Douglas McEachron to the jury unless he is presented for demonstrative purposes to demonstrate his level of awareness and responsiveness, if any, is **DENIED;** and to preclude Plaintiff's counsel from using the words "wreck" when referring to the motor vehicle accident and "victim" when referring to Plaintiff Douglas McEachron is **DENIED;** and

IT IS FURTHER ORDERED that the Motions in Limine by Defendant Town of Wilton to preclude all testimony by lay or expert witnesses and exclude all documentary exhibits in the nature of accident reports of prior incidents on Smith Bridge Road unless the proponent first presents an evidentiary foundation establishing that such prior accidents were caused by the same or similar contributing factors that caused the accident of 28 March 1996 is **provisionally GRANTED IN PART, and DENIED IN PART;** to preclude proposed video exhibits and modified photographs prepared by the expert witness (Mr. Poydar) of the Saratoga County Defendants is **DENIED;** and to preclude video tapes of Plaintiff Mr. Douglas McEachron is **DENIED;** and

IT IS FURTHER ORDERED that the Motions in Limine by Plaintiff Mr. Douglas McEachron to preclude evidence that Douglas McEachron was issued traffic citations for unlicensed operation and for failing to wear a seat belt, and to preclude reference to whether he was licensed to operate a motor vehicle, is **GRANTED;** to preclude proof or reference to the effect that Douglas McEachron may not presently "know the value of money" is **GRANTED;** to preclude evidence of or reference to Melinda McEachron's marital status is **GRANTED;** to preclude evidence of or reference to Douglas McEachron's present residence is **GRANTED;** to preclude Defendant Mr. Glans, Defendant Sheriff Bowen, and other Saratoga Sheriff's Deputies from wearing their uniforms to Court is **DENIED;** and to preclude evidence of acquittal of Mr. Glans of vehicle and traffic charges is **GRANTED;** and

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Order by regular mail upon the parties to this action.

IT IS SO ORDERED

*ORDERED unsealed 5 July 2000*

[fn1] The Town cites <u>Hyde v. County of Rensselaer</u>, <u>415 N.E.2d 972</u> (N.Y. 1980) (per curiam), which states "that proof of a prior accident, whether offered as proof of the existence of a dangerous condition or as proof of notice thereof, is admissible only upon a showing that the relevant conditions of the subject accident and the previous one were substantially the <u>same</u>." <u>Id</u>. at 973 (emphasis added). Contrast that rule with the following: "`Whether a reasonable inference may be drawn as to the harmful tendency . . . from prior failures depends upon whether the conditions . . . were substantially <u>similar</u> to the occurrence in question.'" <u>Ramos v. Liberty Mut. Ins. Co.</u>, <u>615 F.2d 334</u>, 339 (5th Cir. 1980) (emphasis added) (quoting <u>Jones & Laughlin Steel Corp. v. Matherne</u>, <u>348 F.2d 394</u>, 400 (5th Cir. 1965)). Adherence to the New York rule might tend to suggest that admissibility demands a virtual identity of circumstances between the prior incident and the subject incident. The federal rule, however, suggests a more flexible standard, one allowing a court greater latitude in weighing the question of a prior accident's relevance — and one reflecting the analysis and evaluation a jury will perform in comparing two different but nonetheless related sets of facts.

[fn2] The Court notes that Federal Rule of Evidence 803 is an enumeration of hearsay <u>exceptions</u>. It is, thus, not clear what the Town of Wilton meant, in urging that this Court preclude evidence as hearsay in accordance with a rule that provides for exceptions to the hearsay rule.

[fn3] The last four lines of page 9 of the Town of Wilton's Motions in Limine are confusing, and appear to feature typographical or editing errors. For example, the passage "one vehicle struck the other accident while one driver was distracted" seems to have had an out-of-place word dropped into it, at the least. In addition, this section (§ 13) first refers to proposed Exhibit 57I as reporting a 9 October 1994 accident, but then refers to "this June 1992 accident report" on the last line of page 9. The Court wishes to emphasize that it is reluctant to preclude any evidence on the basis of such confusingly stated arguments.

[fn4] The parties must not neglect to discriminate among the facts they set forth in making their arguments. Such care is essential in ensuring that the reader's confidence in meritorious arguments is not undermined.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved