U.S. 9th Circuit Court of Appeals Reports

U.S. v. LOERA, *923 F.2d 725* (9th Cir. 1991)

UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE, v. REGINALD LOERA, DEFENDANT-APPELLANT.

No. 89-10429.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted November 5, 1990.

Decided January 16, 1991.

**Page 726**

Deborah L. Williams, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Gary A. Husk, W. Allen Stooks, Asst. U.S. Attys., Phoenix, Ariz., for plaintiff-appellee.

Appeal from the United States District Court for the District of Arizona.

Before ALARCON, BRUNETTI and KOZINSKI, Circuit Judges.

ALARCON, Circuit Judge:

[1] Reginald Loera appeals from his conviction for assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(f). Loera contends that there was insufficient evidence to establish the required element of willfulness. He further contends that evidence of his prior convictions was improperly admitted into evidence. We disagree and affirm.

I.

[2] *Facts*

[3] On October 18, 1988, Reginald Loera was indicted on one count of second-degree murder and one count of assault resulting in serious bodily injury. The offenses occurred on the Fort Mohave Indian Reservation, Arizona. Accordingly, the district court had jurisdiction over this matter pursuant to 18 U.S.C. § 113. On June 5, 1989, following a jury trial, Loera was convicted of the lesser included offense of involuntary manslaughter and of assault resulting in serious bodily injury.

[4] The evidence presented at trial showed that on August 28th, 1988, Loera spent the afternoon drinking beer with his friends along the banks of the Colorado river in the Mohave Valley area of Arizona. After drinking beer for approximately seven hours, Loera drove his pickup truck in an

**Page 727**

easterly direction on Plantation Road, the west bound lane of which is within the Fort Mohave Indian Reservation, Arizona. Clint Clopton testified that immediately prior to the accident Loera crossed the centerline and forced Mr. Clopton's car off

the road. Clopton observed Loera swerve across the road a second time and collide violently with a compact car driven by Kimberly Secor. Mrs. Secor died from injuries suffered in the collision. Her five-year old son's skull was fractured.

[5] Loera admitted to the police that he drove the truck at the time of the accident. He also stated he had consumed only three beers. A blood test taken two hours after the accident revealed that Loera had a blood alcohol level of .26. Lucien C. Haag, a criminologist, testified that an individual's driving ability is impaired when he or she has a blood alcohol level of .08. He further testified that in order to have had a .26 blood alcohol level, Loera must have consumed at least eighteen cans of beer. Evidence was also presented that the brakes in Loera's truck were in a defective condition.

[6] At the time of the accident Loera had suffered three prior convictions in California for driving under the influence of intoxicating liquor and was on probation. He was under court order not to drink. His driver's license had been revoked for one year on February 19, 1988, and had not been renewed.

[7] After the Government presented its case in chief, Loera moved for a judgment of acquittal on the charge of assault resulting in serious bodily injury. He argued that the Government had failed to present evidence of an essential element of that crime. The motion for a judgment of acquittal was denied.

[8] Loera also raised timely objections to the admission of certain records offered to prove that he had been convicted of driving under the influence of an intoxicating liquor. The district court overruled these objections. Testimony concerning the records was allowed for the limited purpose of establishing the element of malice necessary to prove second-degree murder.

[9] The district court sentenced Loera on August 21, 1989. A timely notice of appeal was filed on August 25, 1989.

II.

[10]                         *Discussion*

[11] Loera challenges the sufficiency of the evidence presented on the charge of assault resulting in serious bodily injury. He maintains that a conviction for this crime cannot be sustained unless the Government presents evidence of "deliberate and obvious assaultive conduct." Appellant's Opening Brief at 8. He argues that the Government failed to present any evidence that his conduct was willful or that he intended to injure the persons in the other vehicle.

[12] To determine if evidence is sufficient to support a criminal conviction, we must decide "whether `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Adler,* 879 F.2d 491, 495 (9th Cir. 1988) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We review the evidence in the light most favorable to the government. *United States v. Feldman,* 853 F.2d 648, 654 (9th Cir. 1988), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989).

[13] Section 113 provides as follows:

> Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
> . . . . .
>
> (f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

[14] Section 113(f) does not specify the elements of the crime of assault resulting in serious bodily injury. In *United States v. Dupree,* 544 F.2d 1050 (9th Cir. 1976), we held that "[t]he common-law meaning of a commonlaw term used in a federal criminal statute provides a source from which statutory

**Page 728**

precision may be derived." *Id.* at 1051. We summarized the elements of an assault at common law in the following language:

> an assault is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.

[15] *Id.* (citations omitted).

[16] Loera concedes that common law assault under section 113(f) is a general intent crime. Appellant's Opening Brief at 6. *See United States v. Lewis,* 780 F.2d 1140, 1142-43, (4th Cir. 1986) (section 113(f) is a general intent crime), *United States v. Big Crow,* 728 F.2d 974, 975 (8th Cir. 1984) (assault under section 113(f) requires only general intent). Loera contends, however, that because the Government failed to establish that his conduct was willful, the district court erred in denying his motion for judgment of acquittal.

[17] The term "willful" as used at common law as an element of a general intent crime refers to a volitional act. *See* W. Clark, *Clark's Criminal Law* 38 (St. Paul 1894) ("A willful act . . . is a voluntary act."). A voluntary act is one in which the individual has the ability to choose his course of conduct. "The only question is whether the person could have refrained from doing it, or whether he was controlled by some irresistible power. If he could have refrained, the act is voluntary; but, if he was impelled by some irresistible force, it is involuntary." *Id. See also United States v. Baker,* 641 F.2d 1311, 1317 (9th Cir. 1981) (the term "willful" defined "`as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" (quoting *United States v. Greyhound Corp.,* 508 F.2d 529, 531-32 (7th Cir. 1974)).

[18] The evidence at trial indicated that Loera voluntarily consumed at least eighteen cans of beer prior to the collision. His blood alcohol level was more than three times greater than the level at which a person's driving ability is impaired. "The law will presume that a person intended the natural and probable consequences of his voluntary acts." Clark, *supra,* at 42. The willful conduct in this case was the operation of a motor vehicle

while in a state of voluntary intoxication. "[A] person may become so drunk as to lose the power to control his action, but the law does not excuse him if his intoxication is voluntary." Clark *supra* at 38. *See also Hopt v. People,* 104 U.S. 631, 633, 26 L.Ed. 873 (1881) ("At common law, indeed as a general rule, voluntary intoxication affords no excuse, justification, or extenuation of a [general intent] crime committed under its influence."); *United States v. Meeker,* 527 F.2d 12, 14 (9th Cir. 1975) ("Voluntary intoxication is not a defense to a crime of general intent.")

[19] At common law a criminal battery was shown if the defendant's conduct was reckless. F. Wharton, *Wharton's Criminal Law* § 178 at 296 (C. Torcia 14th ed. 1979). A defendant can be convicted of assault under section 113(f) if a battery is proved. "[A]n assault is an attempted battery and proof of a battery will support conviction of assault." *United States v. Dupree,* 544 F.2d 1050, 1052 (9th Cir. 1976) (citations omitted).

[20] A rational trier of fact could have found that Loera's conduct in driving while in a state of intoxication showed a reckless disregard for the safety of others. The same facts which support the finding of involuntary manslaughter in the death of Mrs. Secor, support a finding of assault resulting in serious bodily injury to her son. "[I]f a defendant drove his automobile in a reckless or criminally negligent manner and caused the death of a pedestrian, he would be guilty of involuntary manslaughter; if the pedestrian is merely injured, defendant would be guilty of a criminal battery." Wharton *supra* at 296. *Accord* Perkins, *Non-Homicide Offenses Against the Person,* 26 B.U.L. 119, 126 (1946). *See also* Hall, *Assault and Battery by the Reckless Motorist,* 31 J.Crim.L. & Criminology 133 (1940) and cases cited therein.

[21] The district court did not err in denying the motion for judgment of acquittal. The evidence was sufficient to convince any rational trier of fact that Loera acted willfully
**Page 729**
in consuming alcohol and then driving his truck on the highway in disregard for the safety of others in his path.

### III.

[22] Loera next argues that the admission of the prior convictions were made in violation of Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). The admission of evidence of other crimes pursuant to Fed.R.Evid. 404(b) is reviewed for abuse of discretion. *United States v. Conners,* 825 F.2d 1384, 1390 (9th Cir. 1987).

[23] Loera concedes that the misdemeanor convictions were admitted to prove malice, an essential element of second-degree murder. In *United States v. Fleming,* 739 F.2d 945 (4th Cir. 1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 970, 83 L.Ed.2d 973 (1985), the Fourth Circuit held that prior misdemeanor convictions for driving while intoxicated are "relevant to establish that the defendant had grounds to be aware of the risk his drinking and

driving while intoxicated presented to others." *Id.* at 949. *Accord State v. Vowell,* 276 Ark. 258, 634 S.W.2d 118, 119 (Sup.Ct.Ark. 1982) (prior driving under the influence convictions and revocation of drivers license properly admitted as evidence of intent under rule 404(b) to "prove warning quality of the other convictions, and to infer . . . a mental state inconsistent with mistake and consistent with culpable mental state.")

[24] Limiting instructions were given by the court as to the use of the prior convictions. Loera contends that since the jury convicted him of involuntary manslaughter rather then second-degree murder, the jury must have found that malice was not proved. "But the emotional component of the evidence . . . spilled over to the [assault charge] and the unfair prejudice to appellant is demonstrated by the inconsistent verdicts." Appellant's Opening Brief at 16.

[25] The record does not support this contention. The verdicts were not inconsistent. As discussed above, driving a vehicle under the influence of intoxicating liquor supports a conviction of involuntary manslaughter and assault resulting in serious bodily injury.

[26] The prior convictions were properly admitted to establish the element of malice required for the proof of second-degree murder. Loera has failed to establish that the jury considered the evidence for any other purpose or that he was prejudiced as a result.

IV.

[27] Loera also contends that the evidence of the three prior misdemeanor convictions were inadmissible under the hearsay rule. A trial court's admission of hearsay evidence is reviewed for abuse of discretion. *United States v. Kirk,* 844 F.2d 660, 663 (9th Cir. 1988), *cert. denied,* 488 U.S. 890, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

[28] Loera interposed timely hearsay objections to the admission of certified copies of docket entries from the records of the Needles-Calzona Justice Court, San Bernardino, California. The district court ruled that the certified docket entries were admissable to prove Loera's prior convictions. After the objection was overruled, Loera renewed his hearsay objection as to the other information contained in the records, including the results of blood alcohol tests and the terms of probation. The court recommended that the Government and defense counsel agree on redaction. The Government stated that as an alternative to redaction it would be willing to introduce the evidence of the prior convictions through the testimony of FBI Agent Laird Hiestand. Defense counsel stated "I would rather do it that way," instead of giving the redacted documents to the jury. We do not construe Loera's agreement to permit the FBI Agent to read portions of the certified docket entries during his testimony

**Page 730**
as a waiver of his hearsay objection. FBI Agent Laird Hiestand testified that the records he obtained from the Needles-Calzona Justice Court reflected that Loera had been convicted of driving under the influence of intoxicating liquor on three occasions and that Loera's right to drive a motor vehicle was revoked for one year on February 19, 1988.

[29] Loera contends that the docket entries are not within any exception to the hearsay rule. He correctly argues that docket entries of misdemeanor convictions are not covered by the exception for judgment of previous convictions under Rule 803(22) of the Federal Rules of Evidence. We have previously stated, however, that misdemeanor convictions can be admitted under the public records exception to the prohibition against hearsay. *United States v. Wilson,* 690 F.2d 1267, 1275 n. 2 (9th Cir. 1982), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). While Loera asserts that the certified docket entries lacked indicia of reliability he does not provide any authority for that proposition. Furthermore, he has not demonstrated, nor does he argue, that the docket entries are inaccurate.

[30] The Government contends that the certified justice court docket entries come within the public records exception to the hearsay rule. Loera presented no argument in his opening or reply briefs that the docket entries do not come within the public records exception to the hearsay rule. Rule 803 provides that "[r]ecords, reports, statements, or data compilations in any form, of public agencies, setting forth . . . the activities of the office or agency" are admissible. Fed.R.Evid. 803(8)(A). We have previously explained that the justification for the public records exception to the hearsay rule "is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." *United States v. DeWater,* 846 F.2d 528, 530 (9th Cir. 1988).

[31] In *DeWater,* we held that records of the results of an intoxilyzer test were admissible under the public records exception. *Id.* We noted that the personnel who made the report had no stake in the outcome of individual cases, and that nothing in the record "reveals a motivation to misrepresent the test results or records." *Id.* Further the "preparation of this report is a routine, non-adversarial act made in a non-adversarial setting." *Id.* (citations omitted). These same factors support the admission of the docket entries made in the Needles-Calzona Justice Court. The traffic docket and disposition records are routine documents setting forth the official actions of the court. The docket entries were certified by the deputy clerk of the justice court to be true and correct copies of the court's records. Accordingly, the docket entries were within the scope of the public records exception. *See also* G. Weissenberger, *Weissenberger's Federal Evidence,* § 803.42 ("Examples of evidence admissible as proof of the activities of official agencies include: . . . dockets and journal entries of courts . . .").

V.

[32] *Conclusion*

[33] The evidence was sufficient to establish an assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(f). An assault resulting in serious bodily injury is a general intent crime. The element of willfulness is satisfied by proof of a volitional act done by one who knows or should be reasonably aware that his conduct is wrongful. Loera is presumed to have intended the natural and probable consequences of his unlawful and reckless acts. The evidence showed that Loera recklessly drove his vehicle while in a state of voluntary intoxication.

[34] Evidence of Loera's prior misdemeanor convictions was properly admitted to prove second-degree murder. Loera has not demonstrated that the admission of such proof prejudiced his right to a fair trial on the charge of assault resulting in serious bodily injury. Testimony concerning the contents of the records of the Needles-Calzona
**Page 731**
Justice Court was admissible under the public records exception in Rule 803(8).

[35] AFFIRMED.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved