LOIS Federal District Court Opinions

CHESLER v. TRINITY INDUSTRIES, INC., (N.D.Ill. 2002)

ROBERT CHESLER Plaintiff v. TRINITY INDUSTRIES, INC., et al. Defendants.

Cause No. 99 C 3234

United States District Court, N.D. Illinois, Eastern Division

August 7, 2002

MEMORANDUM OPINION AND ORDER

GERALDINE SOAT BROWN, United States District Judge.

The Court, having reviewed the various motions in limine filed by the parties to which objection was made, rules as follows. This ruling, along with the minute order relating to uncontested motions in limine, resolves all pending motions in limine. The denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at the trial of this case or from requesting a limiting instruction.

Plaintiffs Motions in Limine:

Plaintiff's motion in limine #1 to bar defendant Trinity Transportation Industries, Inc. ("Trinity") from presenting evidence or arguing that the collision was an unavoidable argument is denied. Plaintiffs motion fails to present any authority or logical link between his argument that weather is not a "cause" under Nebraska law and his argument that Trinity should be precluded from arguing that the collision was an unavoidable accident. The weather on the day of the collision is one of the factual elements of the circumstances of this case, to be considered by the jury.

Plaintiff's motion in limine #3 to bar evidence of marijuana use or reference to the "pipe" found in medical records is granted in part and denied in part It is granted to bar presentation of evidence of plaintiff Robert Chesler's suspension in high school in 1995 for possession of illegal drugs; that evidence is too remote in time to be relevant to the issues. The motion to preclude evidence or testimony about the finding of a pipe by the medical staff after the collision is granted as irrelevant and, if there is any relevance, as unduly prejudicial under Fed. R. Evid. 403. Nurse Wanda Cooper who made the note could not testify as to whether the pipe was found on Chesler's person nor could she recall the source of the information about the pipe. The motion in limine to bar evidence of the toxicology report indicating positive for cannabinoid is granted, subject to a qualification. No witness testified that Chesler was intoxicated at the time he was brought to the medical center following the collision. Dr. Shackelton and Dr. Lubenow testified that a positive test indicates use of marijuana in the recent past, an unquanitifed period of time. In light of this evidence, the admission of the toxicology report has a potential for undue prejudice that requires its exclusion under Fed. R. Evid. 403. However, if Chesler introduces evidence of his psychological condition as proof of damages, his psychological condition prior to the collision is relevant. To the extent that the plaintiffs motion seeks to preclude evidence of Chesler's

EXHIBIT E

Case 3:00-cv-01367-AHN Document 109-6 Filed 09/07/2004 Page 2 of 10

admission regarding past marijuana use, the motion is denied. Likewise, in the event that Chesler presents evidence regarding damages for psychological condition, and either suggests that he has not used marijuana or denies having used marijuana in the past, Trinity may introduce the toxicology report as impeachment or rebuttal.

Plaintiff's motion in limine #4 to bar evidence that Norman Jack Beaty failed to receive a traffic ticket as a result of the collision is denied. See discussion below of Trinity's motion in limine #8.

Third-Party Defendant Tim Reid's Motions in Limine:

Reid's motion in limine #3 to exclude evidence of the high/low agreement between Chesler and Reid is denied. Federal Rule of Evidence 408 permits the introduction of evidence of a settlement agreement for reasons other than to prove liability. Depending on the evidence at trial, the high/low agreement between Chesler and Reid might be admissible to demonstrate bias or prejudice of a witness; therefore, a ruling at this time to preclude any evidence of that agreement is not appropriate. However, if evidence of the high/low agreement is admitted at trial, a limiting instruction may be appropriate. Any party seeking a limiting instruction must prepare a draft instruction and propose it at the appropriate time.

Third-Part Defendants Hanna and Western Industries Inc.'s collectivel "Western" Motions in Limine:

Western's motion in limine #1 to bar evidence of Bernard Hanna's previous driving record or status of his driver's license at the time of the occurrence is denied. Evidence that Hanna' s commercial driver's license was suspended at the time he was hired by Western and on the date of the collision is relevant to Trinity's claim that Western failed to properly screen, test and train Hanna.

Western's motion in limine #2 to bar evidence of a collision between the Western truck driven by Hanna and the Hesse vehicle is denied. Trinity alleges that Hanna (and therefore Western) was negligent, inter alia, in failing to warn approaching drivers that the Western truck was stopped in the roadway, and by stopping his vehicle in a position located in both the left and right lanes of traffic. Hanna testified at deposition that after his vehicle came to a stop, he exited his vehicle, went to the rear of the vehicle and waved a flashlight to warn oncoming drivers. As Western notes, the evidence on this point is conflicting. Trinity will presumably seek to introduce the testimony of Leona and Marilyn Hesse that, instead of waving a flashlight, Hanna came over to their vehicle to see if they were all right. Evidence that a collision occurred between the Western truck and the Hesse vehicle immediately prior to Hanna exiting his vehicle meets the definition of "relevant evidence" set out in Fed. R. Evid. 401. Likewise, evidence of a collision could be relevant to a determination by the trier of fact as to the location of Hanna's truck. Evidence that Hanna was unable to stop may also be relevant to the reasonableness of Beaty's conduct.

Defendant Trinity's Motions in Limine:

Trinity's motion in limine II 8 to preclude testimony by Trooper Mark Larson and portions of accident report is denied. Trooper Larson is the Nebraska State Trooper who investigated the collision and prepared a report. He did not issue a traffic citation to Beaty. Federal Rule of Evidence 803(8)(C) provides an exception to the hearsay rule for

"factual findings from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Trinity moves to exclude portions of Trooper Larson's report and testimony to the extent that it represents legal conclusions. In particular, Trinity seeks to exclude a portion of the report where, by means of a letter and number code on the official report form, in the box for "major contributing human factor," Trooper Larson entered "1," the code for "speed too fast for conditions" and listed the vehicle as "1," i.e., Beaty's vehicle. The instructions on the form direct the officer to "Enter one code per accident and the associated Vehicle Number." There is also a further box for "major contributing environmental factor" as to which Trooper Larson entered "7" the code for "bad weather." The instructions on the form state "Enter one." See Trinity's motion in limine #8, Ex. A. In Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162 (1988), the Supreme Court held that the exception in Rule 803(8)(C) for factual findings extends to conclusions and opinions. In Van Houten-Maynard V. ANR Pipeline Co., No.89 C 377, 1995 WL 317056 (May 23, 1995)(Bobrick, M.J.), Magistrate Judge Bobrick denied a motion in limine to exclude the report of an Illinois State Trooper based on an accident investigation. Judge Bobrick reviewed various decisions subsequent to the Supreme Court's decision in Beech Aircraft which have admitted official reports that were based on investigation and contained opinions and conclusions. Van Houten-Maynard, 1995 WL 317056, at *9, In Beech Aircraft, the Supreme Court noted that it agreed with the broader interpretation of Rule 803 (8)(C), citing particularly the opinion of the Sixth Circuit in Baker v. Elcona Homes Corp., 588 F.2d 551 (6th Cir. 1978). 488 U.S. at 161. The Supreme Court noted that in the Baker case, the Sixth Circuit held admissible the officer's conclusion on the basis of his investigations of the accident scene and interviews with one of the drivers that "apparently unit #2 . . .entered the intersection against a red light." Id. at 161, n. 6, quoting Baker, 588 F.2d at 555. Trinity argues that the entry of the code for "speed too fast for conditions" is a legal, not factual, conclusion because it summarizes a Nebraska law prohibiting a person from driving at a speed greater than is reasonable and prudent under the conditions. If the conclusion that a car entered an intersection against a red light is an admissible one under Rule 803 (8)(C), (as suggested by the Supreme Court's note in Beech Aircraft), the entry of code "1" in the box for "major contributing human factor" is likewise admissible.

Trinity also objects that portions of Trooper Larson's report were based on hearsay statements, specifically, interviews with various persons on the scene after the collision, some of whom are parties to this case and therefore presumably biased. However, factual investigation, as opposed to first hand report, is likely to be based to some degree on statements by witnesses that are inherently hearsay. Trinity's objections go to the trustworthiness prong of Rule 803(8)(C). Trooper Larson is an experienced patrol officer who has investigated many accidents, and there has been no suggestion that he was not impartial. The investigation was undertaken immediately after the collision. Unlike the report discussed in Faries v. Atlas Truck Body Mfg. Co., 797 F.2d 619, 623 (8th Cir. 1986), where the trooper interviewed only the driver of the defendant's truck, in this case Trooper Larson interviewed Beaty as well as Reid, Hanna and another bystander. In addition to the statements of witnesses, Trooper Larson's report was based on his personal observation of the scene. As Trooper Larson admitted, the report was done quickly because of the number of collisions that day. However, the Court finds that it is sufficiently reliable to meet the standards of admissibility under Rule 803(8)(C). Note that no party has proposed Trooper Larson as an expert

witness to reconstruct the accident or to render an opinion other than the factual conclusion in the report.

The Court agrees with Trinity, however, that the rule of "completeness" underlying Fed. R. Evid. 106, requires that the entire report by Trooper Larson, including the notation that neither Beaty nor Hanna received a citation in connection with the collision, must be admitted. See Beech Aircraft, 488 U.S. at 171-72. The two cases cited by Chesler in support of his motion in limine #4 are inapposite. Neither of those two cases involved a situation where the plaintiff sought to introduce an officer's report of a traffic investigation but sought to exclude the fact that the defendant did not receive a citation.[fn1]

Trinity's motion in limine #9 to bar evidence or testimony by Chesler, Reid, Vijay Rudraraju, Hanna or any other bystander witness regarding speed of the vehicle driven by Beaty is denied. Federal Rule of Evidence 701 governs questions relating to the admissibility of lay opinion testimony, and states that such testimony must be limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Admission of lay opinion testimony is within the sound discretion of the trial court. See Tyson v. Jones & Laughlin Steel Corp., 958 F.2d 756, 760 (7th Cir. 1992). Trinity does not dispute that the opinions of Reid, Rudraraju, Hanna or the Hesses regarding Beaty's speed are either unhelpful to a clear understanding of a fact in issue or based on specialized knowledge. The subject of this dispute is whether, given the allegedly short period of time in which the witnesses had the opportunity to observe Beaty's vehicle, their opinions are rationally based on their perceptions.

In a recent Seventh Circuit opinion, the court stated that lay opinion testimony "most often takes the form of a summary of first-hand sensory observations," and further noted that "quintessential" Rule 701 testimony includes the speed of a vehicle. United States v. Conn, — F.3d — No. 01-3506, 2002 WL 1543496, at *4, n. 2 (7th Cir. July 16, 2002) (citing Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1196-1202 (3d Cir. 1995); see also Nichols v. Johnson, 2002 WL 826482, at *5 (N.D. Ill. May 1, 2002) (estimations of speed are admissible lay testimony provided the estimate has a basis in personal knowledge).

In this case, Reid, Rudraraju, Hanna and Marilyn Hesse all testified that they had at least a second or two to observe the Trinity vehicle as it approached the scene prior to the collision, and all have offered varying estimates of the vehicle's speed ranging from faster than 5-10 miles per hour up to 70-75 miles per hour. Such observation, however brief, is sufficient to form an opinion regarding the Trinity vehicle's speed; the length of time and the angle from which the eyewitnesses viewed the vehicle will go to the weight of the testimony. See, e.g., United States v. Jackson, 688 F.2d 1121, 1125 (7th Cir. 1982) (holding that the time a witness has to observe the defendant goes to the weight of the testimony rather than to its admissibility under Rule 701); Ford v. Southwestern Greyhound Lines, Inc., 180 F.3d 934, 936 (5th Cir. 1950) (the difficulties in estimating the speed of an oncoming vehicle go to the weight of the testimony and not its admissibility); Kraft v. Wert, 35 N.W.2d 786, 790 (Neb. 1949) (holding that the opportunity and extent of an eyewitness's observation of the speed of a vehicle goes to the weight of the testimony and not its admissibility); Koutsky v.

Grabowski, 34 N.W.2d 893, 898 (Neb. 1948) (an eyewitness may be qualified to offer an opinion regarding speed> even when the <vehicle> is coming directly toward him or her, and the <jury> must determine what weight to accord the testimony). Thus, Defendant Trinity's motion in limine #9 to bar bystander testimony regarding the Trinity vehicle's speed prior to the collision is denied.

Trinity's motion in limine #10 to bar all post-occurrence photographs of the Rudraraju vehicle is granted in part and denied in part. The motion is denied to the extent that it seeks to exclude photographs taken at the scene of the collision. The photographs taken at the scene depict the weather conditions on the day of the collision and the positioning of the vehicles after the collision occurred. Because these are both critical issues in the case, these photographs are relevant and admissible.

The photographs depicting the damage to the Rudraraju vehicle that were taken on March 15, 1999, two days after the collision, apparently by an insurance representative, after the vehicle had been towed away from the scene, however, present a slightly more complicated question. These photographs were not permitted into evidence at the prior trial because the close up, focused depiction of the damage to the Rudraraju vehicle is unduly prejudicial in the absence of an expert witness to explain to the jury the relationship between the force with which particular parts of the vehicle were struck and the way various parts of the vehicle are designed to react to that impact, the "vehicle crush depth." In other words, observing the photographs without expert testimony, the jury would not have any proper way to evaluate the force that would create damage to a particular part of a the <vehicle>.

Chesler argues that the photographs are relevant primarily to allow the <jury> to form an opinion regarding the <speed> of the Beaty <vehicle>. He reasons that the <jury should be permitted to compare the photographs depicting the damage to the Hesse vehicle and the damage to the Rudraraju vehicle in order to determine the relative speeds of the Hanna and Beaty vehicles. However, Chesler did not retain an expert to compare the photographs of the Hesse vehicle to those of the Rudraraju vehicle and explain what can be concluded from them (if anything) about the relative speed of the trucks driven by Hanna and Beaty. Chesler also argues that Dr. Blaschke relied upon the March 15, 1999 photographs of the Rudraraju vehicle in forming his Opinion #2, which states that, in contrast to Hanna's testimony, it is unlikely that the impact form the Beaty truck could have impacted the Hanna trailer and pushed it into the rear of the Hesse vehicle. Pursuant to the Court's ruling on Chesler's and the third-party defendants' motions to bar Dr. Blaschke's testimony, he will only be permitted to offer Opinion #2 to the jury.

It does not appear from either the text of Opinion #2 or the disclosed bases for the opinion that Blaschke relied on the March 15, 1999 photographs of the Rudraraju vehicle. The subject of Opinion 4 2, the impact of the Beaty vehicle on the Hanna vehicle (and, consequently, the Hesse vehicle), has nothing to do with damage to the Rudraraju vehicle. At Dr. Blaschke's deposition, Chesler's counsel may have questioned Dr. Blaschke about the March 15, 1999 photographs of Rudraraju's vehicle, although, because documents discussed were not marked as exhibits, it is not entirely clear from the transcript if the questions posed were about the March 15, 1999 photographs or the photographs taken at the scene. This questioning, however, appears to be an attempt to elicit an opinion regarding the speed of the Trinity vehicle at the time of impact. Although Blaschke did offer a tentative opinion that the speed was

probably more than 10 miles per hour (Blaschke Dep. at 130), this statement had nothing to do with Opinion #2, and thus should not be a proper subject for cross-examination of Blaschke at trial. Blaschke also stated in his deposition that it is extremely difficult for a layperson to determine the speed of a vehicle from the damages resulting from the impact. (Blaschke Dep. at 129-30).

The determination of the speed of the Trinity vehicle based on the damage to Rudraraju's vehicle is a subject requiring expert testimony and involves how the vehicle is designed to crush upon impact. Chesler has not offered an expert on this subject, and he cannot bring March 15, 1999 photos of Rudraraju's vehicle in through the back door. Admission of the March 15, 1999 photographs without competent expert testimony regarding the design of the Rudraraju vehicle would be unduly prejudicial to Trinity. Accordingly, Trinity's motion in limine #10 is granted to the extent that it seeks to exclude the day after photographs depicting damage to the Rudraraju vehicle.

Trinity's motion in limine #11 to preclude reference to the range of vision rule is granted in part. No party may refer to or allude to a "range of vision rule" in front of the jury; however, a party may present evidence and argue that a driver was proceeding at a rate that did not permit him to stop within his range of vision.

Trinity's motion in limine #12 to exclude testimony of and report of Anita Kerezman is granted in part and denied in part as follows: Ms. Kerezman may not testify as to the Federal Motor Carrier Safety Regulations or to her opinion as to whether Beaty violated any of those regulations. Ms. Kerezman may not testify as to the speed that Beaty's vehicle was traveling or to an opinion that Beaty was negligent or that the collision was a "preventable accident." Ms. Kerezman may testify based on her experience as a truck driver as to how long it takes to stop a truck, as to practices in the trucking industry, as to what the entries in Beaty's driver's logs reflect and to her opinion whether Beaty was driving too fast for conditions.

Trinity's motion in limine #13 to exclude Beaty's daily drivers logs is granted except as to entries for March 13, 1999 and entries for March 12, 1999 that are relevant to Beaty's whereabouts on March 13, 1999. The remaining entries that may or may not show a lack of compliance with Trinity's procedures are not relevant to any issue in this case, and if there is any relevance, it is outweighed by the potential distraction to the jury and the risks that the jury will be influenced by other claimed "bad acts" by Beaty not causally related to the collision.

Trinity's motion in limine #14 to exclude evidence of Trinity's policies and procedures is reserved for ruling at the time of trial. Chesler states that "numerous safety policies and procedures may come into play during the trial of this matter." Ruling will be made at the time a party seeks to introduce a policy or procedure, based on the specific policy or procedure sought to be introduced, the purpose for which it is being introduced, and its relevance in light of evidence presented. Trinity must renew its objection at the time a policy or procedure to which it objects is sought to be introduced.

Trinity's motion in limine #15 to bar plaintiff from introducing evidence regarding the presence of a passenger in Beaty's truck is granted. Chesler has indicated that he intends to present evidence and argument that there was a woman traveling with Beaty in the cab of the Trinity truck prior to the collision, and that carrying a passenger is a

violation of Trinity's policies and procedure. Trinity's motion to bar this evidence is granted pursuant to Fed. R. Evid. 403. After reviewing the testimony that certain witnesses saw a woman in the vicinity of the Beaty truck, and the alleged admission by Beaty to Hanna, this Court is firmly convinced that the testimony and argument will not add anything of value to the issue of whether Beaty was negligent sufficient to outweigh the confusion, distraction and expenditure of time that the jury would encounter in trying to reconcile the various accounts. Chesler points to testimony by Reid that he saw a woman get out of the cab with a blanket, and testimony by Vijay Rudraraju that he saw a woman at the scene who came from behind the truck. However, Marilyn Hesse testified that the woman driver of the truck that had jack-knifed further west came over to the Hesses' car and spoke with the Hesses prior to the approach of the Trinity vehicle, and that after the collision, she, Marilyn Hesse, seeing that Chesler had been hurt, went back to her car, got a blanket and gave it to those who were helping Chesler. (Marilyn Hesse Dep. at 17, 24.) Hanna testified that he saw a woman with a brown coat and dark hair get out of the cab of Beaty's truck, and that Beaty made comments to Hanna to the effect that a passenger had been in his truck. However, Hanna also thought it was around 4:30 a.m. on a March morning, and pitch black dark. The situation both before and after the collision involved numerous persons who were then strangers to each other. No one obtained an identification of the alleged passenger. Chesler argues that a passenger in Beaty's vehicle would have been a violation of Trinity's procedures and might have distracted Beaty. However, Chesler's major argument in support of this evidence is that it would affect Beaty's credibility. The jury could spend an amount of time resolving this factual dispute totally disproportionate to the value of this evidence to the resolution of the main issues.

Trinity's motion in limine #16 to exclude plaintiff's "day in the life" videos is denied. Trinity argues that the videos, filmed in 1999 and 2000 are not representative of Chesler's current condition. That concern can be dealt with by a limiting instruction advising the jury of the dates when the videos were made and that they are not intended to represent Chesler's current condition. This Court has reviewed the videos and find that they do not rise to the level of "egregious[ly] self-serving" so as to be unduly prejudicial. See Bannister v. Town of Noble, Okla., 812 F.2d 1265, 1269 (10th Cir. 1987). Nor do they depict unusual situations (Id.); they reflect Chesler's home life and activities during physical therapy. The opportunity for the jury to observe Chesler during the trial and for cross-examination of Chesler at the trial further mitigate any prejudicial effect of the videos.

Thus, the motion in limine is denied. If Trinity seeks a limiting instruction, it should submit a draft to the Court and opposing counsel. Further, if a complete unedited version of the November 9, 2000 video has not been produced to Trinity, as Trinity claims in its motion, Chesler must produce that unedited version immediately to Trinity.

Trinity's motion in limine #17 to exclude evidence or reference to plaintiff's lack of insurance or financial status is granted, with a reservation. Trinity cites the familiar rule that the financial status of a plaintiff or whether or not a plaintiff was insured is not relevant and may be prejudicial. Thus, Chesler may not introduce evidence or allude to his financial condition, and, in particular, Chesler may not allude to unpaid medical bills as a source of stress aggravating his symptoms. Any probative value of such evidence is outweighed by the potential prejudice. Fed. R. Evid. 403. However, Chesler claims that the testimony of Trinity's expert Dr. Timothy Lubenow may open the door to such

evidence. Ruling as to whether testimony elicited by Trinity opens the door to evidence by Chesler about his financial condition is reserved until the time that such testimony is presented at trial.

Trinity's motion in limine #18 to exclude evidence or testimony of the cause of plaintiff's scoliosis is denied. In March, 2000, Chesler underwent surgery performed by Dr. Avi Bernstein to correct scohoisis of the lumbar spine. Trinity seeks to exclude the opinion of Dr. Bernstein and Drs. Samir Jaglan, Paul Goldstein, and Gary Yarkony that the scoliosis was the result of the injuries he incurred on March 13, 1999. Trinity argues that Dr. Bernstein's opinion fails to meet the tests of Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 US. 579 (1993) and Fed. R. Evid. 702. Because Dr. Bernstein testified that he had not seen a case of "post-traumatic scoliosis Trinity argues that his opinion is speculation. After careful consideration of Dr. Bernstein's deposition testimony, the motion is denied because that testimony establishes the requirements of Rule 702. Trinity does not contest that Dr. Bernstein is an expert in the area about which he seeks to testify. Rather, the issue is whether the opinion is sufficiently reliable to be admitted. Dr. Bernstein was able to describe how he made his conclusion on the basis of Chesler's medical record that the progressive scoliosis which he observed had to be the result of either postural protection of the right arm or a brain injury leading to neuromuscular scoliosis. Trinity's argument that Dr. Bernstein's opinion is solely based on the fact that the scoliosis followed Chesler's injury oversimplifies the evidence. Significantly, Chester points out that the expert witnesses retained by Trinity did not dispute Dr. Bernstein's conclusion or his methods of reaching that conclusion. The fact that this is an unusual situation and unprecedented in Dr. Bernstein's experience is a circumstance that the jury can consider.

Trinity's motion in limine #19 to bar testimony of Dr. Gary Yarkony is denied. Trinity's criticisms of Dr. Yarkony's opinions go to the weight, rather than the admissibility of his conclusions.

Trinity's motion in limine #20 to bar voir dire of prospective jurors as to dollar amounts that may be awarded is denied as moot. This Court will conduct all of the voir dire of the prospective jurors.

Trinity's motion in limine #24 to bar references to intentional, reckless and wilful and wanton conduct is granted. Trinity seeks to bar Chesler, his attorneys, witnesses, agents, and anyone else from making allusions in the presence of the jury that Trinity was intentional, reckless, willful or wanton, or acted in conscious disregard for the plaintiffs safety. This motion arises out of Chesler's counsel's remarks during the previous trial and in closing arguments that, inter alia, Trinity acted as if it "owned the road" and that Trinity was "reckless."

Chesler has not pleaded any conduct beyond negligence as the basis for his claim. Negligence means the failure to exercise ordinary care, whereas recklessness "is much more than mere negligence: it is a gross deviation from what a reasonable person would do." Black3s Law Dictionary 1276 (Bryan A. Garner, ed., 7th ed., West 1999). Under Nebraska law, which governs the liability portion of the case, recklessness in the civil context is defined as

> the disregard for or indifference to the safety of another or for the consequences of one's act. Conduct is in reckless disregard to the safety of another if the actor intentionally does an act, or intentionally

> fails to do an act which it is his or her duty to another to do, knowing or having reason to know of facts which would lead a reasonable person to realize not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his or her conduct negligent.

Dotzler v. Tuttle, 449 N.W.2d 774, 782 (Neb. 1990). Recklessness differs from negligence, "in that the latter consists of mere [inadvertence], lack of skillfulness or failure to take precautions, while reckless misconduct involves a choice or adoption of a course of action either with knowledge of the danger or with knowledge of facts which would disclose this danger to a reasonable man." Id. at 780. "Recklessness differs from intentional wrongdoing in that while the act must be intended by the actor in order to be considered reckless, the actor does not intend to cause the harm which results from the act." Id. at 782. Thus, both recklessness and intentional conduct involve a higher degree of misconduct than mere negligence as pleaded by Chesler.

Chesler has never sought to amend his pleadings to claim recklessness, intentional misconduct, wilful or wanton misconduct, or conduct evincing a conscious disregard for others' safety. See Fed. R. Civ. P. 15(b). Chesler is bound to his negligence theory at this late stage. See, e.g., Shinault v. City of Chicago, 84 C 2009, 1987 WL 16902, at *3, n. 8 (N.D. Ill. Sept. 8, 1 987)(Plunkett, J.) (noting in summary judgment determination that plaintiffs failed to allege a disparate impact theory in their complaint and thus were bound by that decision where amendment of the pleadings three years into the litigation would prejudice the defendants).

Accordingly, Trinity's motion in limine #24 is granted and Plaintiff and his counsel are barred from arguing or alluding that Trinity's engaged in recklessness, intentional misconduct, willful or wanton misconduct, or conscious disregard for Plaintiffs safety.

Trinity's motion in limine #25 to bar portions of the deposition transcript of Norman Beaty is denied, although with a caution to all counsel. Trinity seeks to bar that part of Beaty's deposition in which he testified, "I wasn't able to stop . . . I would say I was traveling too fast then." Trinity argues that the question posed by Chesler's counsel that prompted this question was misleading and that it was an attempt to trick Beaty into a legal conclusion. One problem with Trinity's argument is that Beaty was not, in fact, "trapped" into a yes or no answer. He answered Chesler's counsel's questions in his own words. There is no basis to exclude that relevant testimony. The inferences to be drawn from those words can be argued to the jury.

With respect to Trinity's concern that Chesler's counsel will claim that Beaty admitted that he was driving too fast for conditions (and by implication, admitting that he violated Nebraska law), it should be noted that Beaty did not literally say that he was "driving too fast for conditions." All counsel are cautioned that, if they chose to quote or paraphrase a witness, they must do so accurately. To the extent that counsel for any party mischaracterizes testimony during closing argument, an objection can be made at that time.

IT IS SO ORDERED.

[fn1] Both of those cases (Piechota v. Rapp, 27 N.W.2d 682 (Neb. 1947) and Schaefer v. McCreary, 345 N.W.2d 821 (Neb. 1984)) involve situations where the defendant's plea of guilty in a criminal proceeding was admissible in a subsequent civil trial.

---

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved